**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-10081-NMG |
| | ) | |
| LAWRENCE GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

# LAWRENCE GENERAL HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS


**Page**

INTRODUCTION ... 1

SUMMARY OF ALLEGATIONS ... 2

LEGAL STANDARD ... 3

ARGUMENT ... 3

I. All Of Plaintiff's Claims Should Be Dismissed Because She Has Not Alleged That Any Of Her Protected Health Information Was Disclosed. ... 3

II. The Complaint Fails To State A Claim Under The ECPA. ... 5

A. Plaintiff Has Not Alleged An Unlawful Interception. ... 5

B. Plaintiff Has Not Alleged A Criminal Or Tortious Purpose. ... 6

C. Plaintiff Has Not Alleged That LGH Intercepted "Contents." ... 8

III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Law. ... 9

IV. The Complaint Fails To State A Claim For Breach Of Fiduciary Duty. ... 11

V. The Complaint Fails To State A Claim For Breach Of Confidence. ... 12

VI. The Complaint Fails To State A Claim For Negligence. ... 13

VII. The Complaint Fails To State A Claim For Breach Of Contract. ... 15

VIII. Plaintiff Cannot Assert An Unjust Enrichment Claim Because An Adequate Remedy At Law Exists. ... 17

CONCLUSION ... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) .......... 12

*American Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 1, 3, 4

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
53 F. Supp. 3d 279 (D. Mass. 2014) .......... 11

*ARE-Tech Square, LLC v. Galenea Corp.*,
91 Mass. App. Ct. 1106 (2017) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 8, 11

*Bailey v. Hosp. of the Univ. of Pennsylvania*,
266 A.3d 654 (Pa. Super. Ct. 2021) .......... 14

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017) .......... 17

*Beauregard v. Meldon*,
2019 WL 6877185 (D. Mass. Dec. 17, 2019) .......... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Boddie v. ABC*,
881 F.2d 267 (6th Cir. 1989) .......... 6

*Bonewit v. New-Indy Containerboard LLC*,
2024 WL 4932186 (D. Mass. Dec. 2, 2024) .......... 14

*In re Bos. Univ. COVID-19 Refund Litig.*,
511 F. Supp. 3d 20 (D. Mass. 2021) .......... 15

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) .......... 9

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................16

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................6

*Clark v. Zwicker & Assocs., P.C.*,
2024 WL 2025568 (D. Mass. May 7, 2024) ....................10

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024)....................4

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................4

*Doe v. Village Podiatry Grp., LLC*,
2024 WL 5187261 (Ga. Super. Nov. 20, 2024)....................14

*In re DoubleClick*,
154 F. Supp. 2d at 515 ....................7

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010)....................17

*Goldstein v. Luxottica of Am., Inc.*,
2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ....................9

*Grocela v. Gen. Hosp. Corp.*,
2012 WL 3205616 (Mass. Super. July 18, 2012) ....................14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024)....................10

*Jacome v. Spirit Airlines Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ....................9

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....................4

*Katz v. Pershing, LLC*,
806 F. Supp. 2d 452 (D. Mass. 2011)....................16

*Katz-Lacabe v. Oracle America*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....................7

*Kelley v. CVS Pharm., Inc.*,
2007 WL 2781163 (Mass. Super. Ct., Aug. 24, 2007) ....................12

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020)....................10

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003) ....................11, 12

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................7

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................10

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ....................7

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005)....................15

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................5

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................8

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................8, 10

*One Wheeler Rd. Assocs. v. Foxboro Co.*,
843 F. Supp. 792 (D. Mass. 1994)....................17

*Ortiz v. Examworks, Inc.*,
26 N.E.3d 165 (Mass. 2015) ....................11

*Pershouse v. L.L. Bean, Inc.*,
368 F. Supp. 3d 185 (D. Mass. 2019)....................17

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)....................7, 8

*Reidy v. Umass Mem. Med. Ctr., Inc.*,
2021 WL 6777622 (Mass. Super. June 17, 2021)....................14

*Rodriguez v. FastMed Urgent Care, P.C.*,
2024 WL 3541582 (E.D.N.C. July 24, 2024)....................8

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
16 N.E.3d 1044 (Mass. 2014)....................13

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)....................................................................................17

*In re Shields Health Care Grp.*,
721 F. Supp. 3d 152 (D. Mass. 2024)...........................................................12, 16

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........................10

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ..................................................................................11

*Sun West Mortg. Co. v. Flores*,
2016 WL 1030074 (D.P.R. Mar. 10, 2016) ..............................................................8

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ................................................................................6

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................................................5, 7, 14

*Tashjian v. CVS Pharm., Inc.*,
2020 WL 1931859 (D. Mass. Mar. 13, 2020)...........................................................12

*United States v. Bowen*,
127 F.3d 9 (1st Cir. 1997).......................................................................................6

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998)................................................................7

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ..........................................................................6

*Webb v. Injured Workers Pharm., LLC*,
2023 WL 5938606 (D. Mass. Sept. 12, 2023) ..........................................................16

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) .......................................................................16

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....................................................4, 13, 16

*Willitts v. Engie N.A. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021) ..............................................................13

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021) ...................................................................9, 10

*Wood v. City of Haverhill*,
2024 WL 4189932 (D. Mass. Sept. 13, 2024) ....................5

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) ....................13

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. § 2511 .................... *passim*

FTC Act ....................6

Health Insurance Portability and Accountability Act ("HIPAA").................... *passim*

M.G.L. c. 111 § 70E ....................14

Massachusetts Right To Privacy Law, G.L. c. 214 § 1B ....................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................2

RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979) ....................11

# INTRODUCTION

Throughout the country, including in Massachusetts, numerous plaintiffs have been attempting to collect massive damages awards from non-profit and charitable healthcare providers that use "pixel" technologies on their public websites. When a user visits a website that contains a pixel, information about the visit is sent to the entity that created the pixel—here, Meta and Google—which then uses the data to assist with advertising. These technologies are ubiquitous; they are used by countless businesses, healthcare entities, and government agencies to improve the functionality and advertising on their websites.

Defendant Lawrence General Hospital (LGH) is a non-profit that offers a range of healthcare services in Massachusetts. It operates a public website that is available to patients and non-patients alike. The Plaintiff in this case, Jane Doe, alleges that when she visited LGH's website, the pixels on that website caused her browser to send "protected health information" (PHI) to Meta and Google.[1] She bases that allegation on the definition of PHI in the Health Insurance Portability and Accountability Act (HIPAA). Plaintiff apparently believes that PHI is disclosed during *every* visit to LGH's public website, because she seeks to represent a class of all Massachusetts residents who "accessed any portion" of the website in the three years leading up to this lawsuit.

The Complaint suffers from a variety of defects, but two cut across all of Plaintiff's claims. First, it is now well established that information on a healthcare provider's public website does not qualify as PHI under HIPAA. *See, e.g.*, *American Hosp. Ass'n. v. Becerra*, 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024) (vacating a 2022 Bulletin issued by the Department of Health and Human

[1] The Amended Complaint uses the terms "personal health information," "Protected Health Information," "Private Information," and "Individually Identifiable Health Information" (IIHI) interchangeably. *See, e.g.*, Am. Compl. ¶¶ 1, 107, 124. LGH will refer to these terms collectively as "PHI."

Services, and holding that browsing activity on a public website "does not and cannot identify an individual or the individual's PHI"). Second, Plaintiff's Complaint is devoid of basic factual support. She does not identify any specific actions she took on LGH's website, let alone what information she provided to LGH via that website—whether it was medical records, treatment information, or something entirely generic. Simply put, Plaintiff has said nothing of substance about her individual claims. The Court should dismiss the Complaint under Rule 12(b)(6).

## SUMMARY OF ALLEGATIONS

LGH is a non-profit Massachusetts healthcare system that maintains a public website at www.lawrencegeneral.org. Am. Compl. ¶ 18. LGH's website provides "information about doctors, services, and treatments provided by LGH for particular medical conditions." *Id.* LGH also offers a private patient portal, which allows patients to log in to a secure network to access their medical information. Notably, Plaintiff does not allege that LGH embedded any "tracking code" within its patient portal. She alleges only that LGH "injected hidden code" (like pixels) into its **public** website, which is accessible by anyone in the world, regardless of their patient status. *Id.* ¶ 46.

The bulk of Plaintiff's Complaint provides a general description of pixel technology along with hypothetical scenarios about how an individual *could* interact with LGH's website. *Id.* ¶ 80. But when it comes to her *own* interactions with LGH's website, Plaintiff has very little to say. Specifically, she alleges that she is "a patient of [LGH]" and "regularly used" LGH's website "to (i) obtain information about Lawrence General doctors (including their credentials and backgrounds); (ii) search for information on particular medical procedures; (iii) obtain information about Lawrence General's locations; and (iv) obtain and review her medical records through the website's patient portal." *Id.* ¶ 12. Plaintiff does not describe the "information" or "records" that she reviewed on the website, she does not allege her website usage was connected to any targeted advertisements, nor does she identify which information was transmitted to third parties.

Plaintiff brings seven causes of action on behalf of herself and a putative class of Massachusetts residents: (1) violation of the Electronic Communications Privacy Act; (2) violation of the Massachusetts Right to Privacy Law; (3) breach of fiduciary duty; (4) negligence; (5) breach of confidence; (6) breach of contract; and (7) unjust enrichment. *Id.* ¶¶ 147–223.

## LEGAL STANDARD

A court must dismiss a complaint under Rule 12(b)(6) if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard demands more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

## ARGUMENT

### I. All Of Plaintiff's Claims Should Be Dismissed Because She Has Not Alleged That Any Of Her Protected Health Information Was Disclosed.

Each of Plaintiff's claims is based on a false premise: that when people visit LGH's public website, their "protected health information" is disclosed to third parties. Am. Compl. ¶¶ 1–3. This categorical assertion—which is not supported by any specific factual allegations—is wrong as a matter of law. Plaintiff bases it in large part on a December 2022 Bulletin issued by the Department of Health and Human Services ("HHS"). *Id.* ¶¶ 102–23. But the relevant portions of the Bulletin were vacated in an action against the HHS in the Northern District of Texas.

In *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." *Id.* at 802. That is because the website operator has no way of knowing why any particular user visits a particular webpage, or clicks a particular

[2] Unless otherwise noted, all emphases in citations have been added, and internal quotation marks and citations have been removed.

button. *See id.* at 795 ("A user's intent in visiting [an unauthenticated public webpage] is unknowable."). For example, a user might visit a healthcare website to find information for a family member, a friend, or for a school research project. *See id.* at 801. Or a user could visit the website to find non-medical information, like whether parking is available at a hospital. *Id.* But whether or not the browsing relates to healthcare, it is not PHI if it takes place on a public website. *See id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) **+ Query** (Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).").[3]

Although Plaintiff alleges that she is a patient of LGH, she does not claim that she was searching for information related to *her* medical conditions or treatment. And even if she had performed such a search, LGH would have no way of knowing that it was Plaintiff running the search; it could have been any member of the public. For these reasons and others, numerous federal courts have granted motions to dismiss similar claims after *Becerra*. *See Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing complaint because "the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA") (emphasis in original); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) ("There is nothing about [plaintiff's] browsing activity that relates specifically to *her* health or relationship with Upperline.") (emphasis in original); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (plaintiff's "generic search queries" for burn specialists and burn treatments did not "constitute PHI"). *But see Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142

[3] HHS dismissed its appeal of this decision. *See Am. Hosp. Ass'n v. Becerra*, No. 24-10775 (5th Cir. Sept. 4, 2024).

(D. Mass. 2024) (pre-*Becerra* decision denying in part a defendant's motion to dismiss a pixel suit (that did not include an ECPA claim), and accepting the plaintiff's definition of PHI without a substantive analysis of HIPAA's provisions).

Because every one of Plaintiff's claims is premised on the alleged disclosure of PHI (*see, e.g.*, Am. Compl. ¶¶ 160–62, 170–71, 185, 188–92, 200–01, 209, 218), and because her Complaint does not actually allege such a disclosure, her claims should all be dismissed.

## II. The Complaint Fails To State A Claim Under The ECPA.

Plaintiff alleges that LGH unlawfully "intercepted" her communications with its website, in violation of the Electronic Communications Privacy Act ("ECPA"). Am. Compl. ¶¶ 147–67. To state an ECPA claim, Plaintiff had to allege facts demonstrating that LGH "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device, and (6) that the communication was intercepted contemporaneously." *Wood v. City of Haverhill*, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024). Plaintiff's ECPA claim should be dismissed because she has not shown any unlawful "interception," or that any "contents" were intercepted.

### A. Plaintiff Has Not Alleged An Unlawful Interception.

The ECPA is a one-party consent statute. The law expressly provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a . . . communication where such person is a *party to the communication*." 18 U.S.C. § 2511(2)(d). And it is undisputed that LGH was a party to Plaintiff's communications with LGH's website; the communications were sent directly to that website. *See* Am. Compl. ¶¶ 1, 13, 47, 149–56; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (affirming dismissal of ECPA claim because defendant was a party to the communications); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing ECPA claim noting "the weight of persuasive authority in

similar pixel tracking cases" supported a finding of no interception where defendant was party to the communication).

**B. Plaintiff Has Not Alleged A Criminal Or Tortious Purpose.**

Plaintiff alleges, however, that LGH is liable under the "crime-tort exception" to the one-party consent rule. Am. Compl. ¶¶ 10, 157–65. This exception applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States." 18 U.S.C. § 2511(2)(d).

Importantly, however, the crime-tort exception "requires that the interceptor *intend* to commit a crime or tort *independent of the act of recording itself*." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). "[I]t is the *use* of the interception with *intent to harm* rather than the fact of interception that is critical to liability." *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989). "Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (holding that the crime-tort exception did not apply to similar technology because the plaintiffs did not plead any "tortious or criminal *use* of the acquired internet histories"); *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (crime-tort exception "is to be construed narrowly").[4]

Plaintiff breezily alleges that LGH intercepted her communications "for the purpose of committing a . . . . violation of HIPAA and the FTC Act, as well as the other causes of action set forth in this complaint." Am. Compl. ¶ 158. She offers no support for this claim. Even if LGH's

[4] Moreover, and further requiring narrow construction, the ECPA imposes criminal penalties, so under the rule of lenity, any ambiguities in the statute must be resolved in LGH's favor. *See United States v. Bowen*, 127 F.3d 9, 13–14 (1st Cir. 1997) ("[T]he rule of lenity means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'") (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)).

conduct violated one of these laws (which it did not), Plaintiff has not alleged that LGH had an unlawful *purpose* beyond what was accomplished by the collection of her data—and that is what matters under the crime-tort exception. *See United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting plaintiff's "superficial logic" that "because the recording itself was made in violation of state law, it was made for the purpose of violating state law"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he commission of a tortious act [does] not prove a tortious purpose."); *see id.* at 518 (finding "plaintiffs clearly allege that DoubleClick has committed a number of torts" but "nowhere have they alleged that DoubleClick's primary motivation or a determining factor in its actions has been to injure plaintiffs tortiously"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) ("Because the complaint does not allege that defendants intercepted a communication for the purpose of committing any criminal or tortious act, it fails to state a claim").

Plaintiff's apparent theory—that LGH, a nonprofit hospital, collected her basic browsing data for the *purpose of harming her*—is implausible on its face. In fact, it is contradicted by other parts of her own Complaint, which say that LGH used the pixel technology to "optimize" advertising, to "improve the website," and for "financial gain." Am. Compl. ¶¶ 36, 43, 163, 165. As many courts have recognized (including in pixel cases), there is nothing unlawful about these objectives. *See, e.g.*, *Katz-Lacabe v. Oracle America*, 2023 WL 2838118, at *16 (N.D. Cal. Apr. 6, 2023) ("Defendant's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money."); *Piedmont*, 2024 WL 3972984, at *4 (joining "the weight of persuasive authority" in pixel litigation); *Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (dismissing ECPA claim in pixel case and distinguishing the First Circuit's decision in *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003), because it did not consider

the party exception and involved a defendant that "interecept[ed] a communication between a user and a *third-party* website"); *Sun West Mortg. Co. v. Flores*, 2016 WL 1030074, at *5 (D.P.R. Mar. 10, 2016) (allegations that defendant "intends to benefit economically from the confidential information he intercepted" were insufficient); *Rodriguez v. FastMed Urgent Care, P.C.*, 2024 WL 3541582, at *6 (E.D.N.C. July 24, 2024) (alleging defendant intercepted communications "for commercial use or gain" does not equate to intercepting "for the purpose of committing any criminal or tortious act."); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (dismissing ECPA claim because "Plaintiffs do not allege that [commercial advantage] constitutes independently illegal or actionable conduct" sufficient to apply exception).

Nor does Plaintiff identify any "tortious conduct" beyond "the alleged wiretapping itself" that would violate these other laws. As numerous courts have held, the crime-tort exception is not triggered when the tortious conduct "is the alleged wiretapping itself." *Google Cookie*, 806 F.3d at 145; *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024); *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) ("[B]ecause neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply.").

### C. Plaintiff Has Not Alleged That LGH Intercepted "Contents."

Plaintiff's ECPA claim fails for another reason: she does not allege that LGH intercepted the "contents" of any communication. 18 U.S.C. § 2510(4). "Contents" is defined as information "concerning the substance, purport, or meaning of th[e] communication," including "personally identifiable information such as a party's name, date of birth, and medical condition." *Id.* § 2510(8); *see also In re Pharmatrak*, 329 F.3d at 18. Plaintiff does not claim that LGH received any such information from her. At most, Plaintiff generally claims that LGH received information about her *webpage views*. *See, e.g.*, Am. Compl. ¶ 80 (alleging that LGH "configured its website

to intercept . . . information about the webpages a healthcare consumer visits within the website"). But "search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the [ECPA]" because they do "not convey the substance or meaning of any message." *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (quoting *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021)). And regardless, Plaintiff does not meaningfully *describe* the particular information that she shared with LGH. *See* pp. 2–5 *supra*. Her ECPA claim should be dismissed.

### III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Law.

Plaintiff alleges that LGH violated the Massachusetts Right to Privacy Act, G.L. c. 214 § 1B, by "distributing" her PHI to third parties without her consent and that such disclosure constituted an intrusion upon her seclusion. Am. Compl. ¶¶ 173–74. Under this statute, a plaintiff may pursue a claim based upon a theory of public disclosure of private facts or intrusion upon seclusion, but for either theory must prove the facts gathered or disseminated were of a "highly personal or intimate" nature and that the invasion "resulted in an unreasonable, substantial or serious interference" with plaintiff's privacy. *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). And the invasion must be "both unreasonable *and* substantial or serious." *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiff has failed to allege either of the two elements of this claim.

First, Plaintiff has not alleged that LGH gathered or disseminated any "highly personal or intimate" facts. Again, her Complaint does not identify any specific information that LGH collected *about her*. *See* pp. 2–5 *supra*. To the contrary, she acknowledges that she "does not describe in this complaint the specific pages she visited." Am. Compl. ¶ 80. Plaintiff suggests that these omissions were necessary "[t]o maintain her medical privacy" (*id.*), but that is nonsensical.

Plaintiff filed this lawsuit confidentially as a Jane Doe, and she could also have sought to file portions of her Complaint under seal. Plaintiff could not "reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges [was] disclosed to third parties." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023).

But even Plaintiff's more generalized allegations do not plausibly suggest that LGH disclosed *anyone's* sensitive information to third parties. Plaintiff does not allege that any pixels were installed in LGH's patient portal. And no one has a reasonable expectation of privacy in information "entered" on a public website. "Contemporary internet browsing involves the collection of users' data, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) (emphasis in original) (collecting cases); *see also Okash*, 2024 WL 1285779, at *7 & n.9 (collecting cases and noting "[c]ourts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta"); *Koppel v. Moses*, 2020 WL 6292871, at *8–*9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (dismissing invasion of privacy claim because "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA and similar statutes]").

Plaintiff has also failed to allege an invasion of privacy that was "both unreasonable and substantial or serious." *Wofse*, 523 F. Supp. 3d at 137. In assessing this factor, courts "balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Clark v. Zwicker & Assocs., P.C.*, 2024

WL 2025568, at *7 (D. Mass. May 7, 2024). Even if Plaintiff had a reasonable expectation of privacy in her routine browsing activities, she does not claim that LGH *used* her information for an improper purpose. Instead, she alleges that LGH used the information "to market its services and increase profits." Am. Compl. ¶ 173. There is nothing invidious about those plainly legitimate business purposes. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (explaining alleged invasion of privacy is not unreasonable, serious, or substantial "if, among other things, it had a legitimate business purpose") (quoting *Ortiz v. Examworks, Inc.*, 26 N.E.3d 165, 173 (Mass. 2015)); *see also Eisenhower*, 721 F. Supp. 3d at 1067 (dismissing privacy claims based on the disclosure of "routine medical searches and inquiries" because the disclosure was not "highly offensive"). Her privacy claim should be dismissed.

## IV. The Complaint Fails To State A Claim For Breach Of Fiduciary Duty.

To establish a cause of action for breach of fiduciary duty, "a plaintiff must show (1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties; (2) breach of that duty; and (3) a causal connection between that breach and some resulting harm to the plaintiff." *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014). Plaintiff has not satisfied any of these elements.

Plaintiff claims that LGH owed a duty to her because LGH is a healthcare provider and she was its patient. *See* Am. Compl. ¶ 180. But even assuming that is true, "the existence of a fiduciary relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries." *Korper v. Weinstein*, 783 N.E.2d 877, 881 (Mass. App. Ct. 2003). The fiduciary duty applies "only as to matters within the scope of the fiduciary relationship." *Id.*; *see also* RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979) (fiduciary relationship covers "matters within the scope of the relation"). And Massachusetts courts have

expressly "declin[ed] . . . to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment." *Korper*, 783 N.E.2d at 882 n.11.

When Plaintiff browsed LGH's public website—which is available to any person with access to the internet, regardless of patient status—she did so "beyond the context of medical treatment" and therefore outside the scope of any physician-patient relationship. *Id.*; *see also* *Kelley v. CVS Pharm., Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Ct., Aug. 24, 2007). Browsing a public website is not "medical treatment," and LGH did not owe a fiduciary to every person who used its public website. As discussed above, LGH does not even have a way of knowing whether a website visitor *is* a patient. LGH could not have breached a fiduciary duty that it was not aware of. Moreover, Plaintiff's claim also fails on the independent basis that her alleged damages fail as a matter of law as discussed below in § VI, *infra*.

## V. The Complaint Fails To State A Claim For Breach Of Confidence.

Plaintiff's claim for breach of confidence fares no better. For one thing, it is not clear whether Massachusetts recognizes a standalone cause of action for "breach of confidence." In the context of a physician-patient relationship, the Supreme Judicial Court has recognized a "fiduciary obligation to hold in trust confidential information." *Alberts v. Devine*, 479 N.E.2d 113, 118–20 (Mass. 1985). And Massachusetts courts have not recognized a duty of confidence in this context beyond the fiduciary duty articulated in *Alberts*. *See, e.g.*, *In re Shields Health Care Grp.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024) (citing *Alberts* and referring to breach of "fiduciary duty of confidentiality"); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *6 (D. Mass. Mar. 13, 2020) (analyzing claim for "breach of fiduciary duty of confidentiality"); *Kelley*, 2007 WL 2781163, at *5 (analyzing breach of fiduciary duty and common law duty of confidentiality as one issue); *Korper*, 783 N.E.2d at 881 (a "physician has a fiduciary duty to maintain the confidentiality of a plaintiff's medical records").

In any event, Plaintiff does not distinguish the allegations supporting her two claims: both are based on the same alleged "duty" (the physician-patient relationship), and the same conduct (the alleged disclosure of "nonpublic medical information"). *See* Am. Compl. ¶¶ 181–82, 197–98. The Court should therefore dismiss the breach of confidence claim, either as duplicative or for the same reasons Plaintiff's fiduciary claim fails. *See* Part IV *supra*; *Willitts v. Engie N.A. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim where "there was no disclosure by a physician").

## VI. The Complaint Fails To State A Claim For Negligence.

Plaintiff alleges that LGH was negligent because it failed to "exercise reasonable care in safeguarding and protecting Plaintiff's . . . Private Information from unauthorized disclosure." Am. Compl. ¶¶ 187–95. To state a claim, Plaintiff had to allege the "elements of duty, breach, causation and damages." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106 (D. Mass. 2021). Plaintiff has failed to allege each element.

First, Plaintiff has failed to allege that LGH owed Plaintiff a duty of care. She claims that LGH had a "special relationship" with patients that is recognized by "statute, regulations, industry ethical rules . . . and the common law." Am. Compl. ¶ 191. By now our response will be familiar: When Plaintiff visited LGH's public website, she did so as a member of the general public, not as a patient—and neither her patient status nor the unidentified "statutes" and "regulations" transforms her otherwise-ordinary browsing activity into an interaction protected by a duty of care. *See, e.g.*, *TMC Health*, 2024 WL 4364150, at *7 (dismissing a negligence claim in part because the healthcare "statutes cited by Plaintiffs do not support a duty between a healthcare provider and people visiting its free, public website"; neither "HIPAA or the regulations promulgated by the [DHS require] healthcare providers who maintain websites to protect website visitors from having their interactions with the webpage logged and shared for advertising purposes"); *Roe No. 1 v.*

*Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1052 (Mass. 2014) ("[T]he mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action.").[5]

Second, even if a duty existed, LGH did not breach it. Plaintiff's negligence claim is based on the alleged "unauthorized disclosure" of Plaintiff's "Private Information." Am. Compl. ¶¶ 187–95. But as discussed in Part I above, Plaintiff does not plausibly allege that her PHI was disclosed.

Third, Plaintiff has not alleged that she suffered cognizable harm as a result of LGH's alleged conduct. Plaintiff vaguely claims that her "[s]ensitive and confidential information" was disclosed, that she received unwanted "targeted advertisements," and that she lost her "property rights." Am. Compl. ¶¶ 7, 138. But as discussed above, the Complaint provides no support for these allegations. It does not say (1) what, if any, specific information Plaintiff disclosed to LGH, or (2) that any such information was disclosed to a third party. *See, e.g.*, *Bonewit v. New-Indy Containerboard LLC*, 2024 WL 4932186, at *2 (D. Mass. Dec. 2, 2024) (dismissing negligence claims for lack of damages because plaintiff had "shown no actual misuse or disclosure of his information"); *Reidy v. Umass Mem. Med. Ctr., Inc.*, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) (plaintiff's claims were "at best, abstract concerns about possible future impairments of his rights as a patient, without actual damages, and, as such, are insufficient to state his claims"); *Piedmont*, 2024 WL 3972984, at *3 (plaintiff did not explain how receiving "targeted advertisements" caused harm; "[t]he better view from other courts around the country is that these types of damage claims are not actionable."); *Doe v. Village Podiatry Grp., LLC*, 2024 WL

[5] The two laws Plaintiff does briefly identify—M.G.L. c. 111 § 70E and HIPAA—are inapplicable for additional reasons. The first applies only to "records of *treatment*." And HIPAA is "designed to protect the privacy of patients that receive *treatment*." *Grocela v. Gen. Hosp. Corp.*, 2012 WL 3205616, at *5 (Mass. Super. July 18, 2012). Regardless, neither statute has a private right of action. *See, e.g.*, *Bailey v. Hosp. of the Univ. of Pa.*, 266 A.3d 654 (Pa. Super. Ct. 2021) (dismissing negligence claim where plaintiff tried to base duty of care on HIPAA and state statutory law, but neither had a right of action).

5187261, at *2 (Ga. Super. Nov. 20, 2024) (dismissing pixel claims because plaintiff "only offers speculative or theoretical injuries rather than actual losses or injuries to sustain any of his claims for damages"). Plaintiff's negligence claim should be dismissed.

## VII. The Complaint Fails To State A Claim For Breach Of Contract.

To state a claim for breach of contract, Plaintiff must allege the existence of a valid contract between the parties, plaintiff's willingness to perform, breach of the contract, and damages as a result. *See In re Boston Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 (D. Mass. 2021). Plaintiff's breach of contract claim—which is premised on both express and implied contract theories, (Am. Compl. ¶ 210)—fails for two main reasons.

First, there was no mutual assent. To create an enforceable contract, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Beauregard v. Meldon*, 2019 WL 6877185, at *3 (D. Mass. Dec. 17, 2019); *see also*. *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (affirming dismissal of express and implied contract claims for "failure to reach agreement on the basic terms of the contract"). Plaintiff alleges that she was required to disclose her "Private Information, including names, email addresses, phone numbers, computer IP addresses, [and] appointment information . . . to the [LGH] Website as a condition of receiving healthcare services," and thereby entered into an explicit or implied contract under which LGH agreed to protect that information. Am. Compl. ¶¶ 209–10. Every part of that assertion is wrong or misleading. LGH's public website does not provide medical services, and there is no method on the public website for a user to provide their name, email address, phone number, or appointment information—none of which is "Private Information" to begin with. *See* Part I *supra*.

But regardless of what Plaintiff believed, there is no support for the proposition that *LGH* agreed to "protect" Plaintiff's public website browsing data. To the extent Plaintiff attempts to

allege an explicit contract based on LGH's privacy policy, she does not claim any reliance on that agreement, or that LGH agreed to keep public browsing information private. *See Shields*, 721 F. Supp. 3d at 162 (dismissing express contract claim for this reason); Am. Compl. ¶¶ 26–28. To the extent Plaintiff attempts to allege an implied contract, she provides no factual allegations suggesting that LGH manifested assent to safeguard browsing information. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (dismissing implied contract claim because neither "party ever discussed the manner of safeguarding [] PII or PHI or that plaintiff had a particular concern about disclosing that information"). Again, even if Plaintiff and LGH had an agreement about the provision of medical services, this does not give rise to an agreement that LGH would protect her public browsing data, and Plaintiff's subjective belief to the contrary is insufficient as a matter of law. *See Webb v. Injured Workers Pharm., LLC*, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (dismissing implied contract claim where "plaintiffs had a good faith belief that their PII would be protected" but failed to allege defendant "agreed—explicitly or implicitly—to provide such protection").

Second, there was no consideration. A "promise to perform a pre-existing duty is not valid consideration." *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011) (citing *Gravallese v. Mass. Parole Bd.*, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995)). If Plaintiff's browsing information *did* qualify as PHI (*but see* Part I *supra*), LGH would have a preexisting legal obligation under HIPAA to protect that information. *See TMC Health*, 2024 WL 4364150, at *8 (dismissing implied contract claim where defendant "was already required under HIPAA to protect patients in the ways" its policy promised); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (where defendants were required by law

to adhere to HIPAA, its provisions could not "create contractual obligations"); *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same).

Third, for the reasons discussed above, Plaintiff has not alleged any damages resulting from the alleged breach of contract.

**VIII. Plaintiff Cannot Assert An Unjust Enrichment Claim Because An Adequate Remedy At Law Exists.**

Plaintiff asserts a claim for unjust enrichment on the ground that she "conferred a benefit upon Defendant in the form of monetizable Private Information that Defendant collected from [her] and disclosed to third parties . . . without authorization and proper compensation." Am. Compl. ¶ 218. This claim fails because "a party with an adequate remedy at law cannot claim unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Plaintiff undoubtedly has remedies at law available through her statutory and common law claims against LGH. The ultimate "disposition of those claims is irrelevant." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010). As the First Circuit and district courts within it have held, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis*, 865 F.3d at 16 (affirming dismissal of unjust enrichment claim because an adequate remedy at law existed); *see also Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing unjust enrichment claim because Plaintiff's breach of contract and statutory claims, while ultimately dismissed, were adequate remedies at law); *Fernandes*, 731 F. Supp. 2d at 114 (same); *One Wheeler Rd. Assocs. v. Foxboro Co.*, 843 F. Supp. 792, 799 (D. Mass. 1994) (same); *ARE-Tech Square, LLC v. Galenea Corp.*, 91 Mass. App. Ct. 1106 (2017) (same). The unjust enrichment claim should be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: February 17, 2025

Respectfully submitted,

LAWRENCE GENERAL HOSPITAL

By: */s/ Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email on February 17, 2025 concerning this motion, and have not been able to narrow the issues in dispute.

*/s/ Lisa Oliver White*

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on February 17, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*