**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

**Suffolk, ss.**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>LAWRENCE GENERAL HOSPITAL,<br><br>Defendant. | **Case81o. 1:25-cv-10081-NMG** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**Table of Contents**


I. Introduction ....................1

II. The Facts. ....................2

A. LGH Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities....................2

B. LGH's Failure to Disclose Tracking Technologies and Their Implications for Patient Privacy. ....................3

C. Plaintiff's Communications Intercepted on the LGH Website. ....................4

III. Argument....................4

A. Plaintiff States a Claim for Violation of the ECPA. ....................4

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent. ....................5

2. Plaintiff Alleges the Interception of the Contents of Her Communications ....................11

B. Becerra Is Irrelevant to Plaintiff's Massachusetts Claims ....................12

C. Plaintiff States a Claim under the MRPA....................12

1. Plaintiff's Allegations Regarding Her Own Communications Are Sufficient. ....................13

2. Plaintiff Adequately Alleges Intrusion upon Seclusion. ....................14

3. Plaintiff Adequately Alleges Disclosure of Private Facts. ....................15

D. Plaintiff States a Claim for Breach of Fiduciary Duty....................16

E. Plaintiff States a Claim for Breach of Confidence ....................17

F. Plaintiff States a Claim for Negligence ....................17

G. Plaintiff Sufficiently Alleges Damages on Her Breach of Fiduciary Duty and Negligence Claims. ....................18

H. Plaintiff States a Claim for Breach of Contract. ....................19

I. Plaintiff States a Claim for Unjust Enrichment ....................20

IV. Conclusion....................20

# Table of Authorities

Pages

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ....9, 17, 18, 20

*Alberts v. Devine*,
395 Mass. 59 (1985) ....17

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ....13, 15, 16

*Am. Hosp. Ass'n v. Becerra*,
2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) .... 5, 7

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ....18

*Brahm v. Hosp. Sisters Health Sys.,*
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ....9, 16, 17, 20

*Bratt v. Int'l Bus. Machines Corp.*,
392 Mass. 508 (1984) ....16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....15

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ....10, 11, 12

*Clark v. Zwicker & Assocs., P.C.*,
2024 U.S. Dist. LEXIS 82882 (D. Mass. May 7, 2024) ....15

*Commonwealth v. McCarthy*,
484 Mass. 493 (2020) ....5

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 U.S. Dist. LEXIS 134570 (S.D.N.Y. July 30, 2024) .... 10, 17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....7

*Doe v. Bon Secours Mercy Health*,
2021 Ohio Misc. LEXIS 3985 (Ct. Com. Pl. Nov. 22, 2021) .... 14, 20

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) ............................................... 13, 14, 15, 18

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023)........................................................passim

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ................................................................. 15, 16

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.)..................................................................12, 13, 17

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ....................................................................11

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024)................................................................................ 13, 16, 17, 20

*Elkins v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) .....................................................................20

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) .......................................................................8

*Garcia v. Columbia Med. Ctr.*,
996 F. Supp. 617 (E.D. Tex. 1998).........................................................................................................18

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) .......................................................... 10, 19

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................................................................................................15

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) .....................................................................10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..................................................................................................................15

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015)............................................................................................................ 11, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022).................................................................................................passim

*In re Meta Pixel Tax Filing Cases.*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)............................................................................................ 14, 19

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 21, 2024) ........................................3

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) ........................................6, 10, 20

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) ........................................7

*Kelley v. CVS Pharmacy, Inc.*,
23 Mass. L. Rep. 87 (2007) ........................................5, 16

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)........................................14

*Kurowski v. Rush Sys. For Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) ........................................8, 9

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)........................................14

L*amarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024)........................................passim

*Lee v. Conagra Brands, Inc.,*
958 F.3d 70 (1st Cir. 2020) ........................................19

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) ........................................12

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024)........................................7, 14

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........................................9

*Nienaber v. Oberlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)........................................7

*Peckham v. Bos. Herald, Inc.*,
48 Mass. App. Ct 282 (App. Ct. 1999)........................................5

*Polay v. McMahon*,
468 Mass. 379 (2014)........................................13, 14, 15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........................................6, 10, 11, 16

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) .......... 6, 10, 11

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014) .......... 18

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991) .......... 12

*Squeri v. Mt. Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) .......... 15

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) .......... 9

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) .......... 10

*Transamerica Ins. Co. v. KMS Patriots*,
52 Mass. App. Ct. 189 (App. Ct. 2001) .......... 5

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) .......... 13, 17, 18, 20

*Williams v. TMC Health*,
2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sept. 30, 2024) .......... 18

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) .......... 11

*Zelby Holdings, Inc. v. VideogeniX, Inc.*,
92 Mass. App. Ct. 86 (App. Ct. 2017) .......... 20

**Statutes**

42 U.S.C. § 1320d .......... 7

M.G.L. c. 214 § 1B .......... 12

## I. INTRODUCTION

Lawrence General Hospital ("LGH") aided third parties—including Google and Facebook—to secretly eavesdrop on Plaintiff Jane Doe's[1] ("Plaintiff") communications with LGH. LGH injected hidden code for tracking technologies into its website, including Google Analytics and Facebook's Meta Pixel, but did not disclose those technologies to consumers or their significance for patient privacy. The core fact giving rise to LGH's liability is its failure to disclose—the fact that its implementation of third-party eavesdropping code on its own website was done secretly, and, in fact, LGH affirmatively misrepresented to consumers its practices. LGH's arguments for dismissal each lack merit.

***First***, none of Plaintiff's claims require as an element that LGH violated HIPAA, no less a specific portion of regulatory guidance regarding HIPAA. Accordingly, a federal court decision regarding that guidance does not preclude any of her claims. In any event, Plaintiff adequately alleges a HIPAA violation; LGH's contrary arguments ignore Plaintiff's well-pled allegations.

***Second***, Plaintiff adequately alleges a claim under the federal Electronic Communications Privacy Act ("ECPA"). Plaintiff alleges both a criminal and tortious purpose by alleging LGH's intentional decision to inject hidden code onto its website, enabling third parties to eavesdrop on patient communications, violated both federal and state law. Moreover, Plaintiff adequately alleges that the contents of such online conversations were intercepted by LGH's use of descriptive URLs that, when intercepted, revealed the substance of the intercepted communications and its use of tracking technologies on pages that disclosed patient status (which is also content under the ECPA).

***Third***, Plaintiff adequately alleges each Massachusetts claim she asserts. LGH's challenges to particular elements of those claims lack merit, as do its challenges to the sufficiency of Plaintiff's allegations regarding her own communications. Plaintiff alleges more than sufficient detail to support her claims that LGH violated Massachusetts law by secretly injecting eavesdropping code on its website.

---

[1] "Jane Doe" is a pseudonym used to protect Plaintiff's privacy, given that this case involves private health information regarding Jane Doe. Prior to the removal of this case, the Massachusetts Superior Court approved Plaintiff's motion to proceed in pseudonym, and Ms. Doe's identity has been disclosed to counsel for Defendant per that order. *See* ECF 14 at page 54.

For the reasons detailed below, the Court should deny the motion to dismiss.

## II. THE FACTS.

### A. *LGH Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities.*

LGH injected hidden code in its website that enabled third parties, including Google, Facebook, and others, to eavesdrop on communications between LGH and patients, including Plaintiff. ¶¶ 32–61, 96.[2] The code caused consumers' browsers to intercept information about the substance of the communication made through each webpage a patient visited and to disclose that intercepted communication to third parties, all without informing the consumer. *See* ¶¶ 54-59 62–97. A few months after this lawsuit was filed, LGH significantly limited its use of tracking technologies on its website. ¶ 63.

The substance of communications intercepted included URLs and titles of webpages. URLs serve as addresses for webpages but sometimes also reveal information about the substance of the communication—those URLs are called "descriptive URLs." ¶ 52. LGH used descriptive URLs. For example, URLs for particular medical conditions and departments contained within them the name of the condition or department; therefore, when intercepted, they revealed the substance of the information communicated through the webpage. *See, e.g.*, *id.* (https://www.**lawrencegeneral**.org/**services**-and-centers/**cancer**-care) (emphasis added); ¶¶ 68-69, 74-76, 82, 84, 87-88, 90, 92-93, 95, 97. The tracking technologies also disclosed the title of each page visited, which further described the substance of the information communicated through the page (such as "Obstetrics and Gynecology | Lawrence General Hospital"). *E.g.,* ¶ 69, 82 & n.6.

The tracking technologies were also used in a way that revealed Plaintiff's and other consumers' status as patients—for example, by permitting Google and Facebook to eavesdrop on communications relating to patient bill payments. *E.g.,* ¶ 96-97. Although LGH trumpets that no tracking technologies

[2] "¶ __" refers to paragraphs of Plaintiff's Amended Complaint. Plaintiff filed the Amended Complaint in the Massachusetts Superior Court prior to LGH's removal of this case. The state-court e-filing system removes the color from and distorts some graphics in the Amended Complaint. Accordingly, although the amended complaint is attached to LGH's notice of removal (ECF 1-1 ECF page 46), Plaintiff attaches as **Exhibit 1** to this motion a high quality, color version of her Amended Complaint.

operated "*within* its patient portal" (MTD[3] 2) (emphasis added), that carefully crafted statement implies LGH **did use** the technologies on public pages through which patients initially connect to the portal before logging in.[4] That implication is correct: LGH did use during the class period (**and still uses**) tracking technologies on pages patients use to access the LGH patient portal.[5]

The interceptions were designed to enable Google and Facebook to associate the intercepted communications with individuals known to those third parties to facilitate individualized, targeted advertising to those individuals. The information Google and Facebook used to identify individuals included IP addresses, ¶¶ 34, 51, 58, 71, 77; browser fingerprints (unique combinations of browser and computer settings that confirm the identity of an individual), ¶¶ 70, 72-73, 78, 122 & n.7; and persistent personal identifiers (numbers) assigned by Google or Facebook used to track a particular individual's communications across the LGH Website and other websites. ¶¶ 34, 70, 79.

B. *LGH's Failure to Disclose Tracking Technologies and Their Implications for Patient Privacy.*

Plaintiff does not contend that LGH's mere **use** of tracking technologies necessarily results in liability under any claim. Instead, the core fact giving rise to liability on all claims is LGH's failure to disclose the tracking technologies and, in fact, its affirmative deception regarding them.

The code for tracking technologies, by design, is invisible to consumers, implemented through hidden code injected by the website owner (LGH) that is not depicted visually in any part of the website observable to the website user. ¶¶ 54-55, 59, 64. LGH did not disclose that any technology used on the website shared any communications with third parties such as Google or Facebook and instead told

[3] "MTD" refers to LGH's memorandum in support of its motion to dismiss, ECF 16.

[4] Unlike publicly accessible pages, pages within a patient portal are not archived through online services such as the Internet Archive's Wayback Machine. Accordingly, Plaintiff cannot determine before discovery to what degree LGH used tracking technologies "within" the portal. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 21, 2024) (describing "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery.").

[5] Plaintiff's counsel has confirmed that Google Analytics, Tapad, and Simlpifi were used during the class period **and are still used** on the pages through which users access the portal, including https://www.lawrencegeneral.org/your-visit/**patient-portal** and https://www.lawrencegeneral.org/**i-am-a-patient** (hidden code LGH injected into those pages intercepts and discloses to Google and others those descriptive URLs whenever individuals access those pages). Although Plaintiff's allegations are clear on the breadth of tracking technologies (e.g., ¶ 13 (describing "tracking technologies…on nearly every page of the…website")), Plaintiff can readily amend to add detail in connection with those specific pages, if necessary.

healthcare consumers that they did not share such information, including through several affirmatively deceptive statements. ¶¶ 25-31.

C. *Plaintiff's Communications Intercepted on the LGH Website.*

Plaintiff is a resident of Massachusetts and an LGH patient. ¶ 12. She regularly uses the LGH Website to obtain information about doctors, search for information on medical procedures, and obtain and review medical records. *Id.* The pages on the LGH Website that Plaintiff visits are the same pages on which LGH used the tracking technologies, and the substance of her communications was intercepted in the same manner as the examples Plaintiff presents in her complaint. ¶¶ 13, 80-88, 91-95 (trackers used on practically all pages, including the pages Plainitff visited). As a result of how LGH configured its website, including its use of descriptive URLs and tracking technologies on pages specifically for patients, LGH disclosed to Google, Facebook, and other third parties Plaintiff's status as an LGH patient, the identity of her doctors, information about her medical procedures, and her identity, confirmed through her IP address, browser fingerprints, and persistent identifiers assigned by Google and Facebook. *Id.*; n.5, *supra.* Plaintiff neither knew of nor consented to the interceptions or disclosures. ¶ 14.

## III. ARGUMENT

A. *Plaintiff States a Claim for Violation of the ECPA.*

LGH violated the ECPA by enabling third parties, including Google and Facebook, to eavesdrop on healthcare consumers' communications with LGH through the LGH website, without consumers' knowledge or consent. LGH makes two arguments for dismissal of the ECPA claim—first, that it was a party to the communications and therefore may assert a one-party consent defense (and that the crime-tort exception to that defense does not apply); and second, that the interceptions did not involve the "contents" of any communication. Both arguments lack merit.

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent.

a. Plaintiff Identifies Several Legal Bases for the Crime-Tort Exception.

As LGH recognizes, although the ECPA provides a defense if **either party** to a communication consents to its interception (and LGH consented here by placing the technologies on its website), the ECPA imposes a **two-party** consent requirement (thus requiring the consent of **both** LGH **and** Plaintiff) if a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d). LGH's argument assumes Plaintiff's claims turn upon proof of a violation of a December 2022 Department of Health and Human Services Bulletin ("HHS Bulletin"). MTD 3-5. LGH argues such proof fails because "portions" of that Bulletin were vacated in *Am. Hosp. Ass'n v. Becerra*, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024). LGH's argument is wrong for several reasons.

***First***, Plaintiff does not rely solely on HIPAA to invoke the crime-tort exception. She also alleges LGH acted with tortious intent based upon Massachusetts statutory and common law torts for which she asserts claims. ¶¶ 157-58, 168-86, 196-207.[6] LGH ignores those claims in its discussion of the crime-tort exception, but those claims provide independent bases for applying the crime-tort exception. The torts include intrusion upon seclusion and disclosure of private facts (two torts codified by the Massachusetts Right to Privacy Act, ("MRPA")),[7] breach of fiduciary duty, and breach of confidence. Although the precise elements of those torts vary, the tortious purpose Plaintiff alleges for each is the same—the intentional disclosure to third parties of communications in contradiction to LGH's own published policies and consumers' reasonable expectations of privacy. None of those claims require a

[6] ¶¶ 157-58 ("The party exception…does not permit a party…to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act…. Lawrence General intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, violation of HIPAA and the FTC Act, **as well as the other causes of action set forth in this complaint**.") (emphasis added); ¶¶ 168-86, 196-207 (Massachusetts statutory and common law tort claims).

[7] The MRPA codifies common law torts and thus provides remedies for the "tort [for] invasion of privacy." *Transamerica Ins. Co. v. KMS Patriots*, 52 Mass. App. Ct. 189, 195-96 (App. Ct. 2001); *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rep. 87 (2007) (MRPA creates "statutory tort of invasion of privacy"); *Peckham v. Bos. Herald, Inc.*, 48 Mass. App. Ct 282, 283 (App. Ct. 1999) (MRPA creates a "tort claim of public disclosure of private facts"); *Commonwealth v. McCarthy*, 484 Mass. 493, 510 & n.18 (2020) (MRPA "creates a cause of action for tort liability").

HIPAA violation as an element of the claim; indeed, they are not specific to the healthcare industry. LGH offers no reason those claims should be construed to cover only circumstances in which a business violates HIPAA or the HHS Bulletin; to the contrary, as argued below, **every** Massachusetts court to have considered those claims in cases relating to tracking technologies has **affirmed** such claims without reference to HIPAA, even where healthcare wasn't involved. *See* §§ III-C, D, E, *infra*.

Plaintiff's well-pled allegations regarding those intentional torts (including the applicable *mens rea* for such torts[8]) satisfy the crime-tort exception for the ECPA's one-party consent rule. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (holding "tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same). Given these independent bases for pleading tortious intent, the Court need not resolve the scope of HIPAA obligations to sustain Plaintiff's ECPA claim.

***Second***, even focusing on HIPAA, LGH overstates *Becerra*'s significance. LGH attempts to create the impression *Becerra* opened the door for any and all use of tracking technologies on healthcare provider websites, regardless of how the technologies are implemented, what communications they intercept, or businesses' disclosure to patients. *Becerra* is not so broad. *Becerra* did not vacate HIPPA's statutory provisions—which is what Plaintiff cites in invoking the crime-tort exception in her ECPA count (Plaintiff doesn't even reference the HHS Bulletin in her ECPA count). *See* ¶¶ 147-67. Critically, to the degree *Becerra*, beyond its holding vacating part of the HHS Bulletin, also construes HIPAA or the Privacy Rule, those constructions do not bind this Court or require this Court to ignore other contrary persuasive authority (discussed in this brief) construing HIPAA and the Privacy Rule more broadly.

---

[8] More precisely, the pleading of tortious intent is all that matters under the crime-tort exception under HIPAA; LGH's arguments presented later in its brief on other elements of Plaintiff's tort claims do not affect Plaintiff's invocation of the crime-tort exception, so long as a tortious **purpose** is present. "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *12 (C.D. Cal. Jan. 13, 2025) (quotation omitted).

Even as to the HHS Bulletin, *Becerra* didn't vacate it entirety. Instead, *Becerra* vacated only one part of *Becerra* relating to a so-called "Proscribed Combination" of an "IP address" and a public webpage "addressing specific health conditions or healthcare providers." It held that interception of those two facts, **standing alone**, is insufficient for a HIPAA violation. 2024 U.S. Dist. LEXIS 108847, at *6-7. Here, Plaintiff alleges that LGH's interceptions disclosed more than the "Proscribed Combination."

HIPAA's express terms provide that it applies where "(1) the PHI relates to the individual's 'past, present, or future physical or mental health or condition,' their receipt of healthcare, and/or their payment for healthcare; and (2) the PHI 'identifies' the individual or could reasonably 'be used to identify' them." *Id.* at 36 (quoting 42 U.S.C. § 1320d(6)). As to the first prong, Plaintiff alleges more than pages regarding medical conditions. She also alleges LGH disclosed patient status to Google and Facebook by surreptitiously using tracking technologies on pages specific to patients—for example, the bill payment page (*see* § II-A, C, *supra*). In a landmark decision against Facebook concerning Meta Pixel that construed HIPAA's statutory terms directly, the court held that "patient status is protected health information" under HIPAA, and therefore, intercepted webpage communications "which show[] patient-status constitute protected health information." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 792. The court held further that interceptions through Meta Pixel showing that "a user is about to log in to a healthcare provider's website" reveal "patient status." *Id.*[9] The allegations here regarding the disclosure of consumers' patient status satisfy the first prong.

As to the second prong ("could reasonably be used to identify" the patient), Plaintiff does not rely solely on an IP address but also browser fingerprints (which alone can confirm identity with 99.24% accuracy) and persistent identifiers used by Facebook and Google, and how the combination of those

[9] LGH's own authorities confirm that public webpages reflecting patient status reveal private health information. *Nienaber v. Oberlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("As other courts within this Circuit have acknowledged, the transmission of information submitted to a *private patient portal*—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (D. Or. Nov. 14, 2024) (affirming same rule); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("navigating to…a healthcare provider's patient portal differs from…general internet browsing…because it conveys a user's patient status"). Public pages other than patient portal logins may similarly disclose patient status. *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, 16-17 (D. Or. Aug. 28, 2024) (interceptions disclosing "status as a patient" through "financial assistance form" supported HIPAA violation).

identifiers permits Google and Facebook to affirmatively identify individuals. ¶¶ 34, 51, 58, 70-73, 77-79, 122 & n.7. That is the precise function of the tracking technologies' use of multiple forms of identifying information; the combination permits Google and Facebook to confirm identity with sufficient certainty to serve individualized advertising based on the known individual's intercepted communications. *See, e.g., Kurowski v. Rush Sys. For Health*, 2024 U.S. Dist. LEXIS 126837, at *17-19 (N.D. Ill. July 18, 2024) (disclosure of IP addresses, together with browser fingerprints and other identifiers combined with substantive health information, violates HIPAA).

Consistent with the limited reach of *Becerra*, courts find HIPAA violations without reference to the HHS Bulletin and its "Proscribed Combination"; indeed, very few ECPA cases even discuss *Becerra* after its issuance (LGH cites none). For example, the court in *Kurowski,* although not discussing *Becerra* directly, "expressly declined to defer to [the HHS] bulletin," thus avoiding the defendant's argument that the Bulletin was issued after that plaintiff's communications on the website. 2024 U.S. Dist. LEXIS 126837, at *19. Even without considering the HHS Bulletin, the court found that the type of information intercepted (which, like here, went beyond the Proscribed Combination in that it included "status as a…patient" and identifiers other than IP address) violated HIPAA. *Id.* at *17-20.

Likewise, in *Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025), the court squarely considered *Becerra* and held it does **not** preclude invoking HIPAA under the ECPA's crime-tort exception, reasoning, similar to *Kurowski*, that "Plaintiff's claims are not premised on a violation of HHS guidance, but rather are based on violations of various statutes and common law…. Thus, the HHS guidance being vacated does not affect the merits of Plaintiff's allegations." *Id.* at *10. It also noted the plaintiff alleged identification not only via IP addresses but also "other specific user information that permitted identification," including the same identifiers as here. *Id.* at *11-12.

In short, *Becerra* effects no blanket rule that tracking technologies are now permissible under HIPAA. It certainly does not preclude Plaintiff's reliance on state law torts, which, as described below, provide broader protection than HIPAA.

b. Plaintiff Alleges Criminal and Tortious Purpose.

LGH argues that Plaintiff fails to allege a criminal or tortious "purpose." The ECPA's crime-tort exception does not impose a specific intent requirement; that is, it does not require the defendant to act for the purpose of violating the law itself. "A party does not have to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort.' The text points to the 'purpose of committing any criminal or tortious act.' …. The purpose must be to commit an act, and that act must be criminal or tortious." *Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). Put another way, "the phrase 'for the purpose of' does not require that a party act with knowledge that its intended use of the intercepted communication is illegal," that is, a "heightened willfulness requirement"; instead, the ECPA simply requires the "*mens rea*…of the underlying torts or crimes." *Kurowski,* 2024 U.S. Dist. LEXIS 126837, at *12-13.[10] Here, that means LGH must have "actively chose[n] to employ the tracking technology on certain pages of its website that were likely to contain" personal information. *Id.* at 14. Plaintiff meets that requirement—she alleges LGH has the power to decide what tracking technologies it uses on its website and chose to implement them secretly. ¶¶ 55-58, 61-63.

The fact that LGH also had a financial motive (*see* MTD 7-8 (discussing supposedly "contradict[ory] allegations of "financial gain")) does not immunize it from liability. "Many crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *16 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 28 (D. Minn. 2024)). "[N]othing in [the ECPA] requires that a party act with the *sole*[11] purpose of committing the underlying crime or tort";

[10] *Brahm v. Hosp. Sisters Health Sys.,* 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "plaintiff alleges that defendants intercepted patients' electronic communications *for the purpose* of making disclosures that violated HIPAA") (emphasis added); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *14 ("intent to disclose [the] information" sufficient for exception); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (affirming ECPA claim based on purpose of disclosing communications that HIPAA protects). LGH's case law (MTD 6-8) contain passages that, on the surface, sound supportive of its position, but the cases contain no clear holding by those courts to impose a heightened willfulness requirement.

[11] LGH's argument that allegations of a motive for "financial gain" "contradict" allegations of criminal or tortious purpose (MTD 7-8) ignore that a financial motive can coincide with a criminal or tortious purpose. That is what Plaintiff alleges here—although she acknowledges LGH's financial motives, she alleges that motive was part of a criminal and tortious purpose. To

accordingly, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Id.; Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 134570, at *26 (S.D.N.Y. July 30, 2024) ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.").[12]

Finally, LGH is also wrong to argue (MTD 6, 8) that Plaintiff fails to allege a tortious or criminal purpose "independent of" the interception. Plaintiff alleges that LGH injected the tracking technologies onto its website (the act giving rise to ECPA liability) for the purpose of disclosing the contents of the intercepted communication and facilitating their subsequent improper use by third parties, which violates HIPAA and statutory and common law torts. ¶¶ 5-6, 23, 120, 122, 128, 138, 151, 156, 160, 162-64, 170, 172-74, 182-85, 189, 192-94, 200-05, 213, 218. Where, as here, there are clear allegations that a business (i) injects tracking technologies for (ii) the purpose of a tortious disclosure to third parties, the better-reasoned cases hold that tortious disclosure of the intercepted communications supports the crime-tort exception. *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8-9 (a common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties," and observing that defendants' argument, if accepted would mean that "tortfeasors under the ECPA would enjoy a bizarre defense to liability as a reward for their efficiency"); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *8 (S.D.N.Y. Sept. 16, 2024) (in carefully reasoned decision, holding "[t]he Complaint sufficiently alleges an independent action secondary to the

---

the degree cases hold a party acting with a financial motive is exempt from the crime-tort exception, those authorities are not persuasive for the reasons set forth in the cases cited in the accompanying text and preceding footnote—crimes and torts are often committed for financial motives. LGH's own authority confirms that "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999).

[12] *R.S.*, 2025 U.S. Dist. LEXIS 6338, at 18-19 ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose relating to HIPAA); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (same); *R.C.,* 733 F. Supp. 3d at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

interception"—the "use[]" of "the content of [the] communications [by] Facebook [and] Google") (collecting and analyzing authorities).[13]

In short, Plaintiff's allegations of tortious purpose are sufficient.

2. Plaintiff Alleges the Interception of the Contents of Her Communications

LGH argues in a paragraph, primarily citing cases construing Florida law and not the ECPA, that Plaintiff alleges no interceptions that reveal the "contents" of any communication because no "substance" of communications was revealed. MTD 8-9. Plaintiff details in her complaint how LGH configured its website to use descriptive URLs, which reveal the substance of the information a consumer requests and LGH provides in response, and also to disclose webpage titles, which further reveal the substance of particular webpages. *See* §§ II-A, *supra.* Although LGH attempts to create the impression that "webpage views" can never disclose "contents," such a simplistic, "categorical assessment that [webpages] *never* 'concern[] the substance, purport, or meaning' of a communication misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *In re Google Inc.*, 806 F.3d 125, 136 (3d Cir. 2015). Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 796 ("descriptive URLs" are "'contents'").[14] Plaintiff's allegations regarding descriptive URLs and webpage titles satisfy the "contents" element.

Plaintiff also alleges LGH engaged in interceptions that revealed consumers' patient status. *See* § II-A, C & n.4. Interceptions that disclose patient status are also "contents" under the ECPA. *Meta Pixel*

[13] *See also R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA…. Instead, R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent and separate from Prime Healthcare's *interception*."). Plaintiff recognizes LGH cites two cases construing an "independent act" requirement to dismiss claims against hospitals (MTD 8). Those cases do not grapple with allegations of disclosure and subsequent use that Plaintiff presents here, and, respectfully, distort the statutory language, which contains no express requirement that the interceptions be simultaneously part of a tortious scheme but somehow also distinct from it.

[14] *See also Castillo* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" count as "contents"); *M.G. v. Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *12 (N.D. Cal. Sept. 16, 2024) (same); *R.C.*, 733 F. Supp. 3d at 902 ("descriptive URLs" are contents); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same).

*Healthcare*, 647 F. Supp. 3d at 795-96 (website communications involve "contents" if they reveal patient status); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs revealing "patient status" are "contents").

B. *Becerra Is Irrelevant to Plaintiff's Massachusetts Claims*

LGH argues that "every one of Plaintiff's claims is premised on the alleged disclosure of PHI," and that Plaintiff's allegations regarding PHI are based "in large part" on the HHS Bulletin. MTD 3, 4. This is simply not so. **None** of Plaintiff's claims reference the HHS Bulletin. ¶¶ 147-223. Plaintiff's claims for negligence and breach of confidence reference HIPAA, but only as **one of several** bases for a duty underlying those claims. ¶¶ 192, 198. The scope of HIPAA is, therefore, not dispositive of those claims. Plaintiff's other claims do not reference HIPAA and in no way hinge upon its violation; indeed, as explained below, Massachusetts courts define those claims without reference to HIPAA. LGH cites **no** authority holding that any Massachusetts claim must be limited only to circumstances where HIPAA violations are proven; *Becerra* has no role in resolving the scope of Massachusetts law. *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (motion to dismiss decision and transcript attached as **Exhibit 2**) (Judge Davis, construing Massachusetts law: "I agree with you that I think HIPAA is a bit of a red herring in this proceeding and in these arguments…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake.").[15]

C. *Plaintiff States a Claim under the MRPA*

The MRPA, M.G.L. c. 214 § 1B, codifies and broadens certain common law privacy torts. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991) (describing how "the Legislature appears to have framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis"). Plaintiff makes clear in her complaint that she invokes two alternative theories of tort liability under the MRPA—(i) intrusion upon seclusion and (ii) public

[15] Plaintiff's occasional use of the defined term "Private Information" as a shorthand to summarize the types of communications intercepted did not tie each claim to HIPAA, as reflected in the claims for which Plaintiff invokes HIPAA non-exclusively as one of several sources of obligation (including the ECPA, negligence, and breach of confidence claims).

disclosure of private facts, ¶¶ 170-74, two torts well-known at common law that the Massachusetts Supreme Judicial Court ("SJC") has expressly held are incorporated within the MRPA's "broad" terms, *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

Applying these alternative tort theories, four Massachusetts Superior Court justices and one federal judge have each concluded that the surreptitious use of tracking technologies states a claim for violation of the MRPA. *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024); *Partners Healthcare*, Ex. B at 44 (plaintiff "states a viable claim for invasion of the right of privacy" under MRPA based on the same allegations as those here). The SJC has also "emphasize[d]" in a case similar to this one "that the Legislature has provided…statutory and common-law protections…directly applicable to misrepresentations or misuse of private medical information" that are likely "cognizable" under the facts alleged here, including the MRPA. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849-50 (2024). **There is no contrary authority**. Other than a fallacious distinction of *Tenet Healthcare*,[16] LGH does not mention the directly on-point decisions, focusing instead on Massachusetts authority that involves dissimilar facts (cited apparently only for general propositions) and out-of-state authority that does not align with Massachusetts law.

1. Plaintiff's Allegations Regarding Her Own Communications Are Sufficient.

LGH argues (MTD 9-10) the Complaint lacks detail on the interceptions that happened to her. Plaintiff, however, describes in the Complaint her communications regarding particular doctors and medical procedures and her requests for medical records (which revealed her status as an LGH patient), and she explains through examples what aspects of those communications the tracking technologies intercepted and disclosed. ¶¶ 12-13, 80, 81-88, 91-95.

[16] LGH attempts to distinguish *Tenet Healthcare* as "pre-*Becerra*" and lacking a "substantive analysis of HIPAA's provisions." MTD 4-5. There's no suggestion in *Tenet Healthcare*, however, that **any** claims depended upon a HIPAA violation; the decision only references HIPAA as one potential source of an implied contract (in addition to the healthcare provider's "privacy policies"). *Id.* at *14. HIPAA isn't even referenced in connection with other claims, including the MRPA tort claims.

If LGH means to argue that Plaintiff must, to be a plaintiff, identify in her complaint her precise medical conditions and procedures she has obtained, that is wrong.[17] *In re Meta Pixel Tax Filing Cases.*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting similar argument that complaint "reveals little about the information that Plaintiff entered on its website" in connection with MRPA claim) (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674). Plaintiff provides sufficient detail to provide LGH notice of the claims against it.[18]

2. <u>Plaintiff Adequately Alleges Intrusion upon Seclusion.</u>

As to intrusion upon seclusion, controlling precedent confirms that allegations of "electronic surveillance" state an MRPA claim; whether such surveillance violates the statute in a particular case "presents a question of fact." *Polay*, 468 Mass. at 382-84 (2014). The question of whether LGH "disseminated any 'highly personal or intimate facts'" (MTD 9) pertains only to the tort of disclosure of private facts; such allegations are not necessary to an intrusion upon seclusion claim.

LGH's principal argument is that any communications on a "public website" are beyond the MRPA's scope. There is no such black-and-white rule even under the common law,[19] but even if there were, the MRPA is broader and applies even where "an individual's conduct is observable by the public" if the "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." *Id.* at

[17] LGH's citation to *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023), for the suggestion that a plaintiff must disclose their actual medical condition or similar private information to be a plaintiff, is negated by a later decision in that same case, where the court affirmed the sufficiency of allegations very similar to those here, which described the types of information intercepted without disclosing the names of the plaintiff's doctors or her specific medical conditions. *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *7-8 (N.D. Ill. Dec. 11, 2023). *See also* n.30, *infra*.

[18] The Superior Court allowed plaintiff to proceed in pseudonym, but LGH remains free to challenge that ruling, as defendants in some other cases have done to dissuade plaintiffs from pursuing their claims, and therefore, there remains a risk that Plaintiff's identity will be ordered to be disclosed at some point. In any event, if the Court believes Plaintiff should disclose more now, rather than in discovery, Plaintiff would consider amending to provide whatever further detail the Court requires. This is not a question of Plaintiff's ability to plead facts but instead a matter of weighing Plaintiff's privacy against the need to give LGH sufficient notice under Rule 8 of the claims against it.

[19] *See, e.g., M.R.*, 2024 U.S. Dist. LEXIS 155513, at *16-17 (affirming intrusion claim based on tracking technologies used on public parts of healthcare website); *Doe v. Bon Secours Mercy Health*, 2021 Ohio Misc. LEXIS 3985, at *12 (Ct. Com. Pl. Nov. 22, 2021) (same); L*amarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *16-17 (Super. Ct. Oct. 3, 2024) (same).

384. Every Massachusetts court to apply the SJC's decision in *Polay* to website tracking technologies has found it supports a claim on the facts alleged here. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17.[20]

LGH also ignores a critical series of allegations here—that its privacy policy deceptively suggested that information would be shared for only limited purposes (not including third-party marketing), which reinforced consumer expectations that their communications would be private. ¶¶ 25-30. Such false promises bolster Plaintiff's claims for intrusion upon seclusion and distinguish this case from those LGH cites (MTD 10) for the proposition that reasonable users should expect collection of some data. *See also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion upon seclusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion upon seclusion claim where Google's practices contradicted its own disclosures).[21]

That deception also rebuts LGH's contention (MTD 10-11) that a supposed "legitimate business purpose" provides it a defense. Plaintiff's claim does not challenge LGH's mere **<u>use</u>** of tracking technologies; instead, Plaintiff alleges LGH failed to disclose those technologies and their implications for patient privacy and affirmatively deceived consumers. Whatever "legitimate" reasons a business may have to use tracking technologies, there is no legitimate reason to deceive patients regarding them.[22]

3. <u>Plaintiff Adequately Alleges Disclosure of Private Facts.</u>

As to Plaintiff's claim for disclosure of private facts (¶¶ 172-74), LGH argues only that the communications LGH helped intercept were not sufficiently personal or intimate. The MRPA is broader than the common law as some states construe the claim because it does not require broad publication;

---

[20] Consistent with *Polay*, LGH's own authority confirms that "unwanted surveillance" states a claim. *Clark v. Zwicker & Assocs., P.C.*, 2024 U.S. Dist. LEXIS 82882, at *17-18 (D. Mass. May 7, 2024).

[21] *See also Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim where company's "privacy disclosures…failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (Cir. Ct. Aug. 5, 2020) (tracking technologies contradicted "express promises of privacy to patients"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" supports invasion of privacy claim).

[22] In LGH's authority on "legitimate business purposes," the defendant's conduct was specifically "authorized," in contrast to here, where LGH failed to obtain any authorization. *See Squeri v. Mt. Ida Coll.*, 954 F.3d 56, 69-70 (1st Cir. 2020).

the SJC has held that "publication" even among a limited group of employees within a firm is enough, confirming the MRPA "depart[s]…from the Restatement's concept of the tort" in this respect. *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508, 519 & n.15 (1984). Here, Plaintiff alleges consumers' communications with healthcare providers, for which they had a reasonable expectation of privacy, were shared with third-party technology companies that then used the intercepted communications for individualized advertising. Such facts comfortably fit within the tort under the MRPA. *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (affirming MRPA claim based on tracking technologies' disclosure of private facts); *Tenet Healthcare*, 731 F. Supp. at 151-52 (same).[23]

LGH's refrain that no tracking technologies were "installed **in** LGH's patient portal" ignores its use of tracking technologies on public pages that nonetheless confirm patient status (*see* II-A-C, *supra*). In any event, to repeat (*see* § III-B, *supra*), no case holds or even suggests the MRPA provides a claim only if there is a HIPAA violation (or violation of the HHS Bulletin). In fact, *Alves* affirmed such a claim against an ordinary retailer not involved in healthcare (BJ's Wholesale Club), underscoring that the MRPA applies broadly to surreptitious interceptions of communications, particularly where such interceptions contradict a company's promises made in published policies. 2023 Mass. Super. LEXIS 59, at *13-17.

D. *Plaintiff States a Claim for Breach of Fiduciary Duty*

LGH's only argument regarding Plaintiff's claim for breach of fiduciary duty is that a patient's interaction on the LGH Website is not "within the scope" of any fiduciary duty LGH owes to patients. LGH cites **no** factually pertinent authority on this argument. Its primary authority on this issue—*Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003—is distant from the facts here; the conduct giving rise to purported liability—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given that the website is designed for use by patients as patients. ¶¶ 18-20.[24] In

[23] Even under the more stringent common law rule, courts affirm such claims on similar facts. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming disclosure of private facts claim based on secret use of tracking technologies); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (same); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *17-18 (same); *R.C.*, 733 F. Supp. 3d at 888-95.

[24] LGH's only other Massachusetts authority that even remotely touches upon medical issues, *Kelley*, 23 Mass. L. Rep. 87, involved much different facts. In *Kelley*, a pharmacy shared a list of consumers receiving certain prescriptions to a vendor to

*Emerson*, the court, applying Massachusetts law, rejected the same argument LGH makes here—that patient communications on a hospital's website are not sufficiently related to the fiduciary doctor/patient relationship. *Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7. Every other Massachusetts court to have considered a fiduciary duty claim for surreptitious use of tracking technologies has affirmed such a claim.[25]

E. *Plaintiff States a Claim for Breach of Confidence*

LGH's only arguments on Plaintiff's claim for breach of confidence are that it is "duplicative" of her breach of fiduciary claim and fails for "same reasons." As LGH recognizes, the SJC has held that "a duty of confidentiality arises from the physician-patient relationship, and that a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort." *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985). Although the SJC described its holding as arising in part from the "fiduciary obligation to hold in trust confidential information," *id.,* the SJC announced a new cause of action, drawing upon several sources, rather than merely purporting to construe existing tort law of breach of fiduciary duty. Plaintiff's allegations support a claim under this rule.[26]

Even if the Court does hold that *Alberts* is merely an application of a claim for breach of fiduciary duty rather than a distinct claim, then *Alberts* further confirms Plaintiff states such a claim.

F. *Plaintiff States a Claim for Negligence*

On Plaintiff's negligence claims, LGH ignores the most on-point authority affirming the same claim on substantively the same facts. *Tenet Healthcare*, 731 F. Supp. 3d at 149 (affirming negligence claim

send mailings paid for by a pharmaceutical company. No information was provided to the pharmaceutical company, and the vendor received any information under a confidentiality agreement that forbade it from using the information for other purposes. *Id.* at *5-15. That is quite different than here, where third parties such as Google and Facebook were free to use the intercepted communications **for their own commercial purposes**. Moreover, there was no suggestion in *Kelley* that consumers were deceived, in contrast to here, where LGH employed deceptive privacy disclosures to consumers that indicated LGH would not engage in the precise conduct in which it engaged.

[25] *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners Healthcare* (margin order, attached as Ex. B) (affirming breach of fiduciary duty claim); *Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" for secret use of tracking technologies). For cases affirming such claims under other states' law, *see. e.g, Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Coooper*, 2024 U.S. Dist. LEXIS 134570, at *31-34 (same).

[26] *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (affirming breach of confidence claim under Massachusetts law in addition to breach of fiduciary duty claim); *Cooper*, 2024 U.S. Dist. LEXIS 134750, at *32-33 (rejecting argument for dismissal that breach of physician-patient confidentiality claim is necessarily duplicative of breach of fiduciary duty and other common law claims).

for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same); *see also Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies). In any event, its arguments each lack merit.

***Plaintiff Alleges Several Bases for a Duty.*** The contours of the duty LGH owes to healthcare consumers may be informed by statute, particularly in areas of negligence law in which standards are continuing to develop, even if statutes impose no "per se" liability. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990) (even though "violation of a statute does not by itself establish breach of duty," it does provide "some evidence of the defendant's negligence") (quotations omitted).[27] Statutory obligations may be considered alongside ethical standards (such as those alleged here) to inform the scope of duty. ¶ 191; *Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 617, 627 (E.D. Tex. 1998) (holding "ethical duties [relating to] the accepted standards of medical care which a reasonable health care provider would follow…relevant to Plaintiffs' negligence and gross negligence claims.").

***Plaintiff Alleges a Breach of Duty.*** LGH's only argument on breach (MTD 14) assumes Plaintiff's negligence claim depends upon a HIPAA violation. Plaintiff **does** allege a HIPAA violation (§ III-1-A, *supra*), but in any event, Plaintiff also cites several additional statutory and other sources that may inform the contours of a duty for a negligence claim (including state medical privacy law, *see* ¶ 191). There is no basis to hold Massachusetts negligence law should be limited to HIPAA violations (§ III-B, *supra*).

G. *Plaintiff Sufficiently Alleges Damages.*

LGH's argument that Plaintiff fails to allege "cognizable harm" (an argument it makes **only** as to Plaintiff's claims for breach of fiduciary duty, negligence, and contract, apparently given other forms of relief available for other claims[28]) ignores Plaintiff's detailed allegations and is inconsistent with

[27] *See also Lamarr*, 2024 Ind. Super. LEXIS 107, at *11-12 (statutory duties under FTC Act and HIPAA can "inform" scope of duty at common law even without negligence *per se*). LGH's authorities are either unpersuasive or not to the contrary. *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710 (2014), like *Bennett*, reflects a rule against *per se* liability but confirms statutes are "relevant" to defining the scope of duties that may be vindicated through a claim for negligence. *Williams v. TMC Health*, 2024 U.S. Dist. LEXIS 178452, *18-20 (D. Ariz. Sept. 30, 2024) likewise considered an assertion of *per se* duty, rather than addressing whether HIPAA might inform the scope of a duty defined at common law, and in any event, is an out-of-state authority that lacks the persuasive force relative to the binding Massachusetts precedent Plaintiff cites in the accompanying text.

[28] *See Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12 (actual damages not required element of MRPA claim).

Massachusetts law. LGH's argument depends on its pretending Plaintiff's summary of damages (¶ 138) are her only relevant allegations, ignoring detailed allegations regarding the significant economic value the intercepted communications have to consumers, LGH, and the third-party eavesdroppers and advertisers that monetize those intercepted communications.[29]

LGH's argument that Plaintiff fails to identify what "specific information" was "disclosed to a third party" (MTD 14) ignores the detailed allegations on precisely these issues (¶¶ 12-23, 80, 81-88, 91-95).[30] Such allegations are sufficient. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" are sufficient at the pleading stage for the Massachusetts claims Plaintiff brings here).[31]

H. *Plaintiff States a Claim for Breach of Contract.*

LGH's argument on breach of contract ignores its own privacy policy, through which it deceived consumers about its disclosure of communications to third parties. LGH argues Plaintiff fails to allege "reliance," but contract law does not require that the parties "read the terms" to be bound by them. *Good v. Uber Techs., Inc.*, 494 Mass. 116, 141 (2024).[32] And, there is no doubt that LGH assented to the terms

---

[29] ¶¶ 21-24, 30 (describing value of privacy to consumers); ¶¶ 162, 165 (describing "valuable services" LGH obtained in exchange for permitting Google and Facebook to eavesdrop on patient communications, resulting in increased revenue for LGH); ¶ 34-36 (describing how Meta Pixel contributes to building of individual profiles from which "Facebook derives most of its revenue"); ¶¶ 41-43 (Google Analytics key part of building "detailed profiles on individuals" from which "Google derives a substantial portion of its revenue"); ¶¶ 71, 77, 83-84, 87-88, 90, 97 (describing precisely how Google and Facebook extracted commercial value from the information intercepted through the tracking technologies). That Plaintiff has not yet quantified damages or presented expert testimony on value does not matter. *Lee v. Conagra Brands, Inc.,* 958 F.3d 70, 80-81 (1st Cir. 2020) (plausible, even if general, allegations of benefit-of-the-bargain damages at pleadings stage sufficient).

[30] If LGH suggests Plaintiff must record and present the precise details of interceptions of her communications, similar to the examples in her complaint, *see. e.g.,* ¶ 68, LGH proposes an impossible-to-meet burden, given those examples were created using special tools activated at the time of browsing that record network traffic. ¶ 64. Plaintiff was unaware of the interceptions at the time of her communications; she had no reason to use such specialized tools to record network traffic at that time.

[31] *See also Meta Pixel Healthcare*, 2024 U.S. Dist. LEXIS 15391, at *12 (the allegation, even without quantification or expert testimony, that "Meta unjustly profited from the data taken," is sufficient); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-21 (allegations of "loss of privacy," "diminution in value," and "loss of the benefit of [the] bargain" sufficient even if not quantified; "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have"); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (similar); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (similar).

[32] Plaintiff's status as a patient is significant as to her assent. Although it is not possible without discovery to confirm whether LGH required Plaintiff to assent to the relevant policies as part of the patient portal sign-up process (because the signup

of its own policies as it drafted them. The **only** Massachusetts authorities to have considered the same claims Plaintiff asserts here on substantively identical facts have affirmed such claims. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *see also Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies).[33]

LGH's argument (MTD 16-17) that there is no "consideration" for an agreement to comply with existing legal obligations disregards the substance of LGH's own written policies, which do not simply echo HIPAA obligations but instead include promises only to share information for specified purposes, not including helping third-party marketers build individualized advertising profiles. ¶¶ 25-30.

I. *Plaintiff States a Claim for Unjust Enrichment*

LGH's sole argument on unjust enrichment is that Plaintiff has an adequate remedy at law. All Massachusetts courts to have considered this claim under the same substantive facts has affirmed them, including rejecting the precise argument LGH makes here. *Tenet Healthcare*, 731 F. Supp. 3d at 150-51 (affirming unjust enrichment claim, reasoning a plaintiff "may plead" unjust enrichment and legal remedies "in the alternative"); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9-14 (affirming unjust enrichment claim under Massachusetts law); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (same); *see also Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on hidden tracking technologies).[34]

## IV. CONCLUSION

The Court should deny LGH's motion to dismiss.

---

process is not archived on the Wayback Machine), such clickwrap agreements are common. No doubt, had the policy contained an arbitration agreement, LGH would be touting the policy as an enforceable agreement.

[33] Well-reasoned authorities from other jurisdictions are in accord, particularly where a published privacy policy includes false promises of non-disclosure. *Lamarr*, 2024 Ind. Super. LEXIS 107, at *16-17 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Bon Secours*, 2021 Ohio Misc. LEXIS 3985, at *13-14; *Elkins v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

[34] *See also Zelby Holdings, Inc. v. VideogeniX, Inc.*, 92 Mass. App. Ct. 86, 92-93 (App. Ct. 2017) ("Zelby properly pleaded alternative bases for relief, and dismissal of its unjust enrichment claim would be inappropriate as it presupposes the existence of a valid underlying contract."). Other states are in accord. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *21-23; *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *21-22; *Lamarr*, 2024 Ind. Super. LEXIS 107, at *21-22 (same); *Elkins*, 2024 Ind. Super. LEXIS 340, at *10.

Dated: March 14, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: March 14, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely