**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

**Suffolk, ss.**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>LAWRENCE GENERAL HOSPITAL,<br><br>Defendant. | **Case No. 1:25-cv-10081-NMG**<br><br>**Leave to file granted on March 11, 2025 (ECF No. 24)** |

**PLAINTIFF'S RESPONSE TO AMICUS BRIEF OF CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA**

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**Table of Contents**

I. Introduction ... 1

II. Argument ... 1

A. Plaintiff's Claim Aligns with Established Law; It Is Not "Novel." ... 1

B. The Chamber Dramatically Overstates the Effects of Applying Established Precedent. ... 3

C. The Chamber Distorts Plaintiff's Allegations. ... 5

D. The Chamber's Authorities on the Crime-Tort Exception Do Not Undermine Plaintiff's Claim. ... 6

E. Plaintiff Does Not Propose a Private Right of Action for HIPAA ... 6

F. The Rule of Lenity Does Not Apply. ... 7

III. Conclusion ... 7

# Table of Authorities

Pages

**Cases**

*Adams v. Holder*,
692 F.3d 91 (2d Cir. 2012) ........ 7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 3

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 6

*Gaige v. Exer Holding Co., LLC,*
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ........ 6

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ........ 6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 3

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 2, 4

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015) ........ 6

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) ........ 1, 2

*James v. Walt Disney Co.*,
2023 U.S. Dist. LEXIS 200997 (N.D. Cal. Nov. 8, 2023) ........ 7

*Joffe v. Google. Inc.*,
746 F.3d 920 (9th Cir. 2013) ........ 2, 7

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ........ 6

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ........ 2

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 6

*Meredith v. Galvin*,
446 F.2d 794 (8th Cir. 1971) ....................6

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ....................6

*Muscarello v. United States*,
524 U.S. 125 (1998) ....................7

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ....................4

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ....................6

*Sussman v. Am. Broad. Cas.*,
186 F.3d 1200 (9th Cir. 1999) ....................6

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) ....................3

*Yershov v. Gannett Satellite Info. Network Inc.*,
820 F.3d 482 (1st Cir. 2016) ....................4

**Statutes**

18 U.S.C. § 2510 ....................7

18 U.S.C. § 2511 ....................7

# I. INTRODUCTION

Twenty-two years ago, the First Circuit resolved a landmark federal wiretap case involving the undisclosed use of tracking technologies on medical websites, involving facts strikingly similar to those alleged here. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 13-16 (1st Cir. 2003). The First Circuit affirmed the consumers' claim, holding that the surreptitious use of tracking technologies to intercept website communications violates the ECPA. *Id.* at 18-23. The principal focus of the amicus brief of the Chamber of Commerce of the United States (ECF 21, "Chamber Br.") is the supposed novelty of Plaintiff's claim. The Chamber warns that if the Court permits this case to proceed to discovery, a parade of horribles may befall the Internet and the business interests the Chamber represents. Setting aside that the Chamber's arguments depend upon distortions of Plaintiff's theory of liabilities and disregard for compelling legal authority, history shows the Chamber's warnings are dramatically overstated. Given the long-established precedent affirming claims like those Plaintiff asserts here, the Court should disregard the Chamber's doomsday arguments, deny the motion, and permit discovery.

# II. ARGUMENT

## A. *Plaintiff's Claim Aligns with Established Law; It Is Not "Novel."*

The Chamber warns the Court not to adopt "Plaintiff's novel, expansive theory of civil liability under the act." *E.g.,* Chamber Br. 18-19. Plaintiff's theory of liability, focused on the surreptitious use of tracking technologies to intercept sensitive communications, is not novel.

The First Circuit, more than twenty years ago, affirmed ECPA claims relating to tracking technologies similar to those here. *Pharmatrak* 329 F.3d at 18-23. The tracking technologies in that case worked in much the same way as those here: a third-party vendor (Pharmatrak, rather than Facebook or Google) provided HTML code for businesses to insert into their websites, which caused users' browsers, upon communicating with the website, to load a JavaScript file. *Id.* at 12-16. That JavaScript file would then retrieve a "clear GIF" (the same thing as the hidden "pixel" technology Plaintiff alleges), which served no function on the website other than operating as a vehicle to transmit to Pharmatrak information

about the content of the webpage being viewed, and Pharmatrak then used that information to provide analytics to the website owner. *Id.* As is the case with Google Analytics and Meta Pixel, the tracking technologies by design revealed the substance of the communication between the consumer and the business, including, for example, the symptoms, conditions, or medications about which the website user was communicating with the pharmaceutical company. *Id.* at 15. Twenty years later, tracking technologies like Google Analytics and Meta Pixel work in fundamentally the same fashion. *See* ¶¶ 32-61.[1]

If anything, the technologies in *Pharmatrak* were less problematic from a privacy perspective than Google Analytics and Meta Pixel, given that Pharmatrak made no commercial use of the intercepted communications beyond the provision of analytics data to the website owner. 329 F.3d at 14-15. In contrast, Google and Facebook do not limit their use of the intercepted communications to providing services to website owners. Instead, Google and Facebook also make their own, separate commercial use of the intercepted communications by adding them to advertising profiles for specific individuals, which Google and Facebook can sell to advertisers (other than LGH) and data brokers. ¶¶ 32-45.[2]

Since that landmark decision, courts have consistently applied the ECPA in significant, published decisions in a manner that has provided a check against encroachments on privacy that developing technologies have created. *See, e,g., Joffe v. Google. Inc.*, 746 F.3d 920, 923-24, 936 (9th Cir. 2013) (ECPA applied to Google's interception of information about Wi-Fi networks through its StreetView cars); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596-98 (9th Cir. 2020) (affirming ECPA claim relating to Facebook collection of website browsing information through "Like" buttons); *Luis v. Zang*, 833 F.3d 619, 623-34 (6th Cir. 2016) (affirming ECPA liability for "WebWatcher" tracking technology software that surreptitiously tracked internet communications); *United States v. Szymuszkiewicz*, 622 F.3d 701, 703-

[1] "¶ __" refers to paragraph of Plaintiff's amended complaint. Plaintiff filed a high-quality version of that complaint as Exhibit 1 to her opposition to LGH's motion to dismiss (*see* ECF 27-1) (the version attached to LGH's notice of removal had become distorted prior to removal by the Massachusetts Superior Court's e-filing system).

[2] *See also* Lokker, *Website Privacy and Compliance Challenges*, available at https://lokker.com/wp-content/uploads/2024/04/LOKKER_Online-Data-Privacy-Report_032024-2.pdf (detailing how tracking pixels fuel data broker ecosystem).

07 (7th Cir. 2010) (affirming ECPA conviction for surreptitious interception of email).[3] These decisions put businesses on clear notice of the consequences for surreptitious surveillance involving new technologies (including website tracking technologies) and underscored the importance of consent.

B. *The Chamber Dramatically Overstates the Effects of Applying Established Precedent.*

The Chamber points to a parade of horribles that it claims will occur if this case proceeds. For starters, the Chamber claims that denial of LGH's motion to dismiss will "increas[e] the already significant costs of providing healthcare," including "regulatory compliance" costs. Chamber Br. 16. The Chamber does not explain what those costs are or why they would go up *now*, given that decisions like *Pharmatrak*, *Joffe*, and the other cases cited above have been on the books for years or decades.

As to cost, Plaintiff's theory of liability is important. Plaintiff does not challenge the use of tracking technologies when adequately disclosed. Of course, businesses face an administrative cost in preparing reasonable disclosures of tracking technologies they decide to use, but this is a cost nearly every business already incurs; website privacy policies are ubiquitous on the internet. It is also a minimal cost that is, frankly, worth imposing, given the tremendous benefit consumers receive by being empowered to make informed decisions about whether and how to share their personal information. Notably, LGH, after this lawsuit was filed, bolstered its privacy disclosures to add a pop-up disclosure regarding "tracking pixels and related technologies to help track and analyze visitor activity on the website," linking to a brand new Website Privacy Policy that specifically describes Google Analytics (Plaintiff limited her proposed class period accordingly).[4] Incentivizing better disclosures is a good thing.

The Chamber also warns that "Plaintiff's theory…threatens many other businesses outside the healthcare industry." Chamber Br. 15. This isn't so for a simple reason: the vast majority of businesses

[3] *See also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071-73 (N.D. Cal. 2021) (denying motion to dismiss ECPA claim relating to collection of website communications while in private browsing mode); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1075-90 (N.D. Cal. 2015) (denying motion to dismiss ECPA claim for software used to monitor activity on cell phones)

[4] ¶¶ 26-30 (describing disclosures "during the class period"); ¶ 139 (class period ends April 30, 2024); *see also* Lawrence General Hospital, https://www.lawrencegeneral.org/ (current website home page with popup, which links to new Website Privacy Policy rolled out after this lawsuit was filed) (last visited March 28, 2025).

that use tracking technologies disclose them and thus do not violate the ECPA. The Third Circuit, responding to similar arguments in construing Pennsylvania's wiretap act, aptly explained:

> So does this mean websites can never use cookies or third-party marketing companies to analyze customer data? Though the Defendants try to convince us about the certainty of any number of "parade of horribles," the [Pennsylvania wiretap act] is not so unreasonable. It…includes many exceptions from liability. One is the all-party consent exception, under which [there is no liability] ... when the person being recorded knew…that the conversation was being recorded ... [due to a] privacy policy [that] sufficiently alert[s] [website users] that [website] communications [are] being sent to a third-party company.

*Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022).

Notably, this isn't the first time the Chamber has claimed the sky will fall due to enforcement of statutory privacy rights. For example, the Chamber weighed in to challenge the First Circuit's panel decision in *Yershov v. Gannett Satellite Info. Network Inc.*, 820 F.3d 482 (1st Cir. 2016). That decision affirmed a similar claim relating to tracking technologies under the Video Privacy Protection Act, 18 U.S.C. § 2710. *Id.* In supporting a petition for rehearing *en banc*, the Chamber warned that "[t]he distribution of free and low-cost video content [was] threatened by the panel's decision," which it claimed would "expos[e] companies to broad class action liability for routine digital transactions."[5] The Chamber claimed that if the panel's decision was affirmed, "analytics provider[s]" "may encourage companies to constrain the free video content they make available to users." *Id.* at 4. The First Circuit denied the petition for rehearing.[6] Seven years later, the Chamber's predictions have not come true. Video content on the internet remains ubiquitous, as do tracking technologies. The practical effect of *Yershov* was to incentivize better disclosure, which is a good thing.

The Chamber similarly weighed in regarding the Ninth Circuit's decision in *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589, a decision affirming an ECPA claim relating to website tracking accomplished through Facebook "Like" buttons incorporated onto various websites. The Chamber

[5] *See Yershov v. Gannett Satellite Info. Network. Inc.*, No. 15-1719, Brief of the Chamber of Commerce of the United States (with Other) at 1; 3, Document 00117000846 (May 17, 2016).

[6] Order of Court, *Yershow v. Gannett Satellite Info. Network, Inc.*, No. 15-1719, Doc. 00117010982 (June 7, 2016).

supported a cert petition to the Supreme Court, warning that "[i]f left in place, the Ninth Circuit's decision would present a serious threat to the functioning of the internet" by making it a "federal felony…for companies to participate in everyday computer-to-computer communications that underlie much of the modern web."[7] The Supreme Court evidently disagreed, denying the petition.[8] Five years later, despite the Chamber's dramatic warnings, the internet has not ceased "functioning."

C. *The Chamber Distorts Plaintiff's Allegations.*

The Chamber's amicus depends upon a fundamental distortion of Plaintiff's allegations. The Chamber no fewer than a dozen times characterizes Plaintiff as seeking to outlaw the "use" of tracking technologies. Chamber Br. 2, 3, 4, 11, 12, 13, 14, 16, 19. Plaintiff seeks no such thing. Plaintiff's contention is that when such tracking technologies are used, informed consent should be obtained. Healthcare providers certainly shouldn't deceive their consumers about tracking technologies, like LGH did here. Instead, consumers should be given control over what information they share with technology and marketing companies; with adequate disclosure, they can make informed decisions about what personal information to share—or not to share—with such third parties.

Perhaps foreseeing this response, the Chamber insists "consent" is "no solution" (Chamber Br. 16) because plaintiffs may challenge the adequacy of disclosures and courts may sometimes agree. The mere possibility that plaintiffs may bring claims or that courts might find them persuasive provides no reason to distort the law to avoid any litigated dispute. Of course, businesses can significantly reduce the risk of litigation by implementing clear and meaningful consent. The vast majority of healthcare providers have not been sued because most healthcare providers have sound disclosures. Practically no non-healthcare businesses have been sued in the twenty years after *Pharmatrak* because they, too, typically make sound disclosures regarding tracking technologies. The mere theoretical risk of unmeritorious lawsuits provides no reason to disregard the ECPA's plain terms.

---

[7] Brief of Chamber of Commerce (and Others) as Amici Curiae in Support of Petitioner, *Facebook, Inc. v. Davis*, No. 20-727 (U.S.) at 9, (Dec. 2020).

[8] *See* Docket for *Facebook, Inc. v. Davis*, No. 20-727 (U.S.) (Mar. 22, 2021) ("Petition DENIED.").

D. *The Chamber's Authorities on the Crime-Tort Exception Do Not Undermine Plaintiff's Claim.*

The Chamber attempts to bolster LGH's argument on the crime-tort exception, pointing to a series of circuit court decisions for the proposition that a crime or tort must be "separate" from the interception. Chamber Br. 6-8. Those cases, however, bear no relationship to the facts here, and, notably, district courts applying those decisions to facts similar to this case have *affirmed* ECPA claims:

- *Sussman v. Am. Broad. Cas.*, 186 F.3d 1200, 1201 (9th Cir. 1999) (cited by Chamber; television channel's secret recording as part of investigative journalism); *but see Gaige v. Exer Holding Co., LLC,* 2025 U.S. Dist. LEXIS 17146, at *12-15 (C.D. Cal. Jan. 30, 2025) (applying *Sussman*; affirms ECPA claim relating to secret tracking technology use on healthcare provider website); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *4-6; 12-20 (C.D. Cal. Jan. 13, 2025) (same);
- *Caro v. Weintraub*, 618 F.3d 94, 96-97 (2d Cir. 2010) (cited by Chamber; recording of audio conversation); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *7-14 (S.D.N.Y. Sept. 16, 2024) (applies *Caro*; affirms claim for tracking technology on healthcare provider website); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *12-23 (W.D.N.Y. Mar. 19, 2024) (same);
- *Meredith v. Galvin*, 446 F.2d 794 (8th Cir. 1971) (cited by Chamber; predates Internet); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 924-28 (D. Minn. 2024) (applies *Meredith*; affirms ECPA claim relating to secret tracking technology on healthcare provider website);
- *In re Google Inc.*, 806 F.3d 125 (3d Cir. 2015) (cited by Chamber); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 U.S. Dist. LEXIS 177625, *7-12 (E.D. Pa. Sep. 30, 2024) (applying *In re Google*; affirming ECPA claim relating to secret tracking technology use on healthcare provider website).

E. *Plaintiff Does Not Propose a Private Right of Action for HIPAA*

The Chamber contends Plaintiff seeks to create a private right of action for HIPAA violations, Chamber Br. 8-12, but this is not so. The core fact giving rise to liability is LGH's facilitation of eavesdropping. Although Plaintiff points to HIPAA as part of its argument to respond to LGH's one-party consent defense, it does not follow from Plaintiff's argument that all HIPAA violations would

become ECPA violations. The ECPA has its own elements entirely different than HIPAA's, including an interception (a statutorily defined term), the use of an intercepting device, the "contents" element, and several other elements and defenses, *see* 18 U.S.C. §§ 2510, 2511(1), (2(d)-(e))).

F. *The Rule of Lenity Does Not Apply.*

The Chamber falls back to the rule of lenity (Chamber Br. 17-19) to tilt the scales in favor of businesses. The rule, however, applies only if "there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (citation omitted). The rule of lenity is "a rule of last resort, [applied] only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning[.]" *Adams v. Holder*, 692 F.3d 91, 107 (2d Cir. 2012) (citation omitted). The Ninth Circuit rejected Google's reliance on the rule in a wiretap case, explaining: "[W]e do not resort to the rule of lenity every time a difficult question of statutory interpretation arises. Rather, 'the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.''" *Joffe*, 746 F.3d at 935-36. This Court should decline to apply lenity to adopt an interpretation which is inconsistent with "the purpose of the statute, i.e., to 'prohibit unauthorized artificial interception of communication in an era of changing technologies.'" *James v. Walt Disney Co.*, 2023 U.S. Dist. LEXIS 200997, at *40 (N.D. Cal. Nov. 8, 2023).

The Chamber identifies no ambiguity requiring resort to the rule of lenity. The Chamber refers amorphously to a purported ambiguity in the "crime-tort exception" but does not identify what makes the statutory language ambiguous. Chambers Br. 18-19. Indeed, the fact that the exception has been the subject of numerous published opinions, including the circuit decisions the Chamber itself cites, reflects that the law is well-developed. The observation that district courts have reached different outcomes in different cases does not demonstrate a "grievous ambiguity."

## III. CONCLUSION

The Chamber's amicus brief changes nothing; the Court should deny the motion to dismiss.

Dated: April 1, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*
SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: April 1, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely