**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-10081-NMG |
| | ) | |
| LAWRENCE GENERAL HOSPITAL, | ) | **Leave to File Granted on March 27, 2025** |
| | ) | **Doc. No. 30** |
| Defendant. | ) | |

**DEFENDANT LAWRENCE GENERAL HOSPITAL'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiff's Allegations Are Insufficient To Support Any Of Her Claims Because She Fails To Plausibly Allege Disclosure Of Any PHI Or Private Information. ..... 1

II. Plaintiff Fails To State A Claim Under The ECPA Because She Has Not Plausibly Alleged Applicability of the Crime-Tort Exception. ..... 3

A. Plaintiff Fails To Allege That LGH Intended To Commit A Crime Or Tort. ..... 3

B. Plaintiff Fails To Plausibly Allege An Independent Crime Or Tort. ..... 4

C. Plaintiff Fails To Plausibly Allege The Interception Of "Contents." ..... 6

III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Act. ..... 6

IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Or Confidence. ..... 8

V. Plaintiff's Negligence Claim Should Be Dismissed. ..... 9

VI. Plaintiff Fails To State A Claim For Breach Of Implied Contract. ..... 10

VII. Plaintiff Fails To State A Claim For Unjust Enrichment. ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alberts v. Devine*,
95 Mass. 59 (Mass 1985) ........................................................................................9

*Alves v. BJ's Wholesale Club*,
2023 WL 4456956 (Mass. Super. June 21, 2023)..........................................................7

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ........................................................................1

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..................................................................8, 10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).......................................................................................3, 5

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ..........................................................6

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)............................................................................6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)........................................................................2

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .........................................................................4

*Doe v. Boston Med. Ctr. Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ..........................................................7

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2024) ...........................................................6, 10

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ........................................................................7, 9

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ..............................................................2

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)........................................................................................................5

*M.G. v. Therapymatch*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ....................6

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................4, 5

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................2

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025) ....................5

*Polay v. McMahon*,
468 Mass 379 (2014) ....................6

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................8, 9

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025)....................4

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................8

*United States v. Bowen*,
127 F.3d 9 (1st Cir. 1997)....................5

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998)....................3

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................3, 4, 5

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986) ....................3

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ....................7

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....................2, 4

*Willitts v. Engie N. Am. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021)....................9

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. § 2511 .................... *passim*

FTC Act ....................................................................................................................3, 4

Health Insurance Portability Act ("HIPAA") ..................................................................... *passim*

Massachusetts Right to Privacy Act, G.L. c. 214 § 1B.............................................................6, 7

## INTRODUCTION

Plaintiff's Opposition urges the Court to apply an expansive and untenable interpretation of the Electronic Communications Privacy Act ("ECPA") that would criminalize Lawrence General Hospital ("LGH") and dozens of similarly situated businesses—for using ubiquitous marketing technologies for legally permissible purposes. Moreover, Plaintiff's argument that her protected health information or other private information ("PHI") was disclosed vis-à-vis her usage of LGH's public website is not supported by the actual allegations in her Amended Complaint ("Complaint"). Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff's Allegations Are Insufficient To Support Any Of Her Claims Because She Fails To Plausibly Allege Disclosure Of Any PHI Or Private Information.

Plaintiff misconstrues the significance LGH places on *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024). *Becerra* merely demonstrates the deficiency of Plaintiff's allegations, which solely allege that LGH shared her IP address and ***public*** browsing information. As Plaintiff acknowledges (Doc. No. 27 at 2), *Becerra* held the "Proscribed Combination" of an IP address and a public webpage "addressing specific health conditions" or healthcare providers" does not identify an individual or PHI under HIPAA. *Id.* at 792, 807.

Looking to the actual allegations in the Complaint, Plaintiff's claim that she alleged more than the "Proscribed Combination" addressed in *Becerra* are unavailing. Plaintiff dedicates *one* paragraph in her 69-page Complaint to describing her activities on LGH's website, and that single paragraph is vague and conclusory. Plaintiff attempts to overcome this deficiency by arguing LGH revealed her patient status by tracking "communications relating to patient bill payments." Doc. No. 27. at 2. But the Complaint paragraphs Plaintiff cites (¶¶ 96 and 97) merely refer to the "Pay Your Bill Online" page, which is accessible to *anyone* visiting the website, not exclusively patients.

It is only when an user clicks the button on that page and affirmatively logs into the bill pay portal that they are directed to a non-public webpage. Plaintiff, however, does not allege that she ever took those steps or used the LGH website to pay a bill. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) (patient status disclosure not alleged where plaintiff did not allege she clicked "book appointment" button). Plaintiff also alleges, for the first time, that these technologies were embedded on pages used to access the patient portal. Doc. No. 27 at 3, n.5.[1][2] This assertion fails for the same reason; Plaintiff merely points to publicly available pages that link to the authenticated patient portal. The authorities relied upon by Plaintiff undermine her theory (Doc. No. 27 at 7, n.9.), as they each involve allegations that tracking technology was on the actual patient portal log in button. *See e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081 (W.D. Wash. 2024) (transmission of information sent to patient portal, like logging in, reveals patient status). Here, Plaintiff does not allege any tracking on the patient portal log in button.

Further, although *Becerra* addresses PHI under HIPAA, its common-sense holding undermines each of Plaintiff's claims, as each is premised on the theory that PHI, or at least private information, was disclosed by public browsing. *Becerra* explains that these public activities simply do not reveal any PHI or private information. For these reasons and others, numerous federal courts have granted motions to dismiss claims similar to Plaintiff's after *Becerra*. *See Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing complaint based on searches); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *2–3 (S.D. Ind. Sept. 24, 2024) (dismissing common-law claims because "principal theory" underlying each was transmission of PHI, but plaintiff's browsing did not relate to *her* health or relationship with defendant).

[1] Plaintiff raises this allegation in footnote 5 of her Opposition and offers to amend the complaint again to add further detail. The offer to amend should be denied as Plaintiff alleges the technology was used on these pages "during the class period," and as such these facts were known when she amended in December.
[2] Plaintiff end-runs this Court's brief page limits by including more than 2,500 words in footnotes.

## II. Plaintiff Fails To State A Claim Under The ECPA Because She Has Not Plausibly Alleged Applicability of the Crime-Tort Exception.

Plaintiff does not dispute that if she fails to sufficiently invoke the crime-tort exception her ECPA claim fails as a matter of law. She fails to do so and her ECPA claim should be dismissed. As an initial matter, LGH does not argue that Plaintiff relies solely on HIPAA to invoke the crime-tort exception, it argues that *none* of Plaintiff's theories, HIPAA, the FTC Act, or Massachusetts statutory or common law claims, are sufficient to invoke the exception. Doc. No. 16 at 13–14.

### A. Plaintiff Fails To Allege That LGH Intended To Commit A Crime Or Tort.

Plaintiff incorrectly contends that she need only allege the use of third-party tracking on LGH's public website and bald assertions that such use ended up constituting a crime or tort, rather than alleging LGH acted with intent to commit a crime or tort. Doc. No. 27 at 9. Her contention fails under the plain language of the ECPA, First Circuit precedent, and well-reasoned federal case law. As this Court has held, Plaintiff must allege either "(1) that the *primary motivation*, or (2) that a *determinative factor* in the *actor's motivation* for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986) (emphasis added); *see also United States v. McHugh*, 57 F. Supp. 3d 95, 99–100 (D. Mass. 2014). The mere allegation that an interception *resulted* in a criminal or tortious act does not suffice. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). The requirement of specific intent or purpose to commit a crime or tort is supported by the text of the ECPA itself, which uses the word "purpose," meaning courts must presume that it has done so "for a reason." *Id.* "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original); *see also United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting "superficial logic" similar to Plaintiff's here).

Thus, the question is not whether LGH violated HIPAA, the FTC Act, or Massachusetts statutory or common law (it did not), but whether LGH *intended* to do so or had a specific unlawful *purpose*. In other words, Plaintiff must plausibly allege that LGH, a non-profit healthcare provider, installed tracking technologies on its public website with the *primary motivation* of violating HIPAA or committing some tortious act—*i.e.*, with intent to harm its patients and other website users. *See McHugh*, 57 F. Supp. at 100. Plaintiff does not and cannot plausibly do so. At best, she alleges that LGH used these technologies "to market its services and increase profits." Doc. 16. at 18. Numerous courts have held that a purpose to engage in digital marketing is not criminal or tortious.[3] *See Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (dismissing ECPA claim that did not plausibly allege "purpose for sharing IIHI was to breach HIPAA"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (*Nienaber II*) (alleged digital marketing and analytics purpose insufficient to invoke exception); *TMC Health,* 2024 WL 4364150, at *4–5 (same); *Doe I v. Google, LLC,* 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim where Google's purpose in offering technology was plainly not "to perpetuate torts on millions of Internet users" but to make money).

**B. Plaintiff Fails To Plausibly Allege An Independent Crime Or Tort.**

Plaintiff fails to address the fact that for the crime-tort exception to apply the alleged crime or tort must be *independent* of the interception itself. In other words, the interception alleged to be an ECPA violation cannot also be the same act that underlies the alleged crime or tort. Here, Plaintiff alleges the interception and disclosure to third parties are accomplished simultaneously.

[3] Plaintiff misconstrues LGH's argument regarding financial motives. LGH does argue that financial motive is an immediate immunization from the crime-tort exception, but that Plaintiff's own allegations here undermine her claim by demonstrating the permissible and lawful intent behind LGH's actions. Courts have held that financial motives support a criminal or tortious purpose in the case of an intent to commit blackmail or extortion, but this does not mean that all financial motives have similar criminal purpose.

She therefore fails to meet this factor, as she does not identify any *independent* tortious or criminal conduct beyond the alleged wiretapping itself. *See Caro*, 618 F.3d at 100.

Indeed, just weeks ago (after LGH filed its motion), a federal court dismissed an ECPA claim in a similar healthcare pixel lawsuit on this basis. *See Nienaber II*, 2025 WL 692097, at *13. There, the court addressed an amended ECPA claim, and concluded the "pleadings still allege that the technologies installed by Defendant contemporaneously transmit Plaintiff's communications to third parties," which demonstrated that "the alleged tortious or criminal use of the acquired communications is the disclosure itself." *Id.* Thus, the court held the crime-tort exception did not apply. It also noted the cases cited by plaintiff were unpersuasive because they did not grapple with the statutory text or evaluate the "distinction between the interception and the transmission of data." *Id.*; *see also Okash v. Essentia Health*, 2025 WL 642913, at *4 (D. Minn. Feb. 27, 2025) (crime-tort exception inapplicable where alleged HIPAA and privacy claim not independent of interception). The same is true here; Plaintiff alleges contemporaneous interception and transmission (Doc. No. 1 Ex. B. at 12), and her claim should likewise be dismissed.

The cases Plaintiff cites here likewise do not grapple with this distinction, are not grounded in the Act's language, and ignore First Circuit guidance that courts should construe the crime-tort exception "narrowly." *McHugh*, 57 F. Supp. 3d at 100. Further, as noted in LGH's motion (Doc. No. 16 at n.4), because the ECPA imposes criminal penalties, the rule of lenity applies—so any ambiguities in the statute must be resolved in LGH's favor. *See United States v. Bowen*, 127 F.3d 9, 13–14 (1st Cir. 1997) ("[R]ule of lenity means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'"); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (rule of lenity can pertain to civil claims); *see also* Amicus Br. Doc. No. 21.

### C. Plaintiff Fails To Plausibly Allege The Interception Of "Contents."

Nor can Plaintiff establish that LGH intercepted the contents of any communication. Plaintiff's allegations regarding "descriptive URLs" are insufficient to satisfy the "contents" element. Plaintiff cites to several cases for the proposition that "descriptive URLs" may constitute actionable contents, but nearly all of the cases cited by plaintiff (Doc. No. 27 at 11, n. 14) involve complaints alleging the exact interactions plaintiffs had with the websites and information they provided to the websites. *See*, *e.g.*, *M.G. v. Therapymatch*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) (M.G. provided the website information about "mental health conditions for which he was seeking therapy, his provider preferences, and his appointment details").[4] By contrast, Plaintiff does not allege any specific information she provided to the LGH website, nor that she took any actions that would result in transmission of anything more than a view of a public page, which are not contents under the ECPA. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location."). Further, Plaintiff only points to her unsupported assertion that her communications revealed her "patient status" but this fails for the same reasons as discussed above.

## III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Act.

Plaintiff fails to address the fundamental requirement of an invasion of privacy claim under the Massachusetts Right to Privacy Act ("MRPA")—an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon,* 468 Mass 379, 382 (2014). Here, Plaintiff fails to allege

---

[4] *See also Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *7 (M.D. Pa. Feb. 14, 2024) ("[Plaintiff] now receives targeted health-related advertisements reflecting private medical treatment information, including those related to skin conditions, arthritis, geriatric medical conditions, as well as for clinical trials, and physicians."); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at * (W.D. Wash. Nov. 14, 2024) ("Plaintiffs allege that they searched for information about "patient status, prescriptions, [and] underlying health conditions" and later received targeted advertisements for specific prescriptions.).

that anything she did on LGH's public website could support such an invasion. As discussed above, she has not plausibly alleged interception or transmission of her PHI. In fact, Plaintiff's allegations lack any detail at all about the nature or type of information she contends was intercepted or disclosed by LGH, which alone requires dismissal of her MRPA claim. Plaintiff attempts to end-run this fatal pleading deficiency by claiming "examples" were provided in the Complaint. Doc. No. 27 at 13. But her "examples" merely demonstrate how the technology works, not Plaintiff's specific activity on the website or the information she purports was transmitted.

Plaintiff also argues that because some MRPA claims have survived motions to dismiss hers should as well, but she ignores factual distinctions in the pleadings in those cases. For example, in *Tenet*, the plaintiff alleged she used the website to "schedule appointments, search for information, and access the patient portal," and she then received targeted advertisements relating to her specific health conditions, including weight loss and diabetes. 731 F. Supp. 3d 142, 147–148 (D. Mass. 2024).[5] Further, Plaintiff mischaracterizes the Supreme Judicial Court's holding in *Vita v. New England Baptist Hosp.*, 494 Mass. 824 (2024). The SJC did not evaluate or give an opinion that the facts alleged by Vita were sufficient to state an MPRA claim, it merely noted such claims existed as possible alternatives to protect *private medical information*. *Id.* at 849.

Here, although Plaintiff argues that her patient status was transmitted via the public "Pay Your Bill Online" page, as addressed above that argument is not supported by her actual allegations. *See supra* pp. 1–2. Indeed, Plaintiff does not allege anything with respect to what she contends was transmitted in connection with her use of the public website and her vague

[5] *See also Doe v. Boston Med. Ctr. Corp.*, 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023) (plaintiff alleged her actions within the authenticated patient portal were transmitted to Meta and Google); *Alves v. BJ's Wholesale Club*, 2023 WL 4456956, at *6-7 (Mass. Super. June 21, 2023) (allowing the MPRA claim to proceed because it determined another claim was surviving the motion to dismiss but expressed skepticism that the "allegations are sufficient to state a claim for invasion of privacy").

allegations are insufficient to establish any invasion of information of a highly personal or intimate nature. Plaintiff's allegations are more analogous to other federal decisions finding routine medical searches and inquiries on a public website do not support invasion of privacy claims. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (disclosure of routine medical searches and inquiries insufficient to support privacy claim); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 892-93 (C.D. Cal. 2024) (same); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) ("There is no intrusion upon privacy when a patient voluntarily provides [PII or PHI] to his or her healthcare provider."). Likewise, here, Plaintiff's allegations at most demonstrate she used LGH's website for routine medical searches.

## IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Or Confidence.

Plaintiff's insufficient allegations likewise doom her breach of confidence and fiduciary duty claims, because she does not allege that any special relationship exists here. Plaintiff's allegations are limited to examples of hypothetical use of a hospital's public-facing website, which do not support the inference of a fiduciary duty, and she alleges nothing particular to herself in the context of using LGH's website that pertains to disclosure of any PHI. To overcome this, Plaintiff attempts to turn the physician-patient relationship into a boundless duty by implying that it includes any visitor to LGH's public website, even though LGH has no knowledge of such visitors and no way to determine if they are patients. An extension of the physician fiduciary duty to all public website visitors would create an untenable, boundless obligation on healthcare providersand is not supported by the law.

As discussed above, Plaintiff's reliance on decisions like *Tenet* are inconsistent with the factual allegations in this case, as those cases involved more detailed allegations about transmission of specific treatments and appointment information. Similarly, Plaintiff's reliance on *Alberts* to establish a fiduciary duty is misplaced. *Alberts* focused on the physician's duty "to hold

in trust confidential information" in relation to the treatment of a patient. *Alberts v. Devine*, 95 Mass. 59, 69 (Mass 1985). Notably, Plaintiff has not alleged that communications with any of her physicians were disclosed. *See Willitts v. Engie N. Am. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim based on "no disclosure by a physician"). Finally, Plaintiff acknowledges that the fiduciary duty and confidentiality claims are duplicative and rely on the same allegations, and both claims should therefore be dismissed.

## V. Plaintiff's Negligence Claim Should Be Dismissed.

Plaintiff's negligence claim is rooted in the physician/patient relationship, regardless of whether she relies on HIPAA or other statutes and rules. Doc. No. 27 at 18. But this argument does not establish any duty here, because it assumes—again, incorrectly—that the information allegedly disclosed was PHI. Plaintiff's reliance on *Tenet* is again misplaced. She asserts that *Tenet* affirms the same claim on substantively the same facts. Doc. No 27. at 17. Not so. As discussed above, in *Tenet* the plaintiff's complaint alleged specific interactions plaintiff had with Tenent's website involving her particular health conditions and treatments. 731 F. Supp. 3d at 147–48. Here, Plaintiff's allegations are devoid of any facts to support that her PHI has ever been transmitted to an unauthorized third party and are therefore insufficient to establish a duty or breach of a duty.

Nor does Plaintiff's Opposition establish any damages. She argues that she suffered damages in the form of loss of privacy, diminution in value of her private information, or loss of the benefit of the bargain. Doc. No. 27 at 19. However, her laundry list of alleged harms offers no well-pled facts in support and the vagueness of the claimed harms alone merits dismissal. *See R.C.*, 733 F. Supp. at 897-98 (dismissing negligence claim with similar laundry list of harms was vague and conclusory). Accordingly, the Court should dismiss Plaintiff's negligence claim.

## VI. Plaintiff Fails To State A Claim For Breach Of Implied Contract.

Plaintiff fails to allege the existence of a valid contract supported by mutual assent and consideration. Plaintiff's Opposition argues that she is unable to know whether she assented to the policies during the patient portal sign-up process without discovery. Yet, Plaintiff's entire Complaint relates to the privacy policies on LGH's ***public*** website. Plaintiff also ignores that she has not identified even one specific piece of *her* PHI that LGH allegedly disclosed to Meta or Google, and has solely provided exemplary screenshots of information that *might* be transmitted. Thus, even under her own theory, and for the reasons addressed in LGH's motion to dismiss, Plaintiff has not adequately pled a claim for breach of implied contract.

## VII. Plaintiff Fails To State A Claim For Unjust Enrichment.

Plaintiff argues that all Massachusetts courts that have considered this claim under the same substantive facts have allowed an unjust enrichment claim to proceed. However, as discussed above, the cases Plaintiff cites turned on specific, more detailed factual allegations regarding the plaintiff's personal interactions with the websites and what specific PHI was transmitted. Plaintiff's Complaint is devoid of any such allegations and as such there is no plausible basis to consider whether any "benefit" was conferred upon LGH. *See Post Acute*, 2025 WL 511069, at *9 (dismissing unjust enrichment claim for lack of specific facts regarding information disclosed, to whom, under what circumstances and whether the information was linked to Doe specifically); *B.K.*, 721 F. Supp. 3d at 1070 ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched.").

## CONCLUSION

For the foregoing reasons and those included in Lawrence General Hospital's motion to dismiss and memorandum in support, LGH respectfully asks the Court to dismiss the Amended Complaint against it with prejudice.

Dated: April 4, 2025

Respectfully submitted,

LAWRENCE GENERAL HOSPITAL

By: */s/ Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on April 4, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*
Lisa Oliver White