**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-10081-NMG |
| | ) | |
| LAWRENCE GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

**LAWRENCE GENERAL HOSPITAL'S OPPOSITION TO PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE THE SECOND AMENDED COMPLAINT**

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

## INTRODUCTION & BACKGROUND

This case has been pending since March 27, 2023. *See* Doc. No. 1-1. Lawrence General Hospital (LGH) filed a motion to dismiss Plaintiff's Complaint; the motion was fully briefed, and this case was temporarily stayed pending a related appeal. Plaintiff then amended her Complaint on December 30, 2024, asserting for the first time a claim under the Electronic Communications Privacy Act (ECPA). *See* Amended Complaint (Doc. No. 1-1, pp. 46-114).[1] LGH again filed a motion to dismiss the Amended Complaint, arguing that Plaintiff's ECPA claim should be dismissed for a variety of reasons. As relevant here, LGH argued that Plaintiff had not alleged sufficient facts to invoke the crime-tort exception to the one-party consent rule of the ECPA. *See* LGH's MTD (Doc. No. 16) at 13-15. Specifically, LGH argued "Plaintiff has not alleged that LGH had an unlawful *purpose* beyond what was accomplished by the collection of her data[.]" *Id.* at 13-14 (emphasis in original) (collecting cases). LGH also argued that Plaintiff failed to identify any "tortious conduct beyond the alleged wiretapping itself." *Id.* at 15. Despite LGH's arguments, Plaintiff did not file a Second Amended Complaint, which she could have done as of right under Fed. R. Civ. P. 15(a)(1). Instead, LGH's motion was fully briefed, and the parties participated in oral argument before Magistrate Judge Levenson on June 10, 2025. *See* MTD Hearing Transcript (Doc. No. 39).

Judge Levenson then issued a 41-page Report and Recommendation that Plaintiff's ECPA claim be dismissed, based on the arguments LGH asserted above. *See* R&R (Doc. No. 41). Now, in a last-ditch effort to save her ECPA claim, Plaintiff seeks leave to amend her pleading yet again, after years of litigation, by adding:

> (1) "details" about how "LGH intercepted communications for the purpose of . . . the improper use of sensitive medical communications without

[1] Unless otherwise noted, all page numbers refer to those generated by the Court's CM/ECF system, not the document's original pagination.

> obtaining patient consent . . . to bolster the effectiveness of its marketing efforts," (Pl.'s Mot. (Doc. No. 48) at 5-6);
>
> (2) "greater detail" regarding how LGH's use "of the intercepted communications for targeted advertising present criminal and tortious acts separate from the interceptions," (*id.* at 6); and
>
> (3) "clarif[ication]" as to "how LGH employed tracking technologies on webpages that reveal patient status," (*id.*).

Remarkably, Plaintiff does not seek leave to add any ***new*** facts; by Plaintiff's own admission, the proposed amendments merely add "details" and "clarify" various parts of her complaint, over two years after it was first filed. All of the proposed amendments merely regurgitate prior allegations that Judge Levenson considered and rightly rejected. What's more, Plaintiff's proposed amendments would make no difference to Judge Levenson's ruling. Even if Plaintiff were allowed to amend, the core defects Judge Levenson identified in Plaintiff's Amended Complaint will still taint her new pleading. Plaintiff's motion should be denied.

## LEGAL STANDARD

In general, a party may amend its pleading as a matter of right 21 days after serving it, or (as relevant here) 21 days after a motion to dismiss under Rule 12(b) is filed. Fed. R. Civ. P. 15(a)(1). In all other cases, the party "may amend its pleading only with the opposing party's written consent or the court's leave.: *Id.* at 15(a)(2). Rule 15 directs the court to grant leave if "justice so requires." *Id.*

"That is not to say, however, that a district court lacks authority to deny a request to amend." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30–31 (1st Cir. 2006). "In appropriate circumstances—undue delay, bad faith, futility, and the absence of due diligence on the movant's part are paradigmatic examples—leave to amend may be denied." *Id.* (citing *See Foman v. Davis*, 371 U.S. 178, 182 (1962)). "In short, a request to amend—**especially a belated request**—requires the court to examine the totality of the circumstances and to exercise its informed discretion in

constructing a balance of pertinent considerations." *Id.* (emphasis supplied) (citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989)). Indeed, the First Circuit has explained that "undue delay, on its own, may be enough to justify denying a motion for leave to amend" and it has placed on the party seeking leave to amend "the burden of showing some valid reason for his neglect and delay." *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (affirming district court's denial of leave to amend due to undue delay) (quoting *Perez v. Hosp. Damas, Inc.*, 769 F.3d 800, 802 (1st Cir. 2014)).

## ARGUMENT

### I. Plaintiff Has Unduly Delayed And Has Not Been Diligent In Seeking Amendment.

Plaintiff has not been diligent in seeking amendment, and has unduly delayed her request to file a Second Amended Complaint. Not only has this litigation been pending for over two years, but LGH also made Plaintiff aware of the key arguments Judge Levenson relied on in dismissing Plaintiff's ECPA claim when it filed its motion to dismiss, including (1) that Plaintiff failed to allege LGH installed tracking technology for the "purpose" of committing a criminal or tortious act, and (2) that Plaintiff failed to allege a criminal or tortious act separate from the alleged disclosure itself. LGH's MTD at 13-15. After receiving notice of these deficiencies through LGH's motion to dismiss, Plaintiff had the opportunity to amend her pleading as a matter of right. Fed. R. Civ. P. 15(a)(1). Plaintiff chose to oppose the motion to dismiss arguing that her complaint was sufficiently pleaded, let the opportunity to amend to pass by, and instead waited until *after* Judge Levenson dismissed her ECPA claim to try and add "detail" to her allegations.

The fact that Plaintiff delayed seeking amendment until after Judge Levenson dismissed her ECPA claim "smacks of gamesmanship bordering on bad faith." *In re Stone & Webster, Inc., Sec. Litig.*, 217 F.R.D. 96, 98–99 (D. Mass. 2003), *aff'd denial of motion for leave, vacated on other grounds*, 414 F.3d 187 (1st Cir. 2005) ("The fact that the plaintiffs chose to oppose the

motions to dismiss on the grounds that their complaint was, in their view, sufficiently pleaded, rather than providing the additional information known to them during the necessarily lengthy period during which the motions to dismiss were being considered, smacks of gamesmanship bordering on bad faith."). Indeed, the First Circuit has "explicitly condemned a 'wait and see' approach to pleading, whereby plaintiffs 'having the needed information, deliberately wait in the wings ... with another amendment to a complaint should the court hold the first amended complaint was insufficient.'" *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018). In *Kader*, the First Circuit affirmed the denial of a motion to amend, explaining that regardless of whether plaintiffs had "intentionally sandbagged their claims, the fact remains that despite having three months to do so, the Plaintiffs did not move to amend until after the district court dismissed the FAC." *Id.*

Plaintiff's "wait and see" approach demonstrates undue delay and lack of diligence and therefore warrants denial of her motion to amend. *See Mulder v. Kohl's Department Stores, Inc.*, 865 F.3d 17, 21 (1st Cir. 2017) (upholding denial of motion to amend where plaintiff "did not file for leave to amend after Kohl's filed its motion to dismiss, and instead opposed the motion, filed a sur-reply, opposed the motion again at oral argument, and then filed a third memorandum in opposition to Kohl's motion . . . and admitted her motion was filed, at least in part, to rectify the deficiencies the district court identified with the [same] theories of injury" presented in a substantially identical case brought by the same plaintiff's counsel); *MW Gestion v. 1Globe Capital, LLC*, 349 F.R.D. 41, 44 (D. Mass. 2025) ("Once a party becomes aware of the potential flaws in its pleading, however, it cannot simply 'wait and see' if a court finds in its favor and only then seek to amend in the face of an unfavorable decision."), *appeal docketed*, 25-1506 (1st Cir. May 27, 2025).

Tellingly, Plaintiff offers no excuse for her delay. Plaintiff claims her amendments respond to "evolving changes in the law." Pl.'s Mot. at 7. Not so. As discussed, LGH made Plaintiff well-aware of her pleading's deficiencies. And more to the point, the law in this area is not "evolving" inasmuch as courts have simply decided various issues in different ways. Plaintiff does not explain how adding more "detail" and "clarification" to her pleading—on top of allegations already present in the Amended Complaint—is responsive to some "change" in the law. It is not. In fact, a review of the cases cited by Judge Levenson reveals that the law in this area dates back decades. *See* R&R at 19, 22, 23, 28, 36–38. That does not reflect a rapidly changing legal landscape. Plaintiff's case law regarding "evolving" standards is readily distinguishable. One involved courts addressing an amendment to a statute that newly implemented a heightened standard of pleadings in cases involving private securities fraud allegations. *See San Andres v. Brimmer (In re Rainforest Cafe, Inc. Sec. Litig.)*, 1998 U.S. Dist. LEXIS 22457, *12. Another involved a declaration that "recent developments in the law" warranted a late amendment but offered no discussion of what constituted those recent developments. *See Aerospace Prods. Int'l, Inc. v. FWF, Inc.*, 2009 WL 3169690, at *1 (W.D. Tenn. Sept. 29, 2009). And the last involved binding appellate precedent where the court went so far as to declare that its ruling set forth a "newly formulated pleading standard" for pleading ERISA breach of fiduciary duty claims. *See Bangalore v. Froedtert Health, Inc.*, 2024 WL 1051104, at *7 (E.D. Wis. Mar. 11, 2024).

At any rate, Judge Levenson analyzed how courts around the country have ruled on ECPA-related issues, and chose an interpretation of the ECPA that his Honor found most compelling. This is an entirely common occurrence in litigation, and the cases cited by Plaintiff demonstrate—at best—that some courts in other jurisdictions have reached differing conclusions. *See, e.g.*, Pl.'s

Mot. at 4-5 (citing three cases that denied motions to dismiss an ECPA claim).[2] The fact that Judge Levenson chose to adopt an interpretation of the ECPA that Plaintiff did not like does not now entitle Plaintiff to a third bite of the apple.

Plaintiff further argues that there was no undue delay because this case was stayed for one year. Pl.'s Mot. at 7. This argument misses the point. The clock did not stop simply because the litigation was inactive. Courts in this district recognize that "**[r]egardless of the context**, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Maroney as Tr. of Premiere Realty Tr. v. Fiorentini*, 673 F. Supp. 3d 62, 67 (D. Mass. 2023) (emphasis supplied) (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). Here, the significant passage of time without amendment—and particularly amendment of "facts" *known to Plaintiff*—demonstrates the lack of diligence and undue delay. The stay makes no difference. Indeed, this District has rejected Plaintiff's exact argument. *See e.g.*, *Maroney as Tr. of Premiere Realty Tr. v. Fiorentini*, 673 F. Supp. 3d 62, 68 (D. Mass. 2023) (denying leave to amend because plaintiff's two-year delay in seeking amendment showed a "lack of diligence" that was "self-evident" and because "the stays of discovery did not prevent [plaintiff] from filing a motion to amend."); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("It is black-letter law that '[r]egardless of the context, the longer a plaintiff delays, the more likely [a] motion to amend will be denied, as protracted delay, with its

[2] Plaintiff's reliance on *Jarrett v. Upperline Health* is unfounded. Pl.'s Mot. at 4-5. Plaintiff states that the *Upperline* court dismissed an ECPA claim for "failure to adequately plead facts for the crime tort exception" but then "permitted the plaintiff[] to amend their complaint[]." *Id.* at 4. This is wrong. The *Upperline* court never dismissed an ECPA claim, which means the plaintiffs never amended an ECPA claim. *See Upperline*, No 1:23-cv-01261, Dkts. 1, 23, 83, 85, 117 (S.D. Ind.) The *Upperline* decision (Doc. No. 117) simply demonstrates that some judges have found certain allegations to satisfy the crime-tort exception, while other courts have not.

attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'") (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

Plaintiff's delay is particularly remarkable here because the "facts" Plaintiff seeks to add were known to Plaintiff when this case was originally filed, over two years ago. *Nikitine v. Wilmington Trust, Co.* is instructive. There, the First Circuit noted:

> Importantly, this is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing. It is, rather, a case in which a court reasonably could have concluded as the district court did—that the plaintiff was scrambling to devise new theories of liability based on the same facts pled in his original complaint—theories that could and should have been put forward in a more timeous fashion. Without any explanation as to why these new theories were not seasonably advanced, the delay in formulating them looms large. We conclude, therefore, that the district court acted within the realm of its discretion in denying leave to amend. *See, e.g., Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (*per curiam*) (affirming finding of undue delay when four months had elapsed); *Kay v. N.H. Dem. Party*, 821 F.2d 31, 34 (1st Cir. 1987) (*per curiam*) (affirming finding of undue delay when three months had elapsed).

715 F.3d 388, 391 (2013) (affirming district court's denial of leave to amend) (additional citations and internal quotation marks omitted); *see also Mulder*, 865 F.3d at 21 ("This is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing. . . Rather, the district court reasonably could have concluded that [plaintiff] was scrambling to devise new theories of liability based on the same facts pled in her original complaint—theories that could and should have been put forward in a more timeous fashion.") (internal quotations and modifications omitted). As in *Nikitine*, here no new evidence has come to light in the two years since this case was first filed. Plaintiff does not argue otherwise. Courts are not "expected to look kindly upon a plaintiff who seeks belatedly to amend her complaint based on information that [she]

had or should have had from the outset of the case." *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019) (internal quotation marks omitted) (citing *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008)).

Ultimately, Plaintiff bears "the burden of showing some valid reason for [her] neglect and delay." *Hagerty*, 844 F.3d at 34. She has not satisfied that burden here. Plaintiff offers absolutely no reason for her delay in amending her pleading, let alone a valid one. Waiting on a motion to dismiss ruling is not a valid reason for delay and such an approach is "exactly backwards" as it leads to "delays, inefficiencies, and wasted work." *ACA Financial Guaranty Co.*, 512 F.3d at 57. Allowing plaintiffs "leisurely repeated bites at the apple," would "forc[e] a district judge to decide whether each successive complaint was adequate under the [statute]. Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint should the court hold the first amended complaint was insufficient. Such an approach would impose unnecessary costs and inefficiencies on both the courts and party opponents." *Id.* Thus, in such circumstances, courts in this District have not hesitated to deny leave to amend. *See, e.g.*, *Fire and Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) (affirming denial of motion to amend and noting plaintiffs should have moved to amend when motion to dismiss was filed); *Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (similar); *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (similar); *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) (affirming denial of motion to amend); *Maroney as Tr. of Premiere Realty Tr. v. Fiorentini*, 673 F. Supp. 3d 62, 67 (D. Mass. 2023) (denying leave to amend because plaintiff "knew *all* of the relevant facts" and "could have included the new factual allegations" in an earlier motion for leave); *Jenkins v. Boston Housing Court*, 350 F. Supp. 3d 1, 4 (D. Mass. 2018) (denying motion to amend because

the plaintiff knew the relevant facts but "chose to do nothing for an extended period of time"); *United States ex rel. D'Agostino v. EV3, Inc.*, 153 F. Supp. 3d 519, 540 (D. Mass. 2015) (denying motion to amend and rejecting wait and see approach); *Weber v. Sanborn*, 526 F. Supp. 2d 135, 142 (D. Mass. 2007) (denying leave to amend because "[n]o new evidence has come to light that would justify [plaintiff's] delay."); *In re Stone & Webster*, 217 F.R.D. at 98 (denying leave to amend in part because the "newly discovered" evidence "could easily have been incorporated into an amendment or supplement to the complaint before [the court] issued [its order].").

## II. Amending Plaintiff's Complaint Again Would Be Futile.

Plaintiff's motion for leave should be denied solely because Plaintiff has demonstrated a lack of diligence, bad faith, and undue delay. But even setting those issues aside, Plaintiff's motion should be denied because amendment would be futile. "Futility" means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Jones v. FMA All. Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013). As mentioned above, Plaintiff seeks to add three categories of "facts" to her pleading. None of her purported new facts would make any difference to the dismissal of her ECPA claim.

At the outset, Plaintiff repeatedly claims that her current pleading—the Amended Complaint—contains sufficient allegations to support her ECPA claim. *See* Pl.'s Mot. at 1 ("the current Amended Complaint adequately alleges Defendant's violation of the ECPA"); *id.* at 5 ("the operative complaint is adequate"); *id.* at 6 ("Plaintiff submits that her current complaint is sufficient). It defies logic that Plaintiff could in one breath stand firm on her current pleading and in the next breadth seek to add "detail" so that her allegations could state a claim under the ECPA. Nonetheless, LGH addresses the futility of each category of "facts" Plaintiff seeks to add below.

**A. "Detailing" LGH's Marketing Efforts Makes No Difference Here.**

Plaintiff first seeks leave to add "details" about how "LGH intercepted communications for the purpose of . . . the improper use of sensitive medical communications without obtaining patient consent . . . to bolster the effectiveness of its marketing efforts." Pl.'s Mt. at 5-6. Plaintiff does not explain how these additional allegations will repair the defects identified by Judge Levenson. But even so, the Amended Complaint *already* has these allegations, repeatedly. The Amended Complaint states that tracking technology can be used "for advertising purposes," (Am. Compl. ¶ 58), that LGH intercepted communications to "target Plaintiff with particular advertising associated with their specific health conditions," (*id.* ¶ 155); that Facebook and Google could use intercepted communications for "personalized advertisements," (*id.* at ¶¶ 2-3, 71, 77, 90, 97); and that Plaintiff and putative class members were harmed by facing "ongoing unwanted targeted advertisements," (*id.* ¶¶ 7, 138). Plaintiff further alleged in the Amended Complaint that LGH intercepted communications to "increase its revenues," for "financial gain," and for "commercial advantage to increase revenue from existing patients and gain new patients." *Id.* ¶¶ 162, 163, 165.

Judge Levenson considered Plaintiff's allegations related to marketing and targeted advertising, (*see* R&R at 2, 4-5, 7), but ultimately (and rightly) concluded that "[t]he allegations of the Complaint fail to plausibly support an inference that LGH's purpose in deploying the web tracking tools was anything other than the usual reason why website operators use such tools: to help run their websites." R&R at 31 (collecting cases); *see id.* ("There are, for instance, no allegations in the Complaint that LGH had a corporate interest in assisting Google and Meta, or that it was paid to disclose HIPAA protected information that Google and Meta requested.").

In other words, the core defect remains: Plaintiff does not allege that "LGH's purpose [was] to violate its patients' HIPAA rights," through targeted advertising or otherwise. R&R at 33. As

detailed by Judge Levenson, if LGH's purpose was to identify patients, "it would have been easier, and more accurate, to simply print a list of patient names and send it to Google and Meta." R&R at 33. Moreover, even if Plaintiff had sufficiently alleged that LGH's "purpose" in using tracking technology was to promote its marketing efforts, such allegations do not constitute criminal or tortious conduct. *See also* LGH's MTD at 14-15 (collecting cases finding that economic or commercial gain does not equate to a criminal or tortious purpose). More allegations "detailing" LGH's marketing efforts further would be futile.

**B. Adding "Detail" About Targeted Advertising As A "Separate" Tort Does Not Tilt The Scale In Plaintiff's Favor.**

Next, Plaintiff seeks leave to add "greater detail" regarding how LGH's use "of the intercepted communications for targeted advertising present criminal and tortious acts separate from the interceptions." Pl.'s Mot. at 6. These amendments would not resolve the underlying defect in Plaintiff's pleading, namely that "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation." R&R at 25. Thus, "[t]here is no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tools." *Id.* That issue remains, because even if targeted advertising is a "separate" act, it is not criminal or tortious in these circumstances. *See* LGH's MTD at 14-15 (citing *Katz-Lacabe v. Oracle America*, 2023 WL 2838118, at *16 (N.D. Cal. Apr. 6, 2023) ("Defendant's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money."); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (joining "the weight of persuasive authority" in pixel litigation in concluding that "seeking to drive marketing and revenue" does not demonstrate a criminal or tortious purpose); *Sun West Mortg. Co. v. Flores*, 2016 WL 1030074, at *5 (D.P.R. Mar. 10, 2016) (allegations that defendant "intends to benefit economically from the confidential information he

intercepted" were insufficient); *Rodriguez v. FastMed Urgent Care, P.C.*, 2024 WL 3541582, at *6 (E.D.N.C. July 24, 2024) (alleging defendant intercepted communications "for commercial use or gain" does not equate to intercepting "for the purpose of committing any criminal or tortious act."); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (dismissing ECPA claim because "Plaintiffs do not allege that [commercial advantage] constitutes independently illegal or actionable conduct" sufficient to apply exception)).

### C. Plaintiff's Proposed Amendments Related To The Disclosure Of Patient Status Will Make No Impact On Her ECPA Claim's Viability.

Finally, Plaintiff seeks to add "clarif[ication]" as to "how LGH employed tracking technologies on webpages that reveal patient status." Pl.'s Mot. at 6. Once again, those allegations were already present in the Amended Complaint. Am. Compl. ¶¶ 3 (alleging tracking technologies "permitted third parties to intercept . . . requests for information on particular conditions and treatments, keyword searches, doctor searches, and access to bill payment portions of the website **that confirm patient status**.") (emphasis added); *see also id.* ¶¶ 47, 120, 122, 152. Whereas in the Amended Complaint, Plaintiff alleges patient status was disclosed via the bill pay button, here Plaintiff wants to add allegations that patient status was revealed because tracking technology was present on public webpages used to log into the patient portal. *See, e.g.*, Proposed Second Amended Complaint (Doc. No. 47-2), at 114. But, it makes no difference *how* Plaintiff alleges patient status was disclosed. That Plaintiff alleges patient status was disclosed via a button used to log in to the patient portal versus a button used to pay bills is simply inconsequential.

At any rate, Judge Levenson credited Plaintiff's allegations related to the purported disclosure of patient status, and still found dismissal appropriate. R&R at 4, n.2, *id.* at 28. Specifically, Judge Levenson recognized that "even though Plaintiff concedes that web-tracking tools were not deployed inside the patient portal, Plaintiff contends that there were, nonetheless,

improper disclosures of IHII . . . [because] there were buttons on public landing pages, which Plaintiff could have clicked to access the bill pay portal, and that by doing so would have signaled to Google and Meta that **Plaintiff was in fact a patient of LGH**, not just a public visitor." R&R at 28 (emphasis supplied); *see also id.* at 29 ("Plaintiff has alleged that a third party could infer that Plaintiff was a patient based on her click on a button to pay bills. At the motion to dismiss stage, Plaintiff is entitled to the benefit of all reasonable inferences from the facts alleged in the Complaint. Therefore, I will presume that a HIPAA violation occurred.").

The deficiency identified by Judge Levenson is still present: "the alleged HIPAA violation(s) would have been accomplished by so indirect a mechanism—with 'disclosure' occurring only through such an attenuated chain of inferences." R&R at 29. In the end, "[t]hat the alleged disclosures of IIHI were so indirect is itself an indication that accomplishing such disclosures was not LGH's 'purpose.'" *Id.* More allegations "clarifying" the indirect disclosures of "IIHI" through a series of button clicks will not save Plaintiff's pleading.

## III. Lawrence General Will Be Unduly Prejudiced If Plaintiff Is Allowed Leave To Amend.

LGH will be unduly prejudiced if Plaintiff is allowed to amend. Since this matter has been pending for so long, LGH's burden in demonstrating prejudice is low. Indeed, "[t]he longer a party delays in bringing an amendment, the less prejudice an opposing party must show to justify denying leave to amend." *Weber v. Sanborn*, 526 F. Supp. 2d 135, 143 (D. Mass. 2007). Even so, allowing Plaintiff to amend her pleading yet again will unduly prejudice LGH because it will only further deplete LGH's (and the Court's) resources. During the lifespan of this case, LGH has engaged in briefing on a first motion to dismiss, briefing related to removal from state court, a second round of motion to dismiss briefing after Plaintiff amended her complaint the first time, and oral argument on the second motion to dismiss. This Court has also spent a significant amount

of time and resources presiding over oral argument and preparing a 41-page ruling that is meticulously thorough in its analysis of the ECPA. Allowing Plaintiff leave to amend would require the parties and this Court to duplicate those efforts again. This Court should not allow Plaintiff another chance to remedy her pleadings. As the First Circuit has recognized, "busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well." *Aponte-Torres*, 445 F.3d at 58; *see also Kader*, 887 F.3d at 62 (allowing this sort of "wait and see" approach "would lead to delays, inefficiencies, and wasted work" as well as resulting in "unnecessary costs and inefficiencies on both the courts and party opponents").

## CONCLUSION

Plaintiff's motion for leave to amend her pleading should be denied.

Dated: October 10, 2025

Respectfully submitted,

LAWRENCE GENERAL HOSPITAL

By: */s/ Lisa Oliver White*
Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on October 10, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*
Lisa Oliver White