**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

**Suffolk, ss.**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>LAWRENCE GENERAL HOSPITAL,<br><br>Defendant. | **Case No. 1:25-cv-10081-NMG**<br><br>**Leave to file granted on October 22, 2025 (Doc. No. 52)** |

**PLAINTIFF'S REPLY MEMORANDUM**
**IN SUPPORT OF HER MOTION TO AMEND COMPLAINT**

In its opposition to the motion to amend, Lawrence General Hospital ("LGH") acknowledges that the basis for the Report and Recommendation of dismissal, adopted by the Court, was that "Plaintiff had not alleged sufficient facts to invoke the crime-tort exception." Doc. No. 50 at 1. The proposed amendment addresses those deficiencies by adding new facts to support the inferences Plaintiff alleges.

LGH argues that Plaintiff already makes allegations in her operative complaint that concern the same legal issues as the new facts Plaintiff seeks to add. *See, e.g., id.* at 10 (highlighting existing allegations on marketing use of intercepted communications). Plaintiff does not propose to fundamentally change her theory of liability but instead add factual allegations to support her existing theories and respond to the new standard for pleading the crime-fraud exception announced by Magistrate Levenson in his Report and Recommendation. The fact that the operative complaint already contains some allegations on these issues does not negate the force of additional allegations that address any lack of "**sufficient** facts." *Id.* at 1 (emphasis added). The well-pleaded allegations in the proposed Second Amended Complaint respond directly to the deficiencies found in the Report and Recommendation. Specifically:

(i) The proposed amendment adds new factual details about the functionality of the tracking technologies and how LGH intercepted communications for the purpose of engaging in criminal and tortious acts—the use of sensitive medical communications without obtaining patient consent (in

violation of HIPAA and state privacy law) for commercial purposes to bolster the effectiveness of its marketing efforts, including targeted advertising by LGH through Google's and Facebook's platforms. *See* Doc. No. 47-1 ¶¶ 3-5, 7, 12, 30-31, 35, 41-42, 45-47, 52-57, 71, 82(c), 90-91, 98, 144, 192. Such marketing efforts are fundamentally different than the mere "analytics" on which the Report and Recommendation focuses, given that marketing use of Private Information is expressly prohibited by HIPAA absent written consent. *Id.* ¶ 135. The new facts respond directly to the Report and Recommendation conclusion that "there are no allegations in the Complaint to suggest that LGH's purpose in deploying the web tracking tools was anything other than to gather information that would assist LGH in analyzing the traffic to its website." Doc. No. 41 at 31.[1]

(ii) The proposed amendment adds new factual detail showing how LGH's disclosures and subsequent use of the intercepted communications, including use of intercepted communications for targeted advertising, were criminal and tortious acts **separate from** the interceptions, and that those acts independently violated HIPAA and Massachusetts law. *See* Doc. No. 47-1 ¶¶ 5, 35, 69, 71, 98, 135, 144, 148, 172, 196, 206, 208, 219, 237. These new facts address the Report and Recommendation's finding that there was "no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tool." Doc. No. 41 at 25. [2]

---

[1] *See Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (hospital's purpose is criminal or tortious when they knowingly disclose private health information to another person for marketing purposes); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) ("Plaintiffs have plausibly alleged that Defendant's purpose was … [criminal] … [by] knowingly disclosing [individually identifiable health information] without authorization for marketing purposes"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719-20 (D. Minn. Dec. 21, 2023) (crime-tort exception applies where defendant's primary motivation was to use patient data for marketing, in violation of HIPAA).

[2] *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 2017197, at *17-19 (W.D. Wash. Nov. 14, 2024) (allegation that Costco "used their data to generate targeted advertisements" sufficient for a tortious purpose "independent" of the interception); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927-28 (D. Minn. 2024) (allegation that defendant later "monetize[d] [plaintiff's] private and protected health data" in violation of state law sufficient "independent from the act of interception"); *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750, at *11-13 (N.D. Cal. Aug. 4, 2025) (allegations that website owner intended to exploit intercepted communications to "deliver targeted ads to its customers" is an "independent prohibited purpose" beyond the "act of interception itself").

(iii) The proposed amendment adds new facts from which it can be plausibly inferred that LGH was acting with the requisite knowledge and purpose. As Judge Burroughs recently explained in *McManus v. Tufts Med. Center*, 2025 U.S. Dist. LEXIS 191546, at *8-9 n. 1 (D. Mass. Sept. 29, 2025) (Burroughs, J.), "If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies."[3] Plaintiff adds new factual allegations on how Facebook and Google specifically warned LGH not to use tracking on pages containing health information without patient consent, which shows that LGH acted knowingly and intentionally in disclosing health information—an act that violates both HIPAA and the Massachusetts Privacy Act. *See* Doc. No. 47-1 ¶¶ 7, 14-15, 17, 23, 28, 45-47, 54-57, 192.

(iv) Finally, Plaintiff adds new facts supporting the inference that LGH used protected healthcare information—in particular, by intercepting communications on the patient portal and bill payment pages that revealed patient status (which is Private Information under HIPAA)—in violation of HIPAA and state privacy laws, and did so to maximize the effectiveness of its advertising programs on the Google and Facebook platforms. *See* Doc. No. 47-1 ¶¶ 5, 7, 69, 100, 106, 109, 113-21, 134-135, 141, 146, 186-87. These allegations squarely address the Report and Recommendation's conclusion that even presuming a HIPAA violation occurred, the allegations fall short of establishing that such disclosures or improper use of patient status were LGH's purpose. Doc. No. 41 at 29, 33-34.[4]

---

[3] *See also Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ( "act" must be criminal or tortious); *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "defendants intercepted patients' electronic communications for the purposes of making disclosures that violated HIPAA"); *Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *16-22 (E.D. Va. Mar. 25, 2025) (following the reasoning of "[c]ourts around the country… [that] have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state health privacy laws," particularly where plaintiffs allege "status as medical patients"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *13 (C.D. Cal. Jan. 13, 2025) ("intent to disclose [HIPAA protected] information" sufficient); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (affirming claim based on purpose to disclose communications HIPAA protects).

[4] *See M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, 16-17 (D. Or. Aug. 28, 2024) (interceptions disclosing "status as a patient" through "financial assistance form" supported HIPAA violation); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024)

Regarding undue delay, LGH cites cases holding that courts have discretion to deny leave to amend after a motion to dismiss has been decided. But, the court unquestionably has discretion to permit an amendment, too. "Rule 15(a) reflects a liberal amendment policy." *Alharbi v. Beck*, 103 F. Supp. 3d 166, 167-168 (D. Mass. 2015) (Saris, J.). Particularly where leave to amend is sought before discovery and before any motion for summary judgment, amendment is proper so long as the proposed amendment complies with Rule 12 and there is no "'undue delay, bad faith, futility, or [lack of] due diligence on the movant's part.'" *Arana v. Molta*, 2025 U.S. Dist. LEXIS 148664, at *3 (D. Mass. Mar. 20, 2025) (Hedges, M.J.) (quoting *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017)). "District courts may offend the liberal amendment policy by implementing procedures that force litigants to choose between amending a complaint in advance of a court ruling or losing the right to amend at all," given that "plaintiffs may not be in a position to weigh the practicality and possible methods for curing deficiencies in a pleading in the absence of a more definite ruling." 3 Moore's Federal Practice - Civil § 15.14 (2025).

In addition, as reflected in Plaintiff's Memorandum in Support of Motion to Amend, the law on the crime-tort exception as applied to tracking technologies has emerged rapidly (and not always consistently) over the last several years. As this Court observed in the Report and Recommendation, "apart from differing facts … the mode of analysis differs considerably among many of the available decisions." Doc. No. 41 at 14. Against this changing legal landscape, courts have freely granted litigants leave to amend their pleadings after announcing the applicable pleading standard and then upheld their amended complaints. Doc. No. 48 at 4-5 (citing cases). This Court took a similar approach in *McManus v. Tufts Med. Center,* where it announced new standards, dismissed the case without prejudice, and granted leave to replead. 2025 U.S. Dist. LEXIS 191546, at *8-10 (D. Mass. Sept. 29, 2025) (Burroughs, J.) ("For the reasons stated above, Defendant's motion to dismiss the ECPA claim is GRANTED without prejudice and with leave to amend within 21 days").

("a user clicking on the 'log in' button" of a "patient portal" may convey "patient status, which in and of itself is protected health information").

Finally, "when assessing whether leave should be granted on a motion to amend, the 'crucial factor is the resulting prejudice to the opposing party.'" *Johnson v. County of Riverside*, 2025 U.S. Dist. LEXIS 169765, at *3 (C.D. Cal. June 24, 2025); *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (prejudice to non-movant the "touchstone" to analysis). This case remains at the early pleading stage. The motion to dismiss is pending. Discovery has not commenced. No case schedule has been set, and Plaintiff is not attempting to amend after any court-ordered deadline. *White v. Distrokid*, 2023 U.S. Dist. LEXIS 246350, at *3 (S.D.N.Y. Dec. 6, 2023) (motion to amend granted "in the absence of prejudice or bad faith" notwithstanding some delay); *Selvaggi v. Point Pleasant Beach Borough*, 2023 U.S. Dist. LEXIS 96177, at *12 (D.N.J. June 2, 2023) (defendants will suffer no more than minor inconvenience by allowing motion to amend even though briefing was complete on motion to dismiss). There is no prejudice.

In short, the thrust of the Report and Recommendation was that Plaintiff failed to present "sufficient facts" on certain key inferences relating to the crime-tort exception. Plaintiff's amendment, which adds a substantial volume of new facts that respond directly to those shortcomings, presents a proper basis for amendment.

Dated: October 22, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: October 22, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely