**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-10081-NMG |
| | ) | |
| LAWRENCE GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

**LAWRENCE GENERAL HOSPITAL'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**


Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS

INTRODUCTION .... 1

BACKGROUND .... 1

LEGAL STANDARD .... 3

ARGUMENT .... 3

I. Plaintiff Fails To State A Claim Under The ECPA. .... 3

A. Plaintiff Has Not Alleged A Criminal Or Tortious Purpose. .... 4

B. Plaintiff Expressly Alleges A Permissible Purpose. .... 8

C. Plaintiff Has Not Alleged An Act Independent Of The Interception Itself. .... 9

II. Plaintiff Fails To Plausibly Allege That Any Of Her Protected Health Information Was Disclosed. .... 11

III. Plaintiff Fails To State A Massachusetts Right To Privacy Law Claim. .... 12

IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty. .... 14

V. Plaintiff Fails To State A Claim For Breach Of Confidence. .... 15

VI. Plaintiff Fails To State A Claim For Negligence. .... 16

VII. Plaintiff Fails To State A Claim For Breach Of Contract. .... 18

VIII. Plaintiff's Unjust Enrichment Claim Fails. .... 20

CONCLUSION .... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ..........15

*Am. Hosp. Ass'n v. Becerra*,
No. 24-10775 (5th Cir. Sept. 4, 2024) ..........12

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ..........11, 12

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
53 F. Supp. 3d 279 (D. Mass. 2014) ..........14

*ARE-Tech Square, LLC v. Galenea Corp.*,
91 Mass. App. Ct. 1106 (2017) ..........20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..........14

*Bailey v. Hosp. of the Univ. of Pa.*,
266 A.3d 654 (Pa. Super. Ct. 2021) ..........17

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ..........20

*Beauregard v. Meldon*,
2019 WL 6877185 (D. Mass. Dec. 17, 2019) ..........18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........3

*Bonewit v. New-Indy Containerboard LLC*,
2024 WL 4932186 (D. Mass. Dec. 2, 2024) ..........17

*In re Boston Univ. COVID-19 Refund Litig.*,
511 F. Supp. 3d 20 (D. Mass. 2021) ..........18

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ..........13

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................19

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................9

*Clark v. Zwicker & Assocs., P.C.*,
2024 WL 2025568 (D. Mass. May 7, 2024) ....................14

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025) ....................9

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025) ....................4

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................12

*Doe v. Village Podiatry Grp., LLC*,
2024 WL 5187261 (Ga. Super. Nov. 20, 2024)....................18

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ....................20

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025) *appeal filed* No. 25-1672 (1st Cir. July 23, 2025) ....................6, 7, 8, 10

*Grocela v. Gen. Hosp. Corp.*,
2012 WL 3205616 (Mass. Super. July 18, 2012) ....................17

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (June 9, 2025 E.D. Cal.) ....................14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024)....................13

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....................12

*Katz v. Pershing, LLC*,
806 F. Supp. 2d 452 (D. Mass. 2011) ....................19

*Kelley v. CVS Pharm., Inc.*,
2007 WL 2781163 (Mass. Super. Ct., Aug. 24, 2007) ....................15, 16

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020)....................13

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003) ....................14, 15, 16

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005) ....................18

*McManus v. Tufts Med. Ctr., Inc.*,
2025 WL 2778025 (D. Mass. Sept. 29, 2025) ....................6, 8, 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................10

*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1, 12 (1st Cir. 2011) ....................3

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025) ....................10, 13

*One Wheeler Rd. Assocs. v. Foxboro Co.*,
843 F. Supp. 792 (D. Mass. 1994) ....................20

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ....................9

*Pershouse v. L.L. Bean, Inc.*,
368 F. Supp. 3d 185 (D. Mass. 2019) ....................20

*Reidy v. Umass Mem. Med. Ctr., Inc.*,
2021 WL 6777622 (Mass. Super. June 17, 2021) ....................17

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
16 N.E.3d 1044 (Mass. 2014) ....................17

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017) ....................20

*In re Shields Health Care Grp.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ....................15, 19

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................13

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ....................14

*Sweat v. Houston Methodist Hosp.*,
2025 WL 2697111 (S.D. Tex. Sept. 22, 2025) ....................8

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....17

*Tashjian v. CVS Pharm., Inc.*,
2020 WL 1931859 (D. Mass. Mar. 13, 2020)....15

*Webb v. Injured Workers Pharm., LLC*,
2023 WL 5938606 (D. Mass. Sept. 12, 2023) ....19

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024)....19

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....6, 12, 16, 19

*Willitts v. Engie N.A. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021)....16

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021)....13

*Wood v. City of Haverhill*,
2024 WL 4189932 (D. Mass. Sept. 13, 2024) ....4

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021)....16

**Statutes**

M.G.L. c. 111 § 70E ....17

Massachusetts Right to Privacy Act, G.L. c. 214 § 1B....3, 12

Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2511 *et seq.* .... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....3

RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979)....15

## INTRODUCTION

The Second Amended Complaint (SAC) marks Plaintiff Jane Doe's ***third*** attempt to plead privacy-related claims based on Lawrence General Hospital's (LGH) use of ubiquitous technology on its public website. The latest iteration fares no better than its predecessors. The SAC suffers from the same fatal defects as Plaintiff's prior pleadings and fails to cure *any* of the deficiencies identified in LGH's earlier Motion to Dismiss, (Doc. No. 15), or in Judge Levenson's Report and Recommendation dismissing Plaintiff's Electronic Communications Privacy Act (ECPA) claim, (Doc. No. 41). Remarkably, Plaintiff concedes that the SAC does not add new allegations but merely provides further "details" regarding the prior ones. These added details, however, remain insufficient to state a claim. Indeed, all of Plaintiff's "new" allegations were already present in the prior pleading, were already considered by Judge Levenson (and endorsed by Judge Gorton), and were dismissed. In other words, the SAC is no different from the Amended Complaint. For the reasons set forth below, Plaintiff's SAC should be dismissed in its entirety.

## BACKGROUND

LGH is a nonprofit healthcare system that offers a range of healthcare services in Massachusetts. It operates a public website (https://www.mhlawrencehospital.org/)[1] that is available to patients and non-patients alike. SAC ¶ 18. LGH's website provides "information about doctors, services, and treatments provided by LGH for particular medical conditions." *Id.* ¶ 22. LGH also offers a private patient portal, which allows patients to log in to a secure network to access their medical information. *Id.* ¶ 23. Plaintiff alleges LGH installed the so-called "tracking technology" on its public website, which she claims caused information about her interaction with LGH's website to be disclosed to third parties like Google and Meta. *Id.* ¶ 2.

[1] LGH's website was formerly www.lawrencegeneral.org.

Plaintiff amended her original complaint in December 2024. Doc. No. 1-1, pp. 46-114. In February 2025, LGH moved to dismiss all of Plaintiff's claims. Doc. Nos. 15, 16. On August 29, 2025, Magistrate Judge Levenson issued a 41-page report, recommending that Plaintiff's ECPA claim be dismissed. Doc. No. 41. Since Plaintiff's remaining claims were based on state law, Judge Levenson recommended that the case be remanded to state court. *Id.* On September 30, Judge Gorton accepted Judge Levenson's Report and Recommendation in part but rejected the report insofar as it recommended remanding the case to state court. Doc. No. 49.

Plaintiff sought leave to amend her complaint again on August 25, 2025; LGH opposed the motion. Judge Levenson granted Plaintiff's motion, holding that "the matters raised in the second amended complaint are more appropriately addressed through a renewed motion to dismiss, rather than through an evaluation of the pleadings sufficiency at the amendment stage." Doc. No. 55.

Plaintiff filed the SAC on October 30, 2025. Doc. No. 56. Plaintiff's amendments focused almost entirely on her ECPA claim, and specifically the crime-tort exception to the one-party consent rule of the ECPA. *See* Section I, *infra*. This makes sense, given that Judge Levenson previously found that Plaintiff's ECPA allegations were insufficient to invoke the crime-tort exception. Yet, Plaintiff added no *new* allegations to her pleading. Instead, her allegations admittedly only add "detail" to and attempt to "clarify" prior allegations. Pl.'s Mot. for Leave (Doc. No. 48). Specifically, Plaintiff claims the SAC adds the following:

> (1) "details" about how "LGH intercepted communications for the purpose of . . . the improper use of sensitive medical communications without obtaining patient consent . . . to bolster the effectiveness of its marketing efforts," (*id.* at 5-6);
>
> (2) "greater detail" regarding how LGH's use "of the intercepted communications for targeted advertising present criminal and tortious acts separate from the interceptions," (*id.* at 6); and

(3) "clarif[ication]" as to "how LGH employed tracking technologies on webpages that reveal patient status," (*id.*).

Plaintiff brings seven causes of action on behalf of herself and a putative class of Massachusetts residents: (1) violation of the ECPA; (2) violation of the Massachusetts Right to Privacy Law; (3) breach of fiduciary duty; (4) negligence; (5) breach of confidence; (6) breach of contract; and (7) unjust enrichment. SAC ¶¶ 147–223.

## LEGAL STANDARD

A court must dismiss a complaint under Rule 12(b)(6) if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] This standard demands more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain enough factual material "'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678)).

## ARGUMENT

### I. Plaintiff Fails To State A Claim Under The ECPA.

Plaintiff alleges LGH unlawfully "intercepted" her communications with its website, in violation of the ECPA. SAC ¶¶ 181–201. To state an ECPA claim, Plaintiff had to allege facts demonstrating LGH "(1) intentionally (2) intercepted, endeavored to intercept or procured another

[2] Unless otherwise noted, all emphases in citations have been added, and internal quotation marks and citations have been removed.

person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device, and (6) that the communication was intercepted contemporaneously." *Wood v. City of Haverhill*, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024).

The ECPA is a one-party consent statute, meaning an alleged "interception" by a party to the communication is not unlawful. The law expressly provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a . . . communication where such person is a *party to the communication*." 18 U.S.C. § 2511(2)(d). As recognized by Judge Levenson, here "there is no dispute that Plaintiff, as the Website visitor, and LGH, as the Website operator, were both parties to the communications at issue . . . [n]or is there any dispute that LGH consented to the interception of those communications by Meta and Google." *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *12 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025) (Doc. No. 41) ("R&R"). "Thus, Plaintiff's ECPA claim is foreclosed, unless the matter falls within an exception to the one-party consent rule." *Id.*

**A. Plaintiff Has Not Alleged A Criminal Or Tortious Purpose.**

The crime-tort exception to the one-party consent rule applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States." 18 U.S.C. § 2511(2)(d). In analyzing whether the crime-tort exception applies, the Court's inquiry can start and stop with the statute's language. Under the ECPA, the interception must be done *intentionally*, 18 U.S.C. § 2511(1)(a), but for the crime-tort exception to apply, there is a separate and additional mens rea requirement—that the interception be done "*for the purpose of committing* any criminal or tortious act." *Id.* § 2511(2)(d). Congress's repeated use of "intentionally" in § 2511(1)(a)–(d), evidences its deliberate choice to then use "purpose" in §(2)(d). *See* R&R at 21-22. As the Supreme Court explained, "[p]urpose is the most

culpable" mental state "and the hardest to prove" requiring that one "consciously desires" a result. *Id.* at 20 (citing *Counterman v. Colorado*, 600 U.S. 66, 78-79 (2023)).

The question here then is whether Plaintiff adequately alleges that LGH's *purpose* in using advertising technology was to act criminally or negligently. The answer is plainly no. As discussed, Plaintiff added allegations, to provide "detail" about LGH's purported criminal purpose. It is now abundantly clear (to the extent it was not already[3]) that Plaintiff alleges LGH "intercepted" communications for the purpose of facilitating "targeted advertising" to "advance [LGH's] marketing efforts." SAC ¶¶ 2-5, 7, 12, 17, 28, 31, 41, 51, 57, 70, 82, 84, 97, 102-03, 112, 144, 148, 163, 190, 192, 196, 206, 208, 237. But it is also abundantly clear that the ECPA's language "'intercepted *for the purpose* of committing any criminal or tortious act' means that the goal or aim of the interception itself must have been to use the intercepted information to commit a crime or tort. It is not enough that a crime or tort was a mere side-effect of the interception." R&R at 21. Plaintiff still has not met this standard; the SAC fails to plausibly allege that LGH's specific intent in deploying tracking tools was to violate its patients' privacy rights. In other words, Plaintiff's allegations did not show a criminal or tortious purpose before, and they still do not show one now.

Judge Levenson's prior ruling is instructive. First, it is important to recognize that Plaintiff previously alleged that LGH's purpose related to marketing and targeted advertising. Judge Levenson considered those allegations, (*see id.* at 2, 4-5, 7), but concluded that "[t]he allegations of the Complaint fail to plausibly support an inference that LGH's purpose in deploying the web

[3] The Amended Complaint stated that tracking technology can be used "for advertising purposes," (Am. Compl. ¶ 58), that LGH intercepted communications to "target Plaintiff with particular advertising associated with their specific health conditions," (*id.* ¶ 155); that Facebook and Google could use intercepted communications for "personalized advertisements," (*id.* at ¶¶ 2-3, 71, 77, 90, 97); and that Plaintiff and putative class members were harmed by facing "ongoing unwanted targeted advertisements," (*id.* ¶¶ 7, 138). Plaintiff further alleged that LGH intercepted communications to "increase its revenues," for "financial gain," and for "commercial advantage to increase revenue from existing patients and gain new patients." *Id.* ¶¶ 162, 163, 165.

tracking tools was anything other than the usual reason why website operators use such tools: to help run their websites." *Id.* at 31 (collecting cases and recognizing "[t]here are, for instance, no allegations in the Complaint that LGH had a corporate interest in assisting Google and Meta, or that it was paid to disclose HIPAA protected information that Google and Meta requested."). The fact that Plaintiff added "detail" to already-insufficient allegations does not save her claim.

To be sure, Plaintiff contends that LGH's use of tracking tools "violated HIPAA," (SAC ¶¶ 194–99), and was for its own "commercial gain," (*id.* ¶¶ 4, 12, 192), but the SAC does not *plausibly* allege that either of these were LGH's primary *purpose*, as opposed to a by-product of using the technology. *See* R&R at 33 (if LGH's purpose was to identify patients, "it would have been easier, and more accurate, to simply print a list of patient names and send it to Google and Meta."). As noted by Judge Levenson, "the disclosures may have been foreseeable by-products of LGH's decision to use web tracking tools . . . There is no allegation that LGH acted for the purpose of violating HIPAA or for the purpose of invading Plaintiff's privacy rights." *Id.* at 13-14.

Moreover, even if LGH's purpose was to obtain some sort of commercial or financial gain by using the tracking tools, that purpose is not criminal or tortious. *See* R&R at 37; *see also McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3 (D. Mass. Sept. 29, 2025) ("Plaintiff's assertions regarding Tufts Medical Center's financial motives, . . . are similarly insufficient to satisfy the crime-tort exception."); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025) *appeal filed* No. 25-1672 (1st Cir. July 23, 2025) ("commercial purposes or advantages are not the stuff of which a crime-tort is made"); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (plaintiffs failed to state a criminal or tortious purpose where complaint alleged defendants obtained personal data to increase profits and improve website analytics); *see also* LGH's MTD (Doc. No. 15) at 14-15 (collecting cases).

Furthermore, Plaintiff's attempt to add allegations that tracking tools were in LGH's patient portal make no difference here. First, Plaintiff still does not plausibly allege that tracking tools were *inside* the portal. Instead, Plaintiff states she "cannot know with certainty whether Lawrence General used tracking technologies within the dynamically generated pages accessed after a patient logs into the patient portal, although many hospitals did so prior to the publicity and public outrage during the summer of 2022 . . . [but] Lawrence General did, however, use the tracking technologies on pages used to navigate to and access its patient portal." SAC ¶ 114. Stated simply, Plaintiff alleges *other* hospitals had technology within their patient portals, so this Court should assume that LGH did too. This is, undoubtedly, a "naked assertion" that is "devoid of further factual enhancement" and based solely on speculation and has no bearing on anything related to LGH. The Court should reject Plaintiff's "unsubstantiated conclusion" out-of-hand. *See* R&R at 9-10.

At any rate, even if Plaintiff had plausibly alleged tracking tools were in LGH's patient portal, that still does not show a criminal or tortious purpose. Plaintiff does not contend that a violation of HIPAA—which requires a "knowing" mens rea—is enough to demonstrate the higher mens rea requirement of the ECPA, acting with "purpose." Indeed, Judge Levenson previously *assumed LGH committed a HIPAA violation* as he took the allegations in the Complaint as true, (R&R at 29-30), but it was clear that"[t]he mere fact that a website operator may be said to have 'knowingly' disclosed IIHI, does not plausibly support an inference that the making of such disclosures was the website operator's 'purpose.'"" R&R at 30, 32-34 ("A colorable claim of negligence is a far cry from a plausible allegation that LGH committed a felony violation of ECPA by acting 'for the purpose' of improperly disclosing its patients' private information."). At least one other court in this District has likewise dismissed an ECPA claim for the failure to allege a

criminal or tortious purpose, even when the plaintiff made portal-related allegations. *See Cape Cod*, 2025 WL 1745732 (alleging tracking tools were on "its website and patient portal").

In sum, Plaintiff's SAC "contains no allegation that LGH ever entertained a conscious purpose of disclosing the identities of its patients, or their treatments, to Google or Meta." R&R at 31. As such, Plaintiff has added nothing to the Second Amended Complaint to plausibly allege that LGH intercepted communications "for the purpose of" committing a crime or tort. This Court should follow its prior ruling and the rulings of numerous other courts and dismiss Plaintiff's ECPA claim. *See generally* R&R; *see also Tufts*, 2025 WL 2778025, at *3-4 (dismissing ECPA claim because the complaint "does not assert facts sufficient to support the inference that Tufts Medical Center intended to commit a criminal or tortious act or that disclosing private medical information to third parties was the 'primary motivation' or a 'determinative factor' in Tufts Medical Center's decision to record health care consumers' communications using various tracking technologies."); *Cape Cod*, 2025 WL 1745732, at *3-4 ("Because there are no factual allegations in the Complaint from which the court could conclude that CCHC, a non-profit hospital system, installed Meta Pixel and software-tracking technology with the 'primary motivation' of knowingly committing a violation of HIPAA or perpetrating a tort, the Complaint fails."); *Sweat v. Houston Methodist Hosp.*, 2025 WL 2697111, at *6 (S.D. Tex. Sept. 22, 2025) (dismissing Plaintiff's ECPA claim because the defendant's only purpose was to improve its marketing and outreach "which is devoid of the intent to commit crime or tort").

**B. Plaintiff Expressly Alleges A Permissible Purpose.**

Plaintiff's apparent theory—that LGH collected patient information *for the purpose* of violating HIPAA—is not only implausible on its face, but also contradicted by her own allegations, *i.e.*, that LGH used tracking tools to "optimize" its website and marketing, and for "commercial" advantage. SAC ¶¶ 2, 4, 40, 125. As many courts—including this one—have recognized, there is

nothing unlawful about these types of objectives. *See* R&R at 31. ("There are no allegations in the Complaint to suggest that LGH's purpose in deploying the web tracking tools was anything other than to gather information that would assist LGH in analyzing the traffic to its website[.]"); *id.* (the complaint "fail[s] to plausibly support an inference that LGH's purpose in deploying the web tracking tools was anything other than the usual reason why website operators use such tools: to help run their websites."). Indeed, Judge Burroughs recently dismissed an ECPA claim in a similar pixel lawsuit because allegations of "financial gain," and "increase[d] revenue from existing patients and gain new patients," were "insufficient to satisfy the crime-tort exception." *Tufts*, 2025 WL 2778025, at *3; *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (no crime-tort exception where plaintiff alleged "contradictorily, that [defendant] shared the information with third parties 'for the purpose of creating targeted online advertisements and enhanced marketing services', not tortious or criminal conduct").

In short, Plaintiff's allegations at most suggest LGH's *purpose* in allegedly intercepting communications was to improve its services and website, and for marketing and commercial use, not to violate HIPAA or any other law. Thus, Plaintiff fails to plausibly invoke the crime-tort exception and her ECPA claim should be dismissed.

### C. Plaintiff Has Not Alleged An Act Independent Of The Interception Itself.

There is another, independent, reason that Plaintiff fails to invoke the crime tort exception: Plaintiff does not allege a criminal or tortious act that is *separate* and *independent* from the interception itself. "[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). "[T]he criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the

interception's fruits." *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023). Numerous courts have rejected ECPA claims emphasizing that the disclosure and interception through the web technologies are a single act not a separate and independent crime or tort. *See, e.g., Cape Cod*, 2025 WL 1745732, at *4 n.3 (HIPAA violation was not a "further impropriety" because it was not an act "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"); *Okash v. Essentia Health*, 2025 WL 642913, at *3–4 (D. Minn. Feb. 27, 2025) (finding no crime or tort independent of the initial interception of data to trigger Wiretap Act liability); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (plaintiff's amended pleading did not invoke the crime-tort exception because "Plaintiff still fails to plead a tortious or criminal use of the acquired communications, separate from their recording, interception, or transmission.").

Plaintiff's SAC still does not allege a separate and independent crime or tort. The SAC alleges that LGH's tracking tools "contemporaneously intercepted . . . and transmitted" communications to third parties and "subsequently used the intercepted communications for targeted advertising purposes[.]" SAC ¶¶ 5, 69, 73, 82, 84, 89, 97, 193. This is an ever-so-slight change from the prior pleading—Plaintiff now alleges that the interception and transmission were contemporaneous, but the separate and independent crime or tort was LGH's "subsequent use" of the data for advertising purposes. *See* Redlined SAC (Doc. No. 47-2), ¶ 5. Those allegations make no difference here, for at least two reasons. First, as discussed at-length above, LGH's alleged use of tracking tools to aid its marketing efforts is not a criminal or tortious purpose. *See* Section I.A-B, *supra*. Second, the crux of Plaintiff's complaint is that LGH's use of tracking tools caused a simultaneous disclosure, and that *disclosure* allegedly violated HIPAA. *See* SAC ¶¶ 8, 9, 12, 74, 117, 136-39, 163, 176(j), 210, 217-18, 228, 237-38 (describing the alleged wrongdoing as an

"unauthorized disclosure"). And there is still "no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tools." R&R at 25. The alleged motivation behind using the tracking tools (to improve marketing) does not change that core claim. At bottom, Judge Levenson's analysis still holds strong: "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation." *Id.* at 25. Thus, Plaintiff fails to plausibly plead a criminal or tortious purpose that is independent of the interception itself, and this defect yet another reason why her ECPA claim should be dismissed.

## II. Plaintiff Fails To Plausibly Allege That Any Of Her Protected Health Information Was Disclosed.

Each of Plaintiff's remaining claims is based on a false premise: that when people visit LGH's public website, their "protected health information" is disclosed to third parties. SAC ¶¶ 1–2. This categorical assertion—which is not supported by any specific factual allegations—is wrong as a matter of law. Plaintiff bases it in large part on a December 2022 Bulletin issued by the Department of Health and Human Services (HHS). *Id.* ¶¶ 136–41. But the relevant portions of the Bulletin were vacated in an action against the HHS in the Northern District of Texas.

In *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." *Id.* at 802. That is because the website operator has no way of knowing why any particular user visits a particular webpage, or clicks a particular button. *See id.* at 795 ("A user's intent in visiting [an unauthenticated public webpage] is unknowable."). For example, a user might visit a healthcare website to find information for a family member, a friend, or for a school research project. *See id.* at 801. Or a user could visit the website to find non-medical information, like whether parking is available at a hospital. *Id.* But

whether or not the browsing relates to healthcare, it is not PHI if it takes place on a public website. *See id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).").[4]

Although Plaintiff alleges that she is a patient of LGH, she does not claim that she was searching for information related to *her* medical conditions or treatment. SAC ¶ 14. And even if she had performed such a search, LGH would have no way of knowing that it was *Plaintiff* running the search; it could have been any member of the public. For these reasons and others, numerous federal courts have granted motions to dismiss similar claims after *Becerra*. *E.g.*, *TMC Health*, 2024 WL 4364150, at *4 (dismissing complaint because "the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA") (emphasis in original); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) ("There is nothing about [plaintiff's] browsing activity that relates specifically to *her* health or relationship with Upperline.") (emphasis in original); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (plaintiff's "generic search queries" for burn specialists and burn treatments did not "constitute PHI").

Because every one of Plaintiff's remaining claims is premised on the alleged disclosure of PHI (*see, e.g.*, SAC ¶¶ 181–201, 202–12, 213–20, 221–29, 242, 249), and because the SAC does not actually allege such a disclosure, all of her remaining claims should all be dismissed.

### III. Plaintiff Fails To State A Massachusetts Right To Privacy Law Claim.

Under the Massachusetts Right to Privacy Act, G.L. c. 214 § 1B, a plaintiff may pursue a claim based upon a theory of public disclosure of private facts or intrusion upon seclusion, but for

[4] HHS dismissed its appeal of this decision. *See Am. Hosp. Ass'n v. Becerra*, No. 24-10775 (5th Cir. Sept. 4, 2024).

either theory must prove the facts gathered or disseminated were of a "highly personal or intimate" nature and that the invasion "resulted in an unreasonable, substantial or serious interference" with plaintiff's privacy. *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). And the invasion must be "both unreasonable *and* substantial or serious." *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiff has failed to allege either of the two elements of this claim.

First, Plaintiff still has not alleged that LGH gathered or disseminated any "highly personal or intimate" facts about her. The SAC added allegations about Plaintiff's specific actions on LGH's website, but they still *all* relate to Plaintiff's *voluntary* interactions with LGH's public website. *See* SAC ¶¶ 14-15; *see also* Section I.A, *supra* (explaining how Plaintiff still fails to plausibly allege that any tracking technology was inside LGH's patient portal). No one has a reasonable expectation of privacy in information "entered" on a public website, especially when they voluntarily provide the information to the website host. Numerous courts have dismissed similar privacy claims for these exact reasons. *See, e.g.*, *Koppel v. Moses*, 2020 WL 6292871, at *8-9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts"); *Okash*, 2024 WL 1285779, at *7 & n.9 (collecting cases and noting "[c]ourts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta"); *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) ("Contemporary internet browsing involves the collection of users' data, *and a reasonable user should expect as much*.") (emphasis in original) (collecting cases); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (dismissing invasion of privacy claim because "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA and similar statutes]").

Second, Plaintiff has also failed to allege an invasion of privacy that was "both unreasonable and substantial or serious." *Wofse*, 523 F. Supp. 3d at 137. In assessing this factor, courts "balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Clark v. Zwicker & Assocs., P.C.*, 2024 WL 2025568, at *7 (D. Mass. May 7, 2024). Even if Plaintiff had a reasonable expectation of privacy in her routine browsing activities, she does not claim LGH *used* her information for an improper purpose. Instead, she alleges LGH used the information "to "serv[e] personalized advertisements," (SAC ¶ 2), although the SAC does not allege Plaintiff actually received any. There is nothing invidious about that plainly legitimate business purpose. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (alleged invasion of privacy was not unreasonable, serious, or substantial "if, among other things, it had a legitimate business purpose"); *see also B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing privacy claims based on the disclosure of "routine medical searches and inquiries" because the disclosure was not "highly offensive"); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at * 7 (June 9, 2025 E.D. Cal.) (same).

**IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty.**

To establish a breach of fiduciary duty, "a plaintiff must show (1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties; (2) breach of that duty; and (3) a causal connection between that breach and some resulting harm to the plaintiff." *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014). Plaintiff has not satisfied any of these elements.

Plaintiff claims that LGH owed a duty to her because LGH is a healthcare provider and she was its patient. *See* SAC ¶ 214. But even assuming that is true, "the existence of a fiduciary

relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries." *Korper v. Weinstein*, 783 N.E.2d 877, 881 (Mass. App. Ct. 2003). The fiduciary duty applies "only as to matters within the scope of the fiduciary relationship." *Id.*; *see also* RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979) (fiduciary relationship covers "matters within the scope of the relation"). And Massachusetts courts have expressly "declin[ed] . . . to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment." *Korper*, 783 N.E.2d at 882 n.11.

When Plaintiff browsed LGH's public website—which is available to any person with access to the internet, regardless of patient status—she did so "beyond the context of medical treatment" and therefore outside the scope of any physician-patient relationship. *Id.*; *see also Kelley v. CVS Pharm., Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Ct., Aug. 24, 2007). Browsing a public website is not "medical treatment," and LGH does not owe a fiduciary duty to every person who used its public website. As discussed above, LGH does not even have a way of knowing whether a website visitor *is* a patient. LGH could not have breached a fiduciary duty that it was not aware of. Moreover, Plaintiff's claim also fails for the independent reasons that she does not sufficiently allege causation or damages, as discussed below in Section VI, *infra*.

## V. Plaintiff Fails To State A Claim For Breach Of Confidence.

Plaintiff's claim for breach of confidence fares no better. For one thing, it is not clear whether Massachusetts recognizes a standalone cause of action for "breach of confidence." In the context of a physician-patient relationship, the Supreme Judicial Court has recognized a "fiduciary obligation to hold in trust confidential information." *Alberts v. Devine*, 479 N.E.2d 113, 118–20 (Mass. 1985). And Massachusetts courts have not recognized a duty of confidence in this context beyond the fiduciary duty articulated in *Alberts*. *See, e.g.*, *In re Shields Health Care Grp.*, 721 F.

Supp. 3d 152, 165 (D. Mass. 2024) (citing *Alberts* and referring to breach of "fiduciary duty of confidentiality"); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *6 (D. Mass. Mar. 13, 2020) (analyzing claim for "breach of fiduciary duty of confidentiality"); *Kelley*, 2007 WL 2781163, at *5 (analyzing breach of fiduciary duty and common law duty of confidentiality as one issue); *Korper*, 783 N.E.2d at 881 (a "physician has a fiduciary duty to maintain the confidentiality of a plaintiff's medical records"). The Court should therefore dismiss the breach of confidence claim, either as duplicative or for the same reasons Plaintiff's fiduciary claim fails. *See* Part IV *supra*; *Willitts v. Engie N.A. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim where "there was no disclosure by a physician").

**VI. Plaintiff Fails To State A Claim For Negligence.**

Plaintiff alleges LGH was negligent by failing to "exercise reasonable care in safeguarding and protecting Plaintiff's . . . Private Information from unauthorized disclosure." SAC ¶¶ 221-29. To state a claim, Plaintiff must allege the "elements of duty, breach, causation and damages." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106 (D. Mass. 2021).

First, Plaintiff has failed to allege that LGH owed Plaintiff a duty of care. She claims LGH had a "special relationship" with patients that is recognized by "statute, regulations, industry ethical rules . . . and the common law." SAC ¶ 225. By now our response will be familiar: When Plaintiff visited LGH's public website, she did so as a member of the general public, not as a patient—and neither her patient status nor the unidentified "statutes" and "regulations" transforms her otherwise-ordinary browsing activity into an interaction protected by a duty of care. *See TMC Health*, 2024 WL 4364150, at *7 (dismissing negligence claim because the healthcare "statutes cited by Plaintiffs do not support a duty between a healthcare provider and people visiting its free, public website"; neither "HIPAA or the regulations promulgated by the [DHS require] healthcare

providers who maintain websites to protect website visitors from having their interactions with the webpage logged and shared for advertising purposes"); *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1052 (Mass. 2014) ("[T]he mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action.").[5]

Second, Plaintiff fails to plausibly allege any breach of duty. Plaintiff's negligence claim is based on the alleged "unauthorized disclosure" of Plaintiff's "Private Information." SAC ¶¶ 221–29. But as discussed in Section II, *supra*, the information allegedly disclosed is not PHI.

Third, Plaintiff has not alleged that she suffered cognizable harm as a result of LGH's alleged conduct. Plaintiff vaguely claims that her "[s]ensitive and confidential information" was disclosed, that she received unwanted "targeted advertisements," and that she lost her "property rights." SAC ¶¶ 9, 172. But as discussed above, the SAC provides no support for these allegations. It does not say (1) what, if any, specific information Plaintiff disclosed to LGH, (2) that any such information was disclosed to a third party, or (3) that she ever *actually* received any targeted advertisements. *See Bonewit v. New-Indy Containerboard LLC*, 2024 WL 4932186, at *2 (D. Mass. Dec. 2, 2024) (dismissing negligence claims for lack of damages because plaintiff had "shown no actual misuse or disclosure of his information"); *Reidy v. Umass Mem. Med. Ctr., Inc.*, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) (plaintiff's claims were "at best, abstract concerns about possible future impairments of his rights as a patient, without actual damages, and, as such, are insufficient to state his claims"); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *3 (N.D. Ga. Aug. 28, 2024) (plaintiff did not explain how receiving "targeted

[5] The two laws Plaintiff does briefly identify—M.G.L. c. 111 § 70E and HIPAA—are inapplicable for additional reasons. The first applies only to "records of *treatment*." And HIPAA is "designed to protect the privacy of patients that receive *treatment*." *Grocela v. Gen. Hosp. Corp.*, 2012 WL 3205616, at *5 (Mass. Super. July 18, 2012). Regardless, neither statute has a private right of action. *See, e.g.*, *Bailey v. Hosp. of the Univ. of Pa.*, 266 A.3d 654 (Pa. Super. Ct. 2021).

advertisements" caused harm; "[t]he better view from other courts around the country is that these types of damage claims are not actionable."); *Doe v. Village Podiatry Grp., LLC*, 2024 WL 5187261, at *2 (Ga. Super. Nov. 20, 2024) (dismissing pixel claims because plaintiff "only offers speculative or theoretical injuries rather than actual losses or injuries to sustain any of his claims for damages"). Plaintiff's negligence claim should be dismissed.

## VII. Plaintiff Fails To State A Claim For Breach Of Contract.

To state a claim for breach of contract, Plaintiff must allege the existence of a valid contract between the parties, plaintiff's willingness to perform, breach of the contract, and damages as a result. *See In re Boston Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 (D. Mass. 2021). Plaintiff's breach of contract claim fails for multiple reasons.

First, there was no mutual assent. To create an enforceable contract, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Beauregard v. Meldon*, 2019 WL 6877185, at *3 (D. Mass. Dec. 17, 2019); *see also*. *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (affirming dismissal of express and implied contract claims for "failure to reach agreement on the basic terms of the contract"). Plaintiff alleges that she was required to disclose her "personal information, including names, email addresses, phone numbers, computer IP addresses, [and] appointment information . . . to the [LGH] Website as a condition of receiving healthcare services," and thereby entered into an explicit or implied contract under which LGH agreed to protect that information. SAC ¶¶ 243–44. Every part of that assertion is wrong or misleading. LGH's public website does not provide medical services, and there is no method on the public website for a user to provide their name, email address, phone number, or appointment information—none of which is "Private Information" to begin with.

Regardless of what Plaintiff believed, there is no support for the proposition that *LGH* agreed to "protect" Plaintiff's public website browsing data. To the extent Plaintiff alleges an explicit contract based on LGH's privacy policy, she does not claim any reliance on that document (or that she even read it), let alone that the privacy policy contemplates LGH agreeing to keep *public browsing information* private. *See Shields*, 721 F. Supp. 3d at 162 (dismissing express contract claim for this reason); SAC ¶¶ 244-46. To the extent Plaintiff alleges an implied contract existed, she similarly provides no factual allegations that LGH manifested assent to safeguard browsing information. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (dismissing implied contract claim because neither "party ever discussed the manner of safeguarding [] PII or PHI or that plaintiff had a particular concern about disclosing that information"). Again, even if Plaintiff and LGH had an agreement about the provision of medical services, this does not give rise to an agreement that LGH would protect her public browsing data, and Plaintiff's subjective belief to the contrary is insufficient as a matter of law. *See Webb v. Injured Workers Pharm., LLC*, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (dismissing implied contract claim where "plaintiffs had a good faith belief that their PII would be protected" but failed to allege defendant "agreed—explicitly or implicitly—to provide such protection").

Second, there was no consideration. A "promise to perform a pre-existing duty is not valid consideration." *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011). If Plaintiff's browsing information *did* qualify as PHI (*but see* Section II, *supra*), LGH would have a preexisting legal obligation under HIPAA to protect that information. *See TMC Health*, 2024 WL 4364150, at *8 (dismissing implied contract claim where defendant "was already required under HIPAA to protect patients in the ways" its policy promised); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (where defendants were required by law to adhere to

HIPAA, its provisions could not "create contractual obligations"); *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same).

Third, for the reasons discussed above in Section VI, Plaintiff has not alleged any damages resulting from the alleged breach of contract.

**VIII. Plaintiff's Unjust Enrichment Claim Fails.**

Plaintiff asserts a claim for unjust enrichment on the ground that she "conferred a benefit upon Defendant in the form of monetizable communications . . . that Defendant collected from [her] and disclosed to third parties . . . without authorization and proper compensation." SAC ¶ 252. This claim fails because "a party with an adequate remedy at law cannot claim unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Plaintiff undoubtedly has remedies at law available through her statutory and common law claims against LGH. The ultimate "disposition of those claims is irrelevant." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010). As numerous courts have held, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis*, 865 F.3d at 16 (affirming dismissal of unjust enrichment claim for this reason); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing unjust enrichment claim because Plaintiff's breach of contract and statutory claims, while ultimately dismissed, were adequate remedies at law); *Fernandes*, 731 F. Supp. 2d at 114 (same); *One Wheeler Rd. Assocs. v. Foxboro Co.*, 843 F. Supp. 792, 799 (D. Mass. 1994) (same); *ARE-Tech Square, LLC v. Galenea Corp.*, 91 Mass. App. Ct. 1106 (2017) (same). The unjust enrichment claim should be dismissed.

## CONCLUSION

The Court should dismiss the Second Amended Complaint with prejudice.

Dated: December 5, 2025

Respectfully submitted,

LAWRENCE GENERAL HOSPITAL

By: *Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email on December 3 and 4, 2025 concerning this motion, and have not been able to narrow the issues in dispute.

*Lisa Oliver White*
Lisa Oliver White

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on December 5, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*Lisa Oliver White*
Lisa Oliver White