**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>LAWRENCE GENERAL HOSPITAL,<br><br>Defendant. | **Case No. 1:25-cv-10081-NMG**<br><br>Leave to file excess pages granted on December 19, 2025 (Doc. No. 66) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

# Table of Contents

Page


I. Introduction....1

II. The Facts....2

III. Argument....5

A. Plaintiff Alleges Facts that Amply Support the Crime-Tort Exception to the ECPA's One-Party Consent Defense....5

1. The Court's Prior Decision on the Crime-Tort Exception....5

2. The SAC Adds Allegations Supporting the Crime-Tort Exception....6

3. LGH Intercepted Communications for the Purpose of Committing Acts Which Violated HIPAA....8

4. LGH Intercepted Communications for the Purpose of Committing Acts that are Tortious under Massachusetts Law....12

5. The Court Should Reject LGH's Argument Requiring a Conscious Objective to Violate a Particular Law....12

6. The Court Should Again Reject LGH's Argument that Financial Motives Negate Any Criminal or Tortious Purpose....15

7. Plaintiff Alleges Criminal and Tortious Acts Separate from the ECPA Violation....16

8. Conclusion on the Crime-Tort Exception....19

B. Plaintiff Adequately Alleges Her State Law Claims....19

1. None of Plaintiff's State Law Claims Require Proof of a HIPAA Violation....20

2. Plaintiff States a Claim under the MRPA....20

3. Plaintiff States a Claim for Breach of Fiduciary Duty....23

4. Plaintiff States a Claim for Breach of Confidence....24

5. Plaintiff States a Claim for Negligence....24

6. Plaintiff States a Claim for Breach of Contract....25

7. Plaintiff States a Claim for Unjust Enrichment....25

IV. Conclusion....25

# <u>Table of Authorities</u>

Page

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sept. 9, 2024) ....................9

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ....................9, 23, 24, 25

*Alberts v. Devine*,
395 Mass. 59 (1985) ....................24

*Allen v. Midwest Express Care, Inc.,*
2025 U.S. Dist. LEXIS 151237 (N.D. Ill. Aug. 6, 2025) ....................10

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) .................... 21, 22

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................11

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ....................9, 21, 23, 25

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................22

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ....................10, 16, 18

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) ....................15

*Cooper v. Mt. Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .................... 16, 18, 23, 24

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................10

*Doe v. Bon Secours Mercy Health*,
2021 Ohio Misc. LEXIS 3985 (Ct. Com. Pl. Nov. 22, 2021) ....................25

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) .................... 21, 22

*Doe v. Deaconess Ill. Union Cnty. Hosp.. Inc.*,
2025 U.S. Dist. LEXIS 192058 (S.D. Ill. Sept. 29, 2025) ........ 11, 16, 17

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023) ........ 21, 22, 23, 25

*Doe v. Lawrence Gen. Hosp.*,
2025 U.S. Dist. LEXIS 195964 (D. Mass. Aug. 29, 2025) ........ 1

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ........ 21, 22

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.) ........ 21

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ........ 21, 23, 25

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E. D. Cal. June 9, 2025) ........ 17

*Doe v. Wellstar Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 209327 (N.D. Ga. Aug. 21, 2025) ........ 8, 9, 17, 19

*Elkins v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) ........ 25

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ........ 9, 18, 24

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 U.S. Dist. LEXIS 119435 (D. Mass. June 24, 2025) ........ 14

*Grajales v. P.R. Ports Auth.*,
682 F.3d 40 (1st Cir. 2012) ........ 15

*Hartley v. Univ. of Chi. Med. Ctr.*,
2025 U.S. Dist. LEXIS 194466 (N.D. Ill. Oct. 1, 2025) ........ 10, 11, 17

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 22

*I.T. v. Choicepoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025) ........ 10, 11, 17

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ........ 16

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................22

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................8, 10, 12, 22

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024)....................24

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................15, 22, 24

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) .................... 12, 17, 19, 25

*Jarrett v. Upperline Health, Inc.*,
No. 1:23-cv-01261 (S.D. Ind. Aug. 8, 2025) ....................19

*Juenger v. Deaconess Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 193628 (S.D. Ill. Sept. 30, 2025).................... 5, 17

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) ....................10

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)....................10

*Korper v. Weinstein*,
57 Mass. App. Ct 433 (App. Ct. 2003)....................23

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)....................18

*Lamarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Ind. Super. Ct. Oct. 3, 2024) .................... 21, 23, 24, 25

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025) ....................9, 10, 18

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024)....................10

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .................... 16, 18

*Montana v. Egelhoff*,
518 U.S. 37 (1996)....................14

*Nienaber v. Oberlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................10

*Polay v. McMahon*,
468 Mass. 379 (2014)....................21

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................12, 16, 21

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025)....................9, 16, 17

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)....................16

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991)....................20

*SEC v. Willis*,
787 F. Supp. 58 (S.D.N.Y. 1992)....................23

*Smith v. Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024)....................18

*Smith v. Rack Room Shoes, Inc.*,
2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025)....................17, 19

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025)....................13, 16

*United States v. O'Hagan*,
521 U.S. 642 (1997)....................23

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024)....................20, 21, 23, 25

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 U.S. Dist. LEXIS 211708 (D. Minn. Sep. 30, 2025)....................9

*Wiley v. Universal Music Grp., Inc.*,
2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025)....................22

*Williams v. TMC Health*,
No. CV-23-00434 (D. Ariz. Aug. 19, 2025)....................19

*Zelby Holdings, Inc. v. VideogeniX, Inc.*,
92 Mass. App. Ct. 86 (App. Ct. 2017)....................25

**Statutes**

18 U.S.C. § 2511 .....5

M.G.L. c. 214 § 1B.....20

MPC § 2.02 .....14

**Other Authorities**

*Health Information Privacy*,
U.S. Dep't of Health and Human Services (July 26, 2013).....8

Restat. 3d of Agency, § 8.05 .....23

*Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,*
U.S. Dep't of Health & Human Services (Dec. 1, 2022) .....8

**Rules**

Fed. R. Civ. P. 8 .....14

Fed. R. Civ. P. 9 .....15

**Regulations**

45 C.F.R. § 160.103.....8

45 C.F.R. § 164.508..... 8, 18

## I. INTRODUCTION

This case is about a hospital's betrayal of patient privacy for its own commercial gain. Plaintiff and other Lawrence General Hospital ("LGH") patients trusted LGH to protect their personal health communications. LGH was legally obligated to do so and assured its patients that LGH would keep those confidences. Despite its promises and legal obligations, LGH installed hidden tracking technologies on its website (the "LGH Website") that acted as a wiretap, which intercepted communications between patients and LGH. LGH then transmitted the intercepted communications and personally identifying information of its patients to Facebook and Google. LGH subsequently exploited intercepted communications for marketing purposes, leveraging them to serve advertising on Google and Facebook platforms, targeting LGH patients based on the content of their intercepted communications.

On September 30, 2025, this Court adopted the Report and Recommendation (Doc. No. 41, "R&R") of Magistrate Judge Levenson, *Doe v. Lawrence Gen. Hosp.*, 2025 U.S. Dist. LEXIS 195964 (D. Mass. Aug. 29, 2025) and granted LGH's motion to dismiss Plaintiff's claim under the Electronic Communications Privacy Act ("ECPA"). The Court (Levenson, M.J.) subsequently granted Plaintiff's motion to amend (Doc. No. 55), and Plaintiff filed her Second Amended Complaint ("SAC") (Doc. No. 56). In its motion to dismiss the SAC (Doc. Nos. 59, 60), LGH mostly repeats its prior motion, failing to fully engage the SAC's new allegations, which fully address the deficiencies identified by the Court in the R&R; those new allegations amply support Plaintiff's claims and warrant upholding all claims.

As to Plaintiff's ECPA claim, LGH's sole argument is based on the statute's one-party consent defense, but that defense does not apply because LGH intercepted communications for the purpose of committing criminal or tortious acts. The Court held that Plaintiff previously failed to allege that even if "web tracking tools had the *effect* of disclosing sensitive medical information," that "these were…goals or objectives that LGH purposely sought to accomplish." R&R 13. The Court also concluded that "Plaintiff had failed to plausibly plead a criminal or tortious purpose that is independent of the interception itself,"

concluding, based on the allegations of Plaintiff's prior complaint, the "act of disclosure" was not "separate or independent of the intentional act of deploying the web tracking tools." *Id.* at 25.

The SAC now alleges how LGH intercepted patient communications for the purpose of committing acts which are criminal and tortious in two ways: First, LGH knowingly disclosed patient communications to Google and Facebook in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), Massachusetts tort law (including Massachusetts Right to Privacy Act ("MRPA")), and LGH's own promises to patients. On this point, Plaintiff adds substantial fact allegations supporting the inference that such criminal and tortious acts were LGH's purpose, not an unintended "by-product" (R&R at 13-14) of the tracking technologies. Second, LGH later exploited the intercepted communications for marketing purposes, which separately violated federal and state law. The SAC explains how both the disclosure and the subsequent commercial exploitation of patient communications are tortious and criminal acts, separate and independent from the interception itself.

LGH also violated Massachusetts law. Massachusetts courts have unanimously affirmed the claims Plaintiff asserts here, arising from the same conduct. LGH's challenges to those claims lack merit, and there is no reason for the Court to depart from established authority sustaining such claims.

For the reasons set forth herein, LGH's motion to dismiss the SAC should be denied.

## II. THE FACTS.

During the Class Period, Plaintiff—an LGH patient—regularly communicated with LGH through its website. She accessed the LGH patient portal to review her medications, obtain test results, get appointment information, and review letters from her physicians regarding her treatments. SAC ¶¶ 14-15, 75, 94, 100, 104, 106, 118, 146, 187 (hereinafter, "¶¶ __"). She also obtained information about her doctors and medical procedures, visited specific LGH department pages, such as the Laboratory Services page, and searched for terms used in a pathology report her doctor provided. *Id.*

LGH secretly intercepted Plaintiff's patient communications by placing hidden code on its website for advertising tracking technologies, which first captured those communications and then

disclosed them to Google, Facebook, and other companies. ¶¶ 2-3, 66-76. The tracking technologies were designed so that third parties could associate intercepted communications with individuals' real-world identities, facilitating targeted advertising based on the content of those communications. ¶¶ 36-57.

Facebook and Google's businesses are built on advertising—in particular, highly targeted ads to individuals based on extensive behavioral profiles Google and Facebook have amassed for practically every person. ¶¶ 38-44, 49-53, 57. The tracking technologies LGH deployed advanced Google and Facebook's efforts to gather data about individuals for targeted advertising. ¶¶ 36-57. LGH's primary purpose in deploying tracking technologies on its website was to use the contents of illegally intercepted communications to target LGH advertising to its patients through Google and Facebook's advertising platforms. ¶¶ 3-5, 7, 12, 41, 45-46, 52-55, 57, 71, 91, 98, 102, 103, 110, 112, 116-17, 120-21, 144, 148, 163, 190, 192, 196.

LGH configured and customized its website and the tracking technologies to intercept and disclose the substance of sensitive patient communications, revealing patients' status as LGH patients through communications on the patient portal (¶¶ 113-18), an "I am a Patient" page for patients (¶¶ 119-21), and bill payment pages (¶¶ 111-12). LGH also configured the tracking technologies to disclose the identities of patients' doctors (¶¶ 106-10), the specific terms they searched for (¶¶ 104-05), and their specific medical conditions and treatments (¶¶ 95-103). LGH knew the tracking technologies were designed to disclose individuals' real-world identities to Google and Facebook and configured them to achieve that end. ¶¶ 38, 46-47, 52, 54-56, 62, 82, 84-87, 90-93. Plaintiff had both Google and Facebook accounts, permitting Google and Facebook to easily associate Plaintiff's intercepted communications with LGH with Plaintiff's real-world identity. *Id.* & ¶ 17.[1]

[1] These allegations respond directly to and negate the Court's conclusion that "nothing in the Complaint suggests that the tools in question were…customized by LGH." R&R 4. The Court also found that Plaintiff's prior allegations did not adequately explain how the tracking technologies were used to associate intercepted communications with individuals' real-world identities. R&R 7. Plaintiff has bolstered her allegations to make these facts abundantly clear. *E.g.,* ¶¶ 38, 41-42, 52, 82(c), 85-86, 90-91, 93.

Plaintiff personally communicated with LGH during the Class Period through specific pages on which LGH deployed tracking technologies that intercepted Plaintiff's communications, including (i) LGH's patient portal; (ii) LGH's searchable database of doctors and pages for Plaintiff's physicians; (iii) pages through which Plaintiff requested information about specific medical procedures; and (iv) Plaintiff's specific search terms entered for words used in a pathology report. ¶¶ 14-15, 75, 95-100, 104-10, 113-18. Those interceptions revealed to Facebook and Google Plaintiff's identity, that Plaintiff was an LGH patient seeking confidential medical care from LGH, the names of her doctors, her specific medical conditions, and particular search terms she used related to her medical care. ¶¶ 95-100, 104-10, 113-18. LGH subsequently used Facebook and Google's advertising platforms to target its patients, including Plaintiff, with advertisements based on the content of the intercepted communications. ¶¶ 45-46, 52-55, 57, 71, 91, 98, 102, 103, 110, 112, 116-17, 120-21.

LGH did not disclose to Plaintiff and its other patients that it intercepted and disclosed to Google and Facebook the contents of patient communications, or that LGH, Google, and Facebook would later use those intercepted communications to target patients with advertising. ¶¶ 28-35. The tracking technologies are hidden by design and undetectable to ordinary internet users. ¶¶ 58, 72, 77. LGH not only failed to disclose such technologies but falsely told Plaintiff and other patients, through online policies and terms of service, that LGH would not share, without "signed authorization," any "medical information" about patients, ¶¶ 30-31, even though this is precisely what it did by deploying tracking technologies throughout its website.

At the time of the interceptions, LGH knew full well of the privacy implications of deploying tracking technologies throughout its website, including on pages like the patient portal, bill payment page, and "I am a Patient" page, which reflected patient status. Indeed, Google and Facebook expressly warned LGH to obtain user consent for all tracking technologies and to refrain from using them on healthcare webpages. ¶¶ 41-43, 47, 53, 56. Notwithstanding these directions, LGH deployed the tracking technologies on pages specifically designed for patients without obtaining patient consent. ¶¶ 110-16,

120-39. LGH deployed the tracking technologies on its website for the purpose of disclosing a patient's status as an LGH patient to Google and Facebook and to track that patient's communications on its website, so that LGH could target those patients with advertising. ¶¶ 71, 91, 98, 102, 103, 110, 112, 116-17, 120-21. In engaging in such intentional conduct, LGH violated criminal and tort laws protecting the privacy of such patient communications. ¶¶ 4, 12, 126-57, 195-99, 202-41.

## III. ARGUMENT

### A. *Plaintiff Alleges Facts that Amply Support the Crime-Tort Exception to the ECPA's One-Party Consent Defense.*

LGH violated the ECPA by intercepting, disclosing to third parties, and later exploiting patient communications, revealing individuals' status as LGH patients and other sensitive information, such as the identity of their doctors and medical conditions, and knowingly engaged in conduct that violated HIPAA and Massachusetts tort law. LGH's sole argument on the ECPA claim—that it was a party to the communications—ignores significant new allegations Plaintiff added to the SAC.

#### 1. <u>The Court's Prior Decision on the Crime-Tort Exception.</u>

Under the ECPA, it is unlawful for any person to intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Section 2511(2)(d) contains an exception that provides: "It shall not be unlawful under this chapter for a person … to intercept a[n] … electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Thus, "one is normally not liable for intercepting her own communications but may be liable if her conduct satisfies the crime or tort exception." *Juenger v. Deaconess Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 193628, at *24-25 (S.D. Ill. Sept. 30, 2025).

The Court recommended dismissal of Plaintiff's initial ECPA claim on two bases:

First, it held that Plaintiff pled insufficient facts to support the inference that LGH intercepted communications for the purpose of committing criminal or tortious acts. The Court did not, however,

hold that Plaintiff's legal theory was nonviable or that no facts could be alleged supporting the required inference. In particular, the principal driver of the Court's holding in the R&R was that Plaintiff's allegations established only that the tracking technologies "had the *effect* of disclosing sensitive medical information" or were "foreseeable by-products of LGH's decision to use" the technologies, but not that such disclosures were "goals or objectives that LGH purposefully sought to accomplish." R&R 13.

Second, it held Plaintiff failed to plead a criminal or tortious act "separate from the alleged ECPA violation" because the Court understood Plaintiff to allege "only **one** act: Deploying a web tracking tool that simultaneously provides analytic information to the website operator and shares data with Google or Meta." R&R 24 (emphasis added).

After the R&R was issued, Plaintiff moved to amend. The Court (M.J. Levenson) granted leave to amend. Plaintiff has now done so. The amendment resolves any shortcomings the Court identified.

2. The SAC Adds Allegations Supporting the Crime-Tort Exception.

The SAC adds detailed facts that amply support the crime-tort exception. Plaintiffs' new allegations show how LGH was aware that the tracking technologies would disclose confidential communications to Facebook and Google in violation of HIPAA, the MRPA, and its own promises to its patients. It also alleges how LGH would later use the illegally intercepted communications for targeted internet advertising, which was LGH's purpose in deploying the tracking technologies.

In commenting on the allegations in the dismissed complaint, this Court stated that "there are no allegations in the Complaint to suggest that LGH's purpose in deploying the web tracking tools was anything other than to gather information that would assist LGH in analyzing the traffic to its web." R&R 31. The new allegations in the SAC require the contrary inference: LGH's conduct was for the purpose of engaging in actions that violated HIPAA and Massachusetts tort law. The new fact allegations include the following:

(i) Allegations showing that the primary function of the tracking technologies and the primary reason for LGH to deploy the tracking technologies on its website was to disclose communications to third-party marketing companies to enable LGH's own targeted

advertising[2] to its patients on Google and Facebook's platforms based on the content of the intercepted communications (¶¶ 3-5, 7, 12, 30-31, 35, 41-42, 45-47, 51-57, 71, 82(c), 84, 90-91, 98, 102-03, 110, 112, 116-18, 120-21, 141, 144, 192)[3];

(ii) Allegations showing LGH was on notice about how data containing health information may be disclosed or used,[4] including how tracking technology vendors notified LGH that the intercepted communications would be used to facilitate targeted advertising and warned LGH not to use the technologies on health-related pages, but that LGH deployed the technologies on patient-specific pages anyway (¶¶ 7, 38, 41-45, 47, 56)[5];

(iii) Allegations setting forth in further detail how, despite the warnings from Facebook and Google, and contrary to its promises to patients, LGH deployed tracking technologies on pages that revealed individuals' status as LGH patients, in violation of HIPAA and Massachusetts tort law (¶¶ 5, 14-17, 23, 28, 100, 106, 109, 113-21, 146, 163, 186-87);

(iv) Allegations showing how disclosures of and subsequent marketing using the intercepted communications are both acts distinct from the interceptions (¶¶ 5, 35, 55, 71, 98, 135, 144, 148, 172, 196, 206, 208, 219, 237).

Despite the voluminous new allegations relevant to the crime-tort exception, in its Memorandum in Support of its Motion to Dismiss ("Mem.") (Doc. No. 60), LGH argues that "all of Plaintiff's 'new' allegations were already present in the prior pleading [and] were already considered by Judge Levenson." Mem. 1. The SAC disproves this contention. It includes numerous new, detailed fact allegations. Plaintiff's theory of liability remains the same, but the Court never held that Plaintiff's theory of liability is nonviable; instead, the Court held that there were inadequate facts to support the inferences necessary to state a claim. The new factual allegations resolve any such deficiency and plausibly support the

---

[2] The SAC presents advertisements that show how LGH exploited patient communications about particular treatments and conditions to target patients with advertising. ¶¶ 54, 98.

[3] Indeed, the express and intended purpose of deploying Facebook's and Google's tracking technologies on a website is to disclose to Facebook and Google a user's activities on a website, identify that individual user, and target that individual with advertising from the website owner (here, LGH). ¶¶ 41, 52-53, 57, 84, 141. Given how the tracking technologies operate, LGH was incentivized to share specific information about patient communications with Google and Facebook in order to maximize the effectiveness of LGH's individually targeted advertisements on Facebook and Google's platforms. ¶¶ 46, 55.

[4] Facebook and Google tell website owners that the purpose of the tracking technologies is to optimize the delivery of ads in order to run more data-driven advertisements. ¶¶ 41, 43, 51, 53.

[5] Facebook directed LGH to "provide[] robust and sufficiently prominent notice to users regarding" Meta Pixel, including a "clear and prominent notice on each web page where [Meta Pixel is] used that links to a clear explanation…that third parties, including Meta, may…collect or receive information from [LGH's] websites…and use that information to…target and deliver ads"—directions LGH ignored. ¶ 47. Google likewise required website owners to fully disclose its tracking technologies—requirements LGH ignored. ¶ 56. LGH also ignored directions not to use tracking technologies on pages with health information. ¶ 47.

inference that LGH intercepted communications for the purpose of engaging in acts that are both criminal and tortious—namely, the disclosure of sensitive communications to advertising companies, and the subsequent exploitation of those communications for commercial purposes, in violation of HIPAA, Massachusetts tort law, and LGH's promises to its patients. The disclosures and commercial exploitation of Plaintiff's healthcare communications were not a by-product of LGH's use of the tracking technologies, Mem. 6; rather, they were ***the very reason*** LGH deployed the tracking technologies.

3. LGH Intercepted Communications for the Purpose of Committing Acts Which Violated HIPAA.

HIPAA protects, among other things, "information…[that] relates to…the provision of health care to [the] individual [and for] which there is a reasonable basis to believe can be used to identify the individual." 45 C.F.R. § 160.103. HIPAA prohibits healthcare providers from "knowingly 'disclos[ing] individually identifiable health information" and imposes "penalties when a covered entity discloses the information with the intent to use it 'for commercial advantage….'" *Doe v. Wellstar Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 209327, at *21-22 (N.D. Ga. Aug. 21, 2025); 42 U.S.C. §1320d-6(b)(3). HIPAA also prohibits "any use…of protected health information for marketing." 45 C.F.R. § 164.508(a)(3)(i).[6]

Under HIPAA, "information which connects an individual with a healthcare provider 'is indicative that an individual has received or will receive medical services,'" is protected information, as it "'relates to the individual's past, present, or future health or health care.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (quoting *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,* U.S. Dep't of Health and Human Services (Dec. 1, 2022)). The prevailing view is that the crime-tort exception is satisfied when a hospital uses tracking technologies to intercept

[6] *Health Information Privacy*, U.S. Dept. of Health and Human Services (July 26, 2013), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html ("With limited exceptions, the [Privacy] Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing . . . Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes.").

patient communications for the purpose of disclosing information in violation of HIPAA.[7]

LGH emphasizes that the interceptions Plaintiff describes in the SAC occurred only on publicly accessible pages of the LGH website, and Plaintiff is not able, at this stage, to confirm whether similar interceptions occurred within LGH's patient portal. Mem. 7-8. LGH argues this fact categorically forecloses an inference that LGH intercepted communications for the purpose of committing acts that violate HIPAA. *Id.* The Court observed in the R&R that, had Plaintiff alleged that LGH deployed tracking technologies "inside" the LGH patient portal, such allegations may be sufficient to support the crime-tort exception. R&R 32. The Court, however, did **not** hold that the crime-tort exception may **only** be satisfied by allegations of tracking technologies within patient portals. The Court stated that "[i]n many cases, courts have denied motions to dismiss when complaints have alleged web tracking tools were used *within* patient portals…**or** when complaint have alleged that the tools collected personal health information, such as individual patients' medical appointments, prescriptions or billing requests." R&R 26 (emphasis added). The use of the disjunctive confirms that allegations regarding tracking technologies "inside" a portal provide one, but not the only way, to plead the exception. Notably, in the Court's string citation that follows, only a few of the cases cited involved allegations of tracking technology deployment within a patient portal; most cases involved publicly accessible pages.[8]

---

[7] *See Vriezen v. Infinite Health Collaborative, P.A.*, 2025 U.S. Dist. LEXIS 211708, at *19 (D. Minn. Sep. 30, 2025) ("plaintiffs plausibly alleged the crime-tort exception based on HIPAA violations"); *Wellstar*, 2025 U.S. Dist. LEXIS 209327, at *22 ("Plaintiffs allege that Defendant captured and transmitted their PII and PHI to third parties without their consent and in violation of Defendant's own privacy policies and HIPAA… Plaintiffs sufficiently allege that Defendant intercepted the communications for a criminal or tortious purpose"); *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) ("defendants intercepted patients' electronic communications for the purposes of making disclosures that violated HIPAA"); *Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *16-22 (E.D. Va. Mar. 25, 2025) (following "[c]ourts around the country [that permit] invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *13-14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose [HIPAA-protected] information" sufficient); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (same).

[8] *See R.S.*, 2025 U.S. Dist. LEXIS 6338, at *4-5, 12-13 (no allegation of tracking technology use within patient portal); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *2-5 (S.D.N.Y. Sept. 16, 2024) (plaintiff alleged, like Plaintiff here, that she used a patient portal, but no allegation that tracking technologies were used "within" the portal); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090, at *3 (N.D. Ill. Sept. 9, 2024) (allegation that tracking technologies disclosed "patient status" but no reference to any patient portal).

Indeed, the prevailing law, confirmed by numerous recent authorities, is that "whether [protected health information] was provided through a public webpage or patient portal is 'immaterial.'" *I.T. v. Choicepoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *23 (W.D. Wash. Aug. 29, 2025).[9] Disclosures of the content of patient communications violate HIPAA when they reveal patient status, even when the interception occurs on a publicly accessible page—such as when "a user is about to log in to a healthcare provider's website." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 793. An avalanche of authority so holds.[10]

The SAC details how LGH used tracking technologies to disclose to Google and Facebook and later exploit individuals' status as LGH patients, including by deploying the technologies on pages used to access the patient portal. ¶¶ 113-18. LGH also placed tracking technologies on other pages that reveal patient status, including the bill payment page (¶¶ 111-12), the searchable doctor database (which Plaintiff used) (¶¶ 106-10), and its "I am a Patient" page designed for patients to obtain information specific to LGH patients (¶¶ 119-21). These allegations, together with Plaintiffs' allegations showing LGH was on

---

[9] Indeed, LGH's own authorities confirm that public webpages reflecting patient status reveal private health information. Mem. at 10, 12 citing *Nienaber v. Oberlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("As other courts within this Circuit have acknowledged, the transmission of information submitted to a private patient portal—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (D. Or. Nov. 14, 2024) (affirming same rule).

[10] *Hartley v. Univ. of Chi. Med. Ctr.*, 2025 U.S. Dist. LEXIS 194466, at *7-15 (N.D. Ill. Oct. 1, 2025) ("act of logging into a healthcare provider's patient portal when combined with individual identifiers such as an IP address or a Facebook ID, can reveal patient status," and "patient status…constitutes individually identifiable health information," even in absence of allegations regarding the use of tracking technologies "within" a patient portal); *Allen v. Midwest Express Care, Inc.,* 2025 U.S. Dist. LEXIS 151237, at *4-8 (N.D. Ill. Aug. 6, 2025) (patient status and information on health conditions and treatments are HIPAA-protected information, and interceptions of such information support crime-tort exception); *Lugo,* 2025 U.S. Dist. LEXIS 55590, at *16-22 (crime-tort exception applied where plaintiffs allege "status as medical patients" revealed); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *23-24 (W.D. Wash. Nov. 14, 2024) (Costco collected HIPAA-protected "information about when [they] click[ed] a 'Refill Prescription' button that prompts a "Sign In" page,' which 'relate[d] to' [their] individualized health conditions even though they d[id] not allege that their data were collected while they were logged into their patient portals"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("navigating to…a healthcare provider's patient portal differs from…general internet browsing…because it conveys a user's patient status"); *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, 16-17 (D. Or. Aug. 28, 2024) (interceptions disclosing "status as a patient" through "financial assistance form" violated HIPAA); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *5-7, 16 (W.D.N.Y. Mar. 19, 2024) (patient status captured, and crime-tort exception applies, where interceptions showed individuals had clicked "the 'Schedule an Appointment' button or click[ed] the physician's phone number to schedule an appointment").

notice and knew full well of the privacy implications of the tracking technologies on pages designed for patients (¶¶ 41-47, 52-56), and that LGH leveraged the intercepted communications to advance its own targeted advertising (*e.g.*, ¶¶ 45-47, 54-55) readily support the inference that LGH's purpose in deploying tracking technologies was to disclose patients' status as LGH patients, a criminal act under HIPAA.

In addition to configuring its website to disclose patient status, LGH configured it to disclose to Google and Facebook other sensitive communications, revealing the identities of Plaintiff's doctors, her specific medical conditions and treatments, and the search terms she entered on the LGH website. ¶¶ 14-15, 95-100, 104-10. Disclosing such information violates HIPAA,[11] particularly given that LGH subsequently exploited the content of the intercepted communications to serve targeted advertisements to patients, including ads about specific treatments and medical conditions.[12] ¶¶ 45-46, 54-55, 97-98, 104-05, 110.

Even if communications about specific doctors, particular conditions, and search terms on publicly accessible pages were not, on their own, HIPAA-protected communications, LGH did not disclose such communications in isolation. Instead, it disclosed that information together with Plaintiff's status as an LGH patient and information confirming her identity. ¶¶ 14-15, 17, 82(c), 84-87, 90-93, 113-18. These allegations, considered together as they must be, palpably demonstrate a HIPAA violation and support the inference that such acts were LGH's purpose in deploying tracking technologies.

---

[11] *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *7-8 ("'find-a-physician'" pages and pages about "providers, conditions, and treatments" may include protected information); *Doe v. Deaconess Ill. Union Cnty. Hosp.. Inc.*, 2025 U.S. Dist. LEXIS 192058, at *27 (S.D. Ill. Sept. 29, 2025) (interceptions of "symptoms, providers, and services" disclosed of HIPAA-protected information); *I.T.*, 2025 U.S. Dist. LEXIS 169202, at *9 (public searches for physicians by particular specialty sufficient to allege information "'about a present medical condition and the provision of medical care covered by HIPAA'") (collecting authorities).

[12] LGH's principal authority on this point (Mem. 11-12), *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), does not hold that communications on a "public website" can never reveal PHI. Instead, *Becerra* focused narrowly on a particular combination of information disclosed, limited to an IP address and a page "addressing specific health conditions or healthcare providers." *Id.* at 789, 792, 794-5, 802-03. *Becerra* did not consider other types of pages—such as pages used to navigate to a patient portal, appointment request pages, and bill payment pages, which reflect an individual's status as a patient of a particular medical provider.

4. LGH Intercepted Communications for the Purpose of Committing Acts that are Tortious under Massachusetts Law.

LGH also intercepted communications for the purpose of committing tortious acts. ¶¶ 3-5, 7-9, 192. Those torts include invasion of privacy (a tort codified by the MRPA), breach of fiduciary duty, and breach of confidence. ¶ 192. Although the precise elements of those torts vary, the improper purpose for each is the same—the intentional disclosure to third parties and subsequent commercial exploitation of intercepted patient communications, contrary to LGH's promises to patients and patients' reasonable expectations of privacy. ¶¶ 211, 206-08, 217-19, 236-39. ***Every*** Massachusetts court that has considered those claims in connection with the same conduct has affirmed them. See § III(B) *infra*. Plaintiff's allegations that LGH's purpose was to engage in actions that were tortious under Massachusetts law, independent of any HIPAA violation, satisfy the ECPA's crime-tort exception.[13]

5. The Court Should Reject LGH's Argument Requiring a Conscious Objective to Violate a Particular Law.

LGH argues that Plaintiff must allege that "LGH's specific intent in deploying tracking tools was to violate its patients' privacy rights," Mem. 5, suggesting Plaintiff must allege not only that LGH intercepted communications for the purpose of engaging in unlawful acts, but that LGH must have had a conscious desire to break the law for the sake of breaking the law. Although the Court articulates several formulations of the crime-tort exception, the R&R should not be read to require that an intercepting party have a conscious objective to break the law. Indeed, where the R&R engaged with Plaintiff's allegations most directly, it held that LGH must have had a "conscious purpose" of "disclosing sensitive medical information" (R&R 13), that "LGH [must have] entertained a conscious purpose of disclosing the identities of its patients, or their treatments" (R&R 31), and that there must be facts that "would support an inference that [LGH] acted for the purpose of making improper disclosures of private health information" (R&R 32). The allegations in the SAC meet those standards because LGH's primary reason

---

[13] *Meta Pixel Healthcare*, 647 F. Supp. 3d at 797 ("tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same).

for deploying the tracking technologies on its website was to disclose sensitive medical information to Facebook and Google to further LGH's targeted advertising campaigns. *See* § III(A)(2) *supra*.

Plaintiff recognizes that the Court, in passing comments, suggests that Plaintiff needs to allege that "LGH acted for the purpose of violating HIPAA." R&R 14. Plaintiff respectfully submits that among the R&R's several phrasings of the crime-tort exception, the standard the Court articulated requiring a "purpose of making improper disclosures of private health information" (R&R 32) should be applied, rather than statements that could be read to require a conscious desire to violate a particular law.

Indeed, Judge Burroughs recently adopted the prevailing standard in a decision addressing the same conduct as here. She endorsed *Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025), holding:

> The text [of § 2511(2)(d)] points to the 'purpose of committing any criminal or tortious act.' Separating the adjectives from the noun might shed a little light. The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies. A desire to commit a crime qua crime, or a tort qua tort, isn't necessary.

*McManus v. Tufts Med. Ctr., Inc.,* 2025 U.S. Dist. LEXIS 191546, at *8-9 n.1 (D. Mass. Sep. 29, 2025) (quoting *Stein*, 2025 U.S. Dist. LEXIS 31273). The court in *Stein* explained further:

> The placement of "criminal or tortious" is telling. That phrase modifies "act," not "purpose." The statute does not require a "criminal or tortious purpose." It requires a purpose of committing an act—an act that is criminal or tortious. A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose.... Congress could have required a showing that the person acted with a criminal or tortious purpose.... But that's not what the text says. The "act" must be criminal or tortious, but the "purpose" does not need to be criminal or tortious.

*Id.* at *14-16. Accordingly, when the word "purpose" is construed in connection with the object the ECPA describes—an "act" that is "criminal or tortious"—the statute cannot be read to require "[a] party...to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort." *Id.* at *14.

Similarly, in *Kurowski v. Rush Sys. for Health*, a healthcare provider argued that the crime-tort exception requires a "party to have knowledge that its intended use of the intercepted information is illegal." 2024 U.S. Dist. LEXIS 126837, at *9-10 (N.D. Ill. July 18, 2024). In considering this argument,

the court described alternative legal meanings of "purpose," which may require either that a defendant have specific knowledge of illegality or, alternatively, merely a purpose to engage in unlawful acts. *Id.* at *10-11. The approach requiring a specific knowledge of illegality is the exception rather than the rule, reserved for "criminal offenses based on highly technical areas of the law," such as tax law. *Id.* The court considered the ECPA's terms to determine which type of "purpose" it requires, holding:

> The Court sees no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception…. [T]he "purpose" requirement [of the ECPA] applies to "any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." That sweeps in both sophisticated offenses and straightforward ones.

*Id.* at *12-13.

The Court observed in the R&R, "there is a hierarchy of *mens rea* requirements, with 'purpose' at the top." R&R 20. *McManus*, *Kurowski, and Stein* align with established principles of *mens rea.* Even for serious crimes, one need not act with a purpose to violate the law (hence the saying, "ignorance of the law is no excuse"). A requirement that a defendant act "purposely" is satisfied when a defendant's "***conscious object [is] to engage in the conduct***" at issue. M.P.C. § 2.02(2)(a) (emphasis added); *Montana v. Egelhoff*, 518 U.S. 37, 78 (1996) (person acts purposely when "it is his conscious object to engage in conduct of that nature"). "Neither knowledge nor recklessness or negligence as to whether conduct constitutes an offense or as to the existence, meaning or application of the law determining the elements of an offense [is required] unless the definition of the offense or the Code so provides." M.P.C. § 2.02(9).[14]

Even if Plaintiff were required to allege LGH's specific intent to violate HIPAA, Plaintiff has done so. LGH's "purpose" in intercepting communications is a question of its state of mind. Rule 8's liberal pleading standard applies to all allegations here, including state of mind. *In re Meta Pixel Tax Filing*

---

[14] LGH cites Judge Stearns in *Goulart v. Cape Cod Healthcare, Inc.*, 2025 U.S. Dist. LEXIS 119435 (D. Mass. June 24, 2025) (which is currently on appeal) to argue that Plaintiff must allege that her 'primary motivation' is to commit a violation of HIPAA. Mem. at 8. With utmost respect, Judge Stearns's status as a judge in this District confers upon that decision no greater persuasive force than the dozens of decisions that have found allegations similar to those here to be adequate. Judge Stearns's application of a heightened intent requirement is incorrect. Judge Burroughs's analysis in *McManus*, which mirrors *Kurowski*'s and *Stein's* articulations of the crime-tort exception, are better-reasoned and aligned with the ECPA's terms.

*Cases*, 724 F. Supp. 3d 987, 1005 (N.D. Cal. 2024) (applying Rule 8 to ECPA). Rule 8's notice pleading "does not demand a plentitude of factual content" and "[f]or pleading purposes, circumstantial evidence often suffices to clarify a protean issue such as an actor's motive or intent," given "[d]irect evidence" on state of mind is "rare." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528, 535-36 (1st Cir. 2023) (reversing dismissal where district court imposed too stringent a pleading standard on state of mind); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) ("paucity of direct evidence" on state of mind not "fatal," given "smoking gun" proof on state of mind "is rarely available" at pleading stage). Even in cases involving fraud (this is not such a case), the rules permit "conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

Here, Plaintiff alleges that the operation of the tracking technologies was well known to LGH, and that Google and Facebook explicitly required LGH to obtain consent and warned it not to deploy tracking technologies on healthcare websites, regardless of consent. ¶¶ 7, 41-45, 51-56. Notwithstanding these express warnings, LGH chose to deploy the tracking technologies on its website, to intercept patient communications and later exploit their contents for its marketing purposes without patient consent, ¶¶ 4, 12, 45-46, 54-55, 98, 102-03, 110, 112, 116-18, 120-21, and in violation of HIPAA, ¶¶ 4, 12, 126-157.[15] These detailed allegations are more than sufficient to support the inference that LGH acted with specific intent to violate the law.

6. <u>The Court Should Again Reject LGH's Argument that Financial Motives Negate Any Criminal or Tortious Purpose.</u>

The Court properly rejected (R&R 37-38) an argument LGH tries to revive—that allegations regarding "commercial" exploitation of patient data "contradict" allegations of criminal or tortious acts. Mem. 6, 8-9. LGH provides no sound reason for the Court to revisit the R&R, which concluded "[a] purpose to make money, while at times a valid distinction" from a criminal or tortious purpose, "doesn't

[15] As a hospital, LGH no doubt was aware of its obligations under HIPAA to maintain the privacy of patient health information. Indeed, it expressly told patients in its HIPAA privacy notice that "uses and disclosures of protected health information for marketing purposes … require authorization." https://web.archive.org/web/20220401155632/https://www.lawrencegeneral.org/about-us/privacy-policy.

hold up to pressure testing" because "[t]he underlying motivation for many crimes and torts is to make money." R&R 37-38 (collecting authorities). The Court in the R&R properly held that the "'broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.'" *Id.* (quoting *Cooper v. Mt. Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024)).

As the Court held in *Kurowski*, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. 2024 U.S. Dist. LEXIS 126837, at *16. This is because "[m]any crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Id.* (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 28 (D. Minn. 2024)). "The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025).[16]

7. Plaintiff Alleges Criminal and Tortious Acts Separate from the ECPA Violation.

LGH argues that the criminal or tortious acts Plaintiff alleges are not independent of the interception itself, noting some courts have held "that the disclosure and interception through [tracking technologies] are a single act." Mem. 9-10. LGH ignores the SAC's new allegations, which explain how

---

[16] *See also Deaconess*, 2025 U.S. Dist. LEXIS 192058, at *32 ("fact that Deaconess only sought to use the information for marketing purposes does not remove the case from the purview of the crime-tort exception."); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *18-19 ("Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose); *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (same); *R.C.,* 733 F. Supp. 3d at 901 ("[E]ven where a defendant is…motivated by monetary gain, the crime-tort exception may… apply"). LGH's citation to Judge Burroughs's decision for the proposition that a motivation of "financial gain" is incompatible with the crime-tort exception fundamentally misstates her decision. Although Judge Burroughs found that such allegations standing **alone** are insufficient, she, similarly to the R&R, specifically rejected the notion that such allegations contradict a purpose of committing a criminal and tortious act, holding that a "'financial motivation…and a criminal or tortious motivation…are not mutually exclusive.'" *McManus*, 2025 U.S. Dist. LEXIS 191546, at *8 n.1 (quoting *Stein*, 2025 U.S. Dist. LEXIS 31273, at *6).

the tortious disclosures were separate and independent of the interceptions (¶ 69[17]) and identify additional separate acts—the subsequent commercial exploitation of intercepted communications, a criminal and tortious act independent from the earlier interception/capture of the communications. ¶¶ 3-5, 135, 148, 190, 192, 196. These new allegations differ from the allegations in the dismissed complaint.

This Court held "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." R&R 23. The separate and independent requirement is met where the defendant "not only intercepted their communications … by using data tracking tools, but also transmitted the information to third parties such as Meta and Google." *Wellstar*, 2025 U.S. Dist. LEXIS 209327, at *20-21 (citing cases). Here, Plaintiff asserts "the violation stems from [LGH's] intentional disclosure of the collected Private Information, which constitutes a 'further impropriety' independent and separate from [LGH's] interception." *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16. Such disclosures separately violate HIPAA[18] and are torts[19] distinct from the interception. The allegations that LGH

[17] Paragraph 69 explains how the code first acquires the content of the communications made through a particular webpage, and then, subsequently, connects to the tracking technology vendor's servers to disclose the content of the intercepted communications to the tracking technology vendor. These new allegations, which the Court must accept as true, negate the Court's contrary factual conclusion in the R&R that "there is only one act: deploying a web tracking tool that simultaneously provides analytic information to the website operator and shares data with Google or Meta." R&R 24.

[18] *See also I.T.*, 2025 U.S. Dist. LEXIS 169202, at *22-23 ("Multiple courts have rejected this argument, concluding that an intent to disclose or use private information in violation of HIPAA is distinct from the interception of the private information."); *Deaconess Ill.*, 2025 U.S. Dist. LEXIS 192058, at *31 ("The disclosure, not the intercept itself, is the secondary act that supports the crime-tort exception."); *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *25 ("[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA"); *Juenger*, 2025 U.S. Dist. LEXIS 193628, at *25-26 ("disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA…. The disclosure, not the interception itself, is the secondary act that supports the crime-tort exception"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849-50 (E. D. Cal. June 9, 2025) ("'intentional disclosure' of private information constituted a 'further impropriety' independent and separate from [the] interception" of private information"); *Stein*, 2025 U.S. Dist. LEXIS 31273, at *10-11 ("disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA.").

[19] *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8-9 (common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties"); *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750, at *13-14 (N.D. Cal. Aug. 4, 2025) (disclosure of personally identifiable information "in contradiction [to] the commitments it made in its privacy policy…plausibly constitute[s] a further invasion of privacy beyond the act of intercepting").

disclosed Plaintiffs' private healthcare information to Google and Facebook after the interception satisfy the separate-and-independent requirement.[20]

In addition to separate tortious and criminal disclosures, Plaintiff also alleges (and adds substantial, new fact allegations) about LGH's intended ***subsequent criminal and tortious use*** of intercepted communications for marketing purposes, including targeted advertising, long after the interception. ¶¶ 5, 35, 55, 71, 98, 135, 144, 148, 172, 196, 206, 208, 219, 237. Such allegations of subsequent commercial exploitation of intercepted communications are separate and independent acts that support the crime-tort exception,[21] which the Court did not previously address in the R&R.[22]

LGH blurs the distinction between a "disclosure" that violates HIPAA and a "use" that violates HIPAA. HIPAA criminalizes not only the disclosure of protected information but also its "use" without consent "for marketing." 45 C.F.R. § 164.508(a)(3)(i). Indeed, HIPAA imposes additional penalties when a covered entity discloses the information with the intent to use it 'for commercial advantage.'" *Wellstar*,

---

[20] The Court previously highlighted the allegation that Plaintiff's communications were "contemporaneously intercepted, recorded, and transmitted to these third parties." R&R 25. However, the separate act tort or crime need not be distant in time from the interception itself. *See Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8 (disclosure is separate from interception even if it occurs at the same time, reasoning that if accepted, "tortfeasors under the ECPA would enjoy a bizarre defense to liability as a reward for their efficiency").

[21] *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *17 (crime-tort exception met where "Plaintiffs allege that Costco not only intercepted their data, but also used their data to generate targeted advertisements for financial gain"); *Lugo*, 2025 U.S. Dist. LEXIS 55590, at *24 ("Plaintiff's allegations that INOVA intercepted and disclosed patient's personal health information in violation of HIPAA [] in order to increase the success of INOVA's marketing are sufficient to invoke the crime-tort exception to the ECPA"); *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *6-9 (N.D. Ill. Dec. 11, 2023) (crime-tort exception satisfied after plaintiff amended to add allegations that intercepted "information was, in turn, used…to target her with particular advertising" based on intercepted communications); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *8-10 ("Complaint sufficiently alleges an independent action secondary to the interception," the "use[]" of "the content of [the] communications" for "targeted ads on Facebook keyed to…confidential health conditions") (collecting and analyzing authorities); *Mekhail*, 726 F. Supp. 3d at 928-29 (subsequent acts to "monetize" intercepted communications sufficient to support crime-tort exception); *Cooper*, 742 F. Supp. 3d at 383 (crime-tort exception met where hospital intercepted communications to later "profit commercially from exploiting Private Information, in violation of HIPAA"); *Smith v. Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *18 (N.D. Ill. July 9, 2024) (communications used for "targeted marketing campaigns").

[22] The Court in the R&R did not discuss or resolve whether subsequent commercial exploitation of intercepted communications, such as through targeted advertising based on the content of intercepted communications, is an act separate from the interception. Instead, the Court (R&R 22-25) considered ***only*** the act of disclosure. The Court must now resolve, in the first instance, whether commercial exploitation of intercepted communications is an act separate and independent from the interception itself. The Court should hold that such commercial exploitation is separate and independent from the interception.

2025 U.S. Dist. LEXIS 209327, at *21-22. Similarly, a fiduciary's commercial exploitation of information entrusted to it breaches its duty owed to the principal. See §III(B)(2), *infra*. Thus, even if the Court adopts the minority position that a disclosure is not separate from the interception, Plaintiff still pleads a separate act: LGH's subsequent commercial exploitation of the intercepted communications.

Finally, the existence of a separate act is particularly apparent for Plaintiff's state-law claims, which do not hinge solely on the act of disclosure itself but also on LGH's deception (both through affirmative misrepresentation and omission) about which communications it would disclose. The SAC adequately alleges the requisite facts for those torts. *See* § III-B-1, 2, 3, *infra*. LGH's disclosures of patient communications in contradiction to its representations and promises to Plaintiff are not merely a reiteration of its ECPA claim but involve different intentional acts that contribute to LGH's liability.[23]

8. <u>Conclusion on the Crime-Tort Exception</u>

The SAC's allegations go far beyond those other courts have found sufficient on the crime-tort exception. Given the new, detailed allegations showing how LGH intercepted communications for the purpose of committing criminal and tortious acts, the Court should follow the pronounced recent trend of courts affirming ECPA claims, reflected in the authorities cited above.[24]

B. *Plaintiff Adequately Alleges Her State Law Claims.*

The Court did not address in the R&R the substance of Plaintiff's state law claims because it recommended that the Court decline to exercise supplemental jurisdiction over them. R&R 39-41. In *Vita v. New England Baptist Hosp*., a case involving the same conduct as alleged here, the SJC observed

---

[23] *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8-9 (common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties"); *Smith v. Rack Room Shoes, Inc*., 2025 U.S. Dist. LEXIS 149750, at *13-14 (N.D. Cal. Aug. 4, 2025) (disclosure of personally identifiable information "in contradiction [to] the commitments it made in its privacy policy…plausibly constitute[s] a further invasion of privacy beyond the act of intercepting").

[24] *See also Williams v. TMC Health*, No. CV-23-00434 (D. Ariz. Aug. 19, 2025) (filed at Doc. No. 46-1) at 6-7 (sustaining ECPA claims after previously granting motion to dismiss ECPA claims without prejudice, after the plaintiff amended to add allegations on crime-tort exception like those here); *Jarrett v. Upperline Health, Inc.*, No. 1:23-cv-01261 (S.D. Ind. Aug. 8, 2025) (filed at Doc. No. 46-2) at 26 (sustaining ECPA claims based on HIPAA violation after having previously found inadequate allegations relating to HIPAA, and the plaintiff amended to add allegations like those here).

that the Legislature provided various "statutory and common-law causes of action to address allegedly false, misleading, or deceptive activity on the Internet, including statutory and common-law protections more directly applicable to misrepresentations or misuse of private medical information." 494 Mass. 824, 849-50 (2024) (citing claims for negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, and right to privacy under the MRPA). In arguing for the dismissal of the state law claims, LGH ignores the Massachusetts case law and Plaintiff's well-pled allegations in the SAC. Massachusetts courts considering these state-law claims in the context of tracking technologies are unanimous in affirming them. LGH offers no reason for this Court to depart from such established authority.

1. None of Plaintiff's State Law Claims Require Proof of a HIPAA Violation.

LGH argues that "[e]ach of Plaintiff's [state-law] claims is based on [the] false premise [that] 'protected health information' [was] disclosed to third parties." Mem. 11. LGH then points to the *Becerra* decision to argue that no protected health information, as defined by HIPAA, was disclosed. That is not correct, *see* §III(A)(2), *supra*, and *Becerra* does not hold otherwise. *See* n.12, *supra*. But it is also irrelevant to Plaintiff's state law claims, which do not depend on the disclosure of HIPAA-protected information. ¶ 1 (claims concern interception of communications "including but not limited to" HIPAA-protected information); ¶¶ 137-41, 206-07, 214, 216-17, 219, 222-25, 227-28, 236, 238-39, 243, 251-52, 256. As Judge Davis explained in rejecting a similar argument on Massachusetts law claims, "HIPAA is a bit of a red herring in this proceeding and in these arguments…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake." *Partners Healthcare*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (filed at Doc. 27-2).

2. Plaintiff States a Claim under the MRPA

The MRPA, M.G.L. c. 214 § 1B, codifies and broadens what, in most jurisdictions, is a common law tort of invasion of privacy. *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991) (legislature "framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis"). This statutory tort includes claims for intrusion upon seclusion and disclosure

of private facts,[25] torts well-known at common law that the Massachusetts Supreme Judicial Court ("SJC") has held are included within the MRPA's "broad" terms. *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

LGH's motion avoids the elephant in the room—or perhaps five elephants: the five judges who each independently affirmed MRPA claims for the same conduct Plaintiff alleges. Four Massachusetts Superior Court justices and one federal judge have concluded that the surreptitious use of tracking technologies states an MRPA claim.[26] ***There is no contrary authority***.

The SJC has confirmed that allegations of "electronic surveillance" state an MRPA claim. *Polay*, 468 Mass. at 382-84 (2014). Ignoring on-point Massachusetts authority, LGH relies upon out-of-state cases construing the common law tort for intrusion upon seclusion to argue that interactions on a "public website" are beyond the MRPA's scope because patients have no expectation of privacy on interactions on a public website. Mem. 13. Per the SJC's *Polay* decision, the MRPA is broader and applies where "an individual's conduct is observable by the public" if the "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." 468 Mass. at 384. Every court to apply *Polay* to the same conduct as here has found that *Polay* supports a claim. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17.

LGH also disregards a critical fact—its promises that it would not share, without "signed authorization" any "medical information" about patients, ¶¶ 30-31, even though this is precisely what it did by deploying tracking technologies throughout its website. Even under the more stringent common law requirements privacy in other jurisdictions, such false promises support invasion of privacy claims

---

[25] LGH out-of-state decisions dismissing state law claims for invasion of privacy are outliers. Courts construing other states' law (with more stringent standards than under the MRPA) affirm such claims for the same conduct as alleged here. *Brahm,* 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming privacy claim based on secret use of tracking technologies); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *5 (Cir. Ct. Aug. 5, 2020) (same); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *17-18 (Super. Ct. Oct. 3, 2024); *R.C.*, 733 F. Supp. 3d at 888-95.

[26] *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151-52 (D. Mass. 2024); *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 44 (Doc. 18-2); *see also Vita*, 494 Mass. at 849-50 (MRPA claim "cognizable").

and provide ample basis for a reasonable expectation of privacy. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion upon seclusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion upon seclusion claim where Google's practices contradicted its own disclosures).[27] *Alves* affirmed such a claim against an ordinary retailer (BJ's Wholesale Club), underscoring that the MRPA applies to secret interceptions of communications contrary to a company's promises. 2023 Mass. Super. LEXIS 59, at *13-17.

Second, LGH argues that Plaintiff does not allege "LGH *used* her information for an improper purpose." Mem. 14. Not true. The SAC alleges in detail the specific pages Plaintiff visited and explains how LGH intercepted her communications and used the intercepted communications in breach of LGH's own promises to Plaintiff, in violation of Google and Facebook's directions to LGH, and in contradiction to Plaintiff's reasonable expectations of privacy. ¶¶ 25-35, 57, 56. The SAC also includes new allegations explaining how LGH intercepted, disclosed to Google and Facebook, and exploited for targeted advertising Plaintiff's status as an LGH patient, including through interceptions made on the patient portal, ¶¶ 14-15, 17, 23, 113-18, together with the identity of Plaintiff's doctors and her medical conditions, ¶¶ 98-100, 104-06, 109-10.[28] Such allegations amply support Plaintiff's MPRA claim.

---

[27] *Wiley v. Universal Music Grp., Inc.*, 2025 U.S. Dist. LEXIS 261303, at *8-15 (N.D. Cal. Dec. 17, 2025) (affirming privacy claim where defendant made "promise[s] that users would not be tracked"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" support invasion of privacy); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of its own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim appropriate where company's "privacy disclosures at the time allegedly failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (similar).

[28] Plaintiff does not publicize in the SAC the actual names of her doctors or medical conditions (information of course known to LGH), but such information is not needed to assert a claim. *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1004 ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting argument that complaint "reveals little about the information that Plaintiff entered on its website") (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674).

3. Plaintiff States a Claim for Breach of Fiduciary Duty

LGH argues that Plaintiff's communications with LGH do not relate sufficiently to LGH's fiduciary relationship with its patients. LGH cites no factually pertinent authority to support this argument. Mem. 11-13.[29]

All relevant Massachusetts authorities reject LGH's position. As the court held in *Tenet Healthcare*, a "fiduciary relationship exists between healthcare providers and patients," and therefore, a patient "states a viable claim of breach of fiduciary duty against her healthcare provider for disclosing her Private Information." 731 F. Supp. 3d at 151. Similarly, in *Emerson*, the court rejected the argument that patient communications on a hospital's website are insufficiently related to the doctor-patient relationship. 2023 Mass. Super. LEXIS 673, at *5-7. Every other court to have considered a fiduciary duty claim under Massachusetts law, based on the same conduct, has sustained such a claim.[30]

Furthermore, despite Plaintiff's allegations in the SAC that her fiduciary duty claim arises not only from the disclosure of patient communications but also LGH's subsequent commercial exploitation of those communications (¶ 219; *see also* ¶¶ 15, 98, 100, 102-03, 106, 109-10, 112-21), LGH disregards those allegations. Those allegations are significant: a fiduciary's commercial exploitation of information entrusted to it additionally breaches the fiduciary duty it owes to its principal, apart from any disclosure.[31]

---

[29] LGH's primary authority on this issue—*Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003) is distant from the facts here; the conduct giving rise to purported liability—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given the detailed allegations regarding Plaintiff's communications with LGH that reveal her status as an LGH patient, and the interception and disclosure of the identity of her doctors and medical conditions. ¶¶ 14-15, 88-100, 104-06, 109-10, 113-18.

[30] *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (sustaining breach of fiduciary duty claim under Massachusetts law); *see also Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" where "hospital website allegedly tracked and shared with third parties plaintiff's website browsing activities"). For cases affirming such claims under other states' law, *see Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Cooper*, 742 F. Supp. 3d. at 385-86 (same).

[31] Restat. 3d of Agency, § 8.05 (fiduciary owes duty "not to use…confidential information of the principal for the [fiduciary's] own purposes"); *United States v. O'Hagan*, 521 U.S. 642, 652 (1997) ("[A] fiduciary's undisclosed, self-serving use of a principal's information" for the fiduciary's financial interests is a "breach of a duty of loyalty and confidentiality"); *SEC v. Willis*, 787 F. Supp. 58, 61-62 (S.D.N.Y. 1992) (when "patient…entrusts [a fiduciary] with information," fiduciary "becomes duty-bound not to appropriate the [information] for his own use").

Finally, LGH's argument that it could not have been aware that patients visited its website (Mem. 15) is farcical, given that many pages on its website were designed for patients (¶¶ 7, 23, 111-21), and Plaintiff logged into LGH's patient portal, confirming her status as an LGH patient (¶¶ 14-15, 113-18).

4. <u>Plaintiff States a Claim for Breach of Confidence</u>

LGH's only argument on Plaintiff's claim for breach of confidence is that it is "duplicative" of Plaintiff's fiduciary duty claim. Mem. 15-16. In *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985), the SJC did not merely apply a claim for breach of fiduciary duty but created a new cause of action, *id.*[32]

5. <u>Plaintiff States a Claim for Negligence</u>

Plaintiffs also state a negligence claim. Massachusetts courts have affirmed negligence claims on the same conduct that Plaintiff alleges here.[33] LGH's arguments (Mem. 16-18) also lack merit:

***Duty.*** LGH's argument that Plaintiff communicated with LGH "as a member of the general public, not as a patient" is contradicted by the SAC's allegations, including, in particular, Plaintiff's communications through the LGH patient portal. ¶¶ 14-15, 113-18.

***Breach.*** Even though Plaintiff **<u>does</u>** allege a HIPAA violation (§ III-A-1-c, *supra*), her negligence claim is not limited to "Private Information" protected by HIPAA. ¶¶ 221-25, 227-28.

***Harm.*** LGH's argument on "harm" (Mem. 15, 17-18, 19) ignores the substantial allegations Plaintiff added to her SAC on damages. ¶¶ 164-72. Courts considering lesser allegations affirm their sufficiency. *Emerson*, 2023 Mass. Super. LEXIS 673, *5.[34] LGH's argument that the SAC does not describe

[32] *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (affirming breach of confidence claim under Massachusetts law in addition to breach of fiduciary duty claim); *Cooper*, 742 F. Supp. 3d at 385-86 (rejecting argument that breach of confidence claim is necessarily duplicative of breach of fiduciary duty claims).

[33] *Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies); *Tenet Healthcare*, 731 F. Supp. 3d at 149 (affirming negligence claim for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same).

[34] *In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 655-56 (N.D. Cal. 2024) (allegation that "Meta unjustly profited from the data taken" is sufficient); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-21 (allegations of "diminution in value," and "loss of the benefit of [the] bargain" are sufficient even if not quantified); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *22-24 (affirming damages allegations similar to those here); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (affirming damages allegations for secret use of tracking technologies based on property rights in personal data and corresponding value).

the "specific information Plaintiff disclosed" or that "such information was disclosed to a third party" ignores the SAC's detailed allegations. ¶¶ 14-15, 95-100, 104-10, 113-18.

6. Plaintiff States a Claim for Breach of Contract.

LGH's argument on breach of contract (Mem. 18-19) disregards Plaintiffs' well-pled allegations about LGH's promises to patients (¶¶ 29-35, 243-47) and ignores the only Massachusetts authorities to have considered such claims based on the same conduct have affirmed them. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *see also Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies).[35]

7. Plaintiff States a Claim for Unjust Enrichment

LGH's only argument on unjust enrichment—that Plaintiff has an adequate remedy at law (Mem. 19-20)—ignores that Plaintiff makes precisely such allegations. ¶¶ 253-54. All Massachusetts courts that have considered this claim under the same substantive facts have affirmed it, including rejecting the precise argument LGH makes. *Tenet Healthcare*, 731 F. Supp. 3d at 150-51 (affirming unjust enrichment claim, reasoning a plaintiff "may plead" unjust enrichment and legal remedies "in the alternative"); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9-14 (affirming unjust enrichment claim under Massachusetts law); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (same); *see also Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on hidden tracking technologies).[36]

## IV. CONCLUSION

For the reasons set forth herein, the Court should deny LGH's motion to dismiss.

---

[35] Other jurisdictions are in accord, particularly where a published privacy policy includes false promises of non-disclosure. *Lamarr*, 2024 Ind. Super. LEXIS 107, at *19-21 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Doe v. Bon Secours Mercy Health*, 2021 Ohio Misc. LEXIS 3985, at *13-14 (Ct. Com. Pl. Nov. 22, 2021); *Elkins v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

[36] *See also Zelby Holdings, Inc. v. VideogeniX, Inc.*, 92 Mass. App. Ct. 86, 92-93 (App. Ct. 2017) ("Zelby properly pleaded alternative bases for relief, and dismissal of its unjust enrichment claim would be inappropriate as it presupposes the existence of a valid underlying contract."). Other states are in accord. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *21-23; *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *21-22; *Lamarr*, 2024 Ind. Super. LEXIS 107, at *21-22 (same); *Elkins*, 2024 Ind. Super. LEXIS 340, at *10.

Dated: January 9, 2026

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: January 9, 2026

*/s/ Patrick J. Vallely*
Patrick J. Vallely