**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>LAWRENCE GENERAL HOSPITAL,<br><br>Defendant. | **Case No. 1:25-cv-10081-NMG**<br><br>**Leave to file granted on December 30, 2025 (ECF No. 68)** |

**PLAINTIFF'S RESPONSE TO AMICUS BRIEF OF CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA**

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**Table of Contents**

I. Introduction ........................................................................................................ 1

II. Argument ........................................................................................................ 1

A. Plaintiff's Claim Aligns with Established Law; It Is Not "Novel." ........................................ 1

B. The Chamber Dramatically Overstates the Effects of Applying Established Precedent. ........................................................................................................ 3

C. Nothing in this Lawsuit Criminalizes the Use of Tracking Technologies ........................ 5

D. Plaintiff Does Not Propose a Private Right of Action for HIPAA ................................ 6

E. The Rule of Lenity Does Not Apply. ........................................................................ 7

III. Conclusion ........................................................................................................ 7

# Table of Authorities

Pages

**Cases**

*Adams v. Holder*,
692 F.3d 91 (2d Cir. 2012) .......... 7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 2

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 2

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 2, 5

*James v. Walt Disney Co.*,
2023 U.S. Dist. LEXIS 200997 (N.D. Cal. Nov. 8, 2023) .......... 7

*Joffe v. Google. Inc.*,
746 F.3d 920 (9th Cir. 2013) .......... 2, 7

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......... 2

*Muscarello v. United States*,
524 U.S. 125 (1998) .......... 7

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 4

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .......... 2

*Yershov v. Gannett Satellite Info. Network Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... 4

**Statutes**

18 U.S.C. § 2510 .......... 6

18 U.S.C. § 2511 .......... 6

## I. INTRODUCTION

Twenty-three years ago, the First Circuit resolved a landmark federal wiretap case involving the undisclosed use of tracking technologies on medical websites, involving facts strikingly similar to those alleged here. In *In re Pharmatrak, Inc. Privacy Litig.*, the First Circuit affirmed the consumers' claim, holding that the surreptitious use of tracking technologies to intercept website communications violates the Electronic Communications Privacy Act ("ECPA"). 329 F.3d 9, 18-23 (1st Cir. 2003). The principal focus of the amicus brief of the Chamber of Commerce of the United States (ECF Doc. No. 64, "Chamber Br.") is the supposed novelty of Plaintiff's claim. The Chamber also warns that if the Court permits this case to proceed, a parade of horribles may befall the Internet and the business interests the Chamber represents. The Chamber's arguments depend on distortions of Plaintiff's theory of liability and disregard for established legal authority,[1] but in any event, the Chamber's warnings are dramatically overstated, given the simple solution available to Lawrence General Hospital ("LGH") that provides a defense to the ECPA and other claims asserted in the Second Amended Complaint ("SAC"): disclose its use of the tracking technologies, and, in no event, lie to patients about them, as LGH did. SAC ¶¶ 28-35. LGH faces liability because it failed to do so.

## II. ARGUMENT

### A. *Plaintiff's Claim Aligns with Established Law; It Is Not "Novel."*

The Chamber warns the Court not to adopt "Plaintiff's novel, expansive theory of civil liability under the act." Chamber Br. 20. Plaintiff's theory of liability, focused on the surreptitious use of tracking technologies to intercept sensitive communications, is not novel.

The First Circuit, more than 20 years ago, affirmed ECPA claims based on substantively the same conduct and technology as in this case. *Pharmatrak* 329 F.3d at 18-23. The facts in *Pharmatrak* were: a

[1] Plaintiff herein responds only to the arguments the Chamber makes in its Amicus Brief which differ from those made by LGH in its principal brief, including its argument the crime-tort exception does not apply, Chamber Br. 5-8, which Plaintiff fully addressed in her opposition to LGH's motion to dismiss ("Opp.") (Doc. No. 69) at 5-19.

third-party vendor (Pharmatrak, rather than Facebook or Google) provided code for businesses to insert into their websites, which captured and transmitted to Pharmatrak information about the content of the communication, which Pharmatrak then used to provide analytics to the website owner. *Id.* at 12-16.

Google Analytics and Meta Pixel, secretly embedded in the LGH website, work much the same way, causing a user's web browser to secretly capture and then disclose to Google and Facebook the substance of communications between LGH and its patients. The only difference is how LGH, Google, and Facebook use the intercepted communications. Google Analytics and Meta Pixel are designed primarily to facilitate the website owner's advertising on Google's and Facebook's platforms, allowing businesses like LGH to target advertising to specific individuals based on the content of communications LGH has intercepted and disclosed to Google and Facebook. SAC ¶¶ 45-46, 52-55, 57, 71, 91, 98, 102, 103, 110, 112, 116-17, 120-21.[2] LGH's direct commercial exploitation of patient-specific communications for marketing purposes renders LGH's conduct here much more problematic than the mere "analytics" use of intercepted communications in *Pharmatrak*.[3]

Since the landmark *Pharmatrak* decision, and long before LGH engaged in the conduct challenged in the SAC, courts have repeatedly applied the ECPA to limit encroachments on privacy by emerging technologies.[4] These decisions put businesses on notice of the consequences of surreptitious surveillance

---

[2] LGH's commercial exploitation of the intercepted communications for marketing purposes long after the interceptions differentiates this case from the cases cited by the Chamber. Chamber Br. 5-9. Plaintiff fully responded to this argument in her opposition to LGH's motion to dismiss. Opp. 16-19.

[3] *See also* Lokker, *Website Privacy and Compliance Challenges*, available at https://lokker.com/wp-content/uploads/2024/04/LOKKER_Online-Data-Privacy-Report_032024-2.pdf (detailing how tracking pixels fuel data broker ecosystem).

[4] *See, e.g, Joffe v. Google. Inc.*, 746 F.3d 920, 923-24, 936 (9th Cir. 2013) (ECPA applied to Google's interception of information about Wi-Fi networks through its StreetView cars); *Luis v. Zang*, 833 F.3d 619, 623-34 (6th Cir. 2016) (affirming ECPA liability for "WebWatcher" tracking technology software that surreptitiously tracked internet communications); *United States v. Szymuszkiewicz*, 622 F.3d 701, 703-07 (7th Cir. 2010) (affirming ECPA conviction for surreptitious interception of email); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071-73 (N.D. Cal. 2021) (denying motion to dismiss ECPA claim relating to collection of website communications while in private browsing mode); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1075-90 (N.D. Cal. 2015) (denying motion to dismiss ECPA claim for software used to monitor activity on cell phones); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596-98 (9th Cir. 2020) (affirming ECPA claim relating to Facebook collection of website browsing information through "Like" buttons).

enabled by new technologies, particularly when intercepted communications are exploited commercially without consent. Indeed, no court has rejected claims like those Plaintiff asserts here—involving the surreptitious use of website tracking technologies—on the basis that businesses could not have anticipated that a law called the "Electronic Communications Privacy Act" would protect the privacy of electronic communications against technological encroachments like the technologies at issue here. The ECPA plainly was designed to, and by its plain terms does, protect such communications.

B. *The Chamber Dramatically Overstates the Effects of Applying Established Precedent.*

The Chamber describes a parade of horribles that will occur if this case proceeds to discovery. The Chamber claims denial of a motion to dismiss in this case will "increas[e] the already significant costs of providing healthcare," including "regulatory compliance" costs. Chamber Br. 10. The Chamber does not explain what those costs are or why they would go up ***now***, given that decisions like *Pharmatrak* and the other cases cited above have been on the books for decades.

Notably, Plaintiff does not challenge the use of tracking technologies ***when adequately disclosed***. Such disclosures were not only required by the ECPA but also by Google and Facebook, which expressly warned LGH to obtain user consent for all tracking technologies. ¶¶ 41-43, 47, 53, 56. Of course, businesses face administrative costs in preparing reasonable disclosures, but this is a cost businesses already incur; website privacy policies are ubiquitous on the Internet, particularly in regulated industries. LGH may incur costs to ensure its privacy policies are truthful, but this is a cost worth imposing, given the benefit patients receive when accurate privacy policies enable them to make informed choices about when and how their patient communications are shared or used for advertising. Indeed, LGH ***already*** modified its privacy disclosures shortly after this lawsuit was filed, adding a pop-up disclosure regarding "tracking pixels and related technologies to help track and analyze visitor activity on the website," and linking to a brand-new Website Privacy Policy that explicitly describes Google

Analytics.[5] LGH presumably incurred some cost in revising its disclosures to make them truthful, but again, this is a good thing, not an ominous "cost" to be feared.

The Chamber warns that "Plaintiff's theory…threatens many other businesses outside the healthcare industry." Chamber Br. 15. This isn't so for a simple reason: the vast majority of businesses that use tracking technologies disclose them and thus do not violate ECPA. The Third Circuit, responding to similar arguments under Pennsylvania's wiretap act, aptly explained:

> So does this mean websites can never use cookies or third-party marketing companies to analyze customer data? Though the Defendants try to convince us about the certainty of any number of "parade of horribles," the [Pennsylvania wiretap act] is not so unreasonable. It…includes many exceptions from liability. One is the all-party consent exception, under which [there is no liability] ... when the person being recorded knew…that the conversation was being recorded ... [due to a] privacy policy [that] sufficiently alert[s] [website users] that [website] communications [are] being sent to a third-party company.

*Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022).

This isn't the first time the Chamber has claimed the sky will fall if privacy claims are allowed to proceed. The Chamber weighed in to challenge the First Circuit's panel decision in *Yershov v. Gannett Satellite Info. Network Inc.*, 820 F.3d 482 (1st Cir. 2016). That decision affirmed a similar claim involving tracking technologies, but under the Video Privacy Protection Act, 18 U.S.C. § 2710. *Id.* In supporting a petition for rehearing *en banc*, the Chamber warned that "[t]he distribution of free and low-cost video content [was] threatened by the panel's decision," which it claimed would "expos[e] companies to broad class action liability for routine digital transactions."[6] The Chamber claimed that if the panel's decision was affirmed, "analytics provider[s]" "may encourage companies to constrain the free video content they make available to users." *Id.* at 4. The First Circuit denied the petition for rehearing.[7] Seven years later, the Chamber's doomsday predictions have not come true. Video content on the Internet remains ubiquitous, as do tracking technologies. The only effect of *Yershov* was to incentivize better disclosure.

---

[5] *See* Lawrence General Hospital, https://www.lawrencegeneral.org/ (current website home page with popup, which links to new Website Privacy Policy rolled out after this lawsuit was filed) (last visited January 13, 2026).

[6] *See Yershov v. Gannett Satellite Info. Network. Inc.*, No. 15-1719, Brief of the Chamber of Commerce of the United States (with Other) at 1; 3, Document 00117000846 (May 17, 2016).

[7] Order of Court, *Yershow v. Gannett Satellite Info. Network, Inc.*, No. 15-1719, Doc. 00117010982 (June 7, 2016).

The Chamber similarly weighed in regarding the Ninth Circuit's decision in *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589, which affirmed an ECPA claim relating to website tracking accomplished through Facebook "Like" buttons incorporated onto various websites. The Chamber supported a cert petition to the Supreme Court, warning that "[i]f left in place, the Ninth Circuit's decision would present a serious threat to the functioning of the internet" by making it a "federal felony…for companies to participate in everyday computer-to-computer communications that underlie much of the modern web."[8] The Supreme Court disagreed and denied the petition.[9] Five years later, despite the Chamber's overdramatic warnings, the Internet remains "functioning."

In short, the Court should disregard the Chamber that cried "wolf."

C. *Nothing in this Lawsuit Criminalizes the Use of Tracking Technologies.*

The Chamber repeatedly characterizes Plaintiff as seeking to outlaw the "use" of tracking technologies. Chamber Br. 13, 16, 18. Plaintiff seeks no such thing. Nothing in this lawsuit would prevent healthcare providers from using technologies to improve patient website experiences. Chamber Br. 14-15. Plaintiff contends only that such technologies should be disclosed, as Google and Facebook required, and that healthcare providers certainly should not deceive patients, as LGH did here. SAC ¶¶ 30-31, 41-43, 47, 53, 56.

Perhaps foreseeing this response, the Chamber insists "consent" is "no solution" (Chamber Br. 16) because a plaintiff might challenge the adequacy of disclosures, and courts may sometimes agree. The mere possibility that plaintiffs may bring claims alleging false statements, or that courts might find them persuasive, provides no reason to negate a right of action expressly conferred by Congress. The vast majority of healthcare providers have not been sued because most have sound disclosures. Extraordinarily few non-healthcare businesses have been sued since *Pharmatrak*, because they, too, almost always disclose their use of tracking technologies. Disclosure and consent provide real solutions.

---

[8] Brief of Chamber of Commerce (and Others) as Amici Curiae in Support of Petitioner, *Facebook, Inc. v. Davis*, No. 20-727 (U.S.) at 9, (Dec. 2020).

[9] *See* Docket for *Facebook, Inc. v. Davis*, No. 20-727 (U.S.) (Mar. 22, 2021) ("Petition DENIED.").

D. *Plaintiff Does Not Propose a Private Right of Action for HIPAA*

The Chamber contends Plaintiff seeks to create a private right of action for HIPAA violations, Chamber Br. 11-13, but this is not so. Although Plaintiff relies on HIPAA to identify criminal acts (the disclosure and marketing use of protected patient communications) to support the crime-tort exception,[10] it does not follow that Plaintiff's theory converts all HIPAA violations into ECPA violations. The ECPA has its own elements separate from HIPAA's, including the existence of an interception, the use of an intercepting device, the requirement that "contents" be intercepted, and several other elements and defenses, *see* 18 U.S.C. §§ 2510, 2511(1), (2(d)-(e))). Similarly, many actions that may violate HIPAA do not violate ECPA, such as disclosures of patient information that involve no interception of any wire or electronic communications. Plaintiff's theory of liability in no way merges HIPAA and ECPA together.

The Chamber's observation that Congress chose not to provide a private right of action for HIPAA is uninformative, given that ECPA's crime-tort exception applies if the purpose is to commit ***any*** "criminal" act—and, of course, most criminal statutes do not have private rights of action. Nothing in the language of the ECPA excludes HIPAA from crimes that may support an ECPA claim, or limits the crime-tort exception to criminal acts that also have a private right of action.

The Chamber's argument that Plaintiff's claim might impose "costs" on businesses by penalizing them for intercepting communications for the purposes of violating HIPAA is deeply cynical. Businesses ***should*** comply with HIPAA regardless of whether a private action can be used to enforce its terms.[11] To

---

[10] HIPAA prohibits healthcare providers from "knowingly 'disclos[ing] individually identifiable health information" and imposes "penalties when a covered entity discloses the information with the intent to use it 'for commercial advantage….'" *Doe v. Wellstar Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 209327, at *21-22 (N.D. Ga. Aug. 21, 2025); 42 U.S.C. §1320d-6(b)(3). It prohibits "any use…of protected health information for marketing." 45 C.F.R. § 164.508(a)(3)(i). The crime-tort exception is met when a hospital uses tracking technologies to intercept patient communications for the purpose of disclosing or using information in violation of HIPAA. Opp. 8-11.

[11] Indeed, LGH told its patients that it was HIPAA compliant, and that "uses and disclosures of protected health information for marketing purposes … require authorization," which LGH did not obtain. https://web.archive.org/web/20220401155632/https://www.lawrencegeneral.org/about-us/privacy-policy.

the extent that claims like those asserted in this case encourage businesses to protect the privacy of patient communications as required by HIPAA, this is a good thing.

E. *The Rule of Lenity Does Not Apply.*

The Chamber relies on the rule of lenity (Chamber Br. 18-20) to tip the scales in favor of businesses. The rule, however, applies only if "there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (citation omitted). The rule of lenity is "a rule of last resort, [applied] only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning[.]" *Adams v. Holder*, 692 F.3d 91, 107 (2d Cir. 2012) (citation omitted).

The Chamber identifies no ambiguity requiring resort to the rule of lenity. The Chamber refers amorphously to a purported ambiguity in the "crime-tort exception" but does not identify what makes the statutory language ambiguous. Chambers Br. 18-19.[12] Notably, the Ninth Circuit rejected Google's reliance on lenity in a wiretap case, explaining: "[W]e do not resort to the rule of lenity every time a difficult question of statutory interpretation arises. Rather, 'the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.''" *Joffe*, 746 F.3d at 935-36.

This Court should decline to apply lenity to adopt an interpretation which is inconsistent with "the purpose of the statute, i.e., to 'prohibit unauthorized artificial interception of communication in an era of changing technologies.'" *James v. Walt Disney Co.*, 2023 U.S. Dist. LEXIS 200997, at *40 (N.D. Cal. Nov. 8, 2023).

## III. CONCLUSION

The Chamber's amicus brief changes nothing; the Court should deny the motion to dismiss.

[12] The fact that courts have reached different outcomes in different cases does not demonstrate "grievous ambiguity." Instead, it shows, unremarkably, that factual allegations supporting the crime-tort exception vary among cases, as do courts' judgments about what facts are sufficient to support the exception. There is no textual ambiguity.

Dated: January 16, 2026

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: January 16, 2026

*<u>/s/ Patrick J. Vallely</u>*
Patrick J. Vallely