**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-10081-NMG |
| | ) | |
| LAWRENCE GENERAL HOSPITAL, | ) | **Leave to File Granted on January 21,** |
| | ) | **2026 Doc. No. 72** |
| Defendant. | ) | |

**DEFENDANT LAWRENCE GENERAL HOSPITAL'S**
**<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ..... 1

**ARGUMENT** ..... 1

I. Plaintiff's ECPA Claim Fails. ..... 1

A. Plaintiff Fails To Allege That LGH's Purpose Was Criminal Or Tortious. ..... 1

B. Plaintiff Fails To Allege A Separate And Independent Act. ..... 5

II. There Are No Plausible Allegations That LGH Disclosed Plaintiff's PHI. ..... 6

III. Plaintiff Cannot State A Claim Under The Massachusetts Right To Privacy Act. ..... 7

IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty. ..... 8

V. Plaintiff's Breach Of Confidence Claim Should Be Dismissed. ..... 8

VI. Plaintiff's Negligence Claim Should Be Dismissed. ..... 9

VII. Plaintiff's Breach Of Contract Claim Should Be Dismissed. ..... 9

VIII. Plaintiff's Unjust Enrichment Claim Should Be Dismissed. ..... 10

**CONCLUSION** ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................4

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)....................9

*Alberts v. Devine*,
395 Mass. 59 (1985) ....................8, 9

*Alves v. BJ's Wholesale Club, Inc*,
2023 WL 4456956 (Mass. Super. June 21, 2023)....................7

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................6

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................8, 10

*Cooper v. Mount Sinai Health Sys,. Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................9

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................2

*Doe v. Boston Medical Center Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ....................7

*Doe v. Emerson Hosp.*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023) ....................7, 10

*Doe v. Partners Healthcare Sys.*,
No. 1984CV01651-BLS1 (Mass. Super. Nov. 20, 2020) (Dkt. 27-2) ....................7

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................7, 10

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................7

*Doe v. Wellstar Health Sys., Inc.*,
799 F. Supp. 3d 1268 (N.D. Ga. 2025) ....................4

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996) ..........5

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ..........10

*Gay v. Garnet Health*
(S.D.N.Y. Aug. 7, 2023) ..........4

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) ..........7

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ..........4

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003) ..........8

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ..........4

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) ..........4

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ..........4

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ..........2

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ..........10

*Polay v. McMahon*,
468 Mass 379 (2014) ..........7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..........8, 9

*R.S. v. Prime Healthcare Servs. Inc.*,
No. 5:24-cv-00330-ODW (SPx) (C.D. Cal. Feb. 8, 2024) ..........4

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025) ..........2

*Ryan v. Newark Grp., Inc.*,
2025 WL 3777202 (D. Mass. Dec. 30, 2025) ..........9, 10

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....7

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....8

*Tomasella v. Nestlé USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) ....10

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ....7

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 WL 2992204 (D. Minn. Sept. 30, 2025) ....4

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ....2

**Statutes**

18 U.S.C. § 2511(2)(d) ....5

Electronic Communications Privacy Act .... *passim*

HIPAA .... *passim*

Massachusetts Right To Privacy Act ....6, 7

**Other Authorities**

Fed. R. Civ. P. 8 ....4

# INTRODUCTION

Plaintiff's Opposition doubles down on the insufficient allegations of her Second Amended Complaint ("SAC"). But no matter how Plaintiff tries to reframe her allegations, the SAC still lacks any facts creating a plausible inference that LGH's primary purpose in using tracking technology was criminal or tortious, or that such act was separate and independent from the alleged disclosure itself. Rather than address the numerous issues identified by this Court's Report and Recommendation, Plaintiff urges the Court to abandon its well-reasoned decision and instead adopt out of circuit authority in a bid to save the SAC from dismissal. The Court should decline Plaintiff's invitation.

Plaintiff gives her remaining state law claims short shrift. She fails to meaningfully respond to LGH's arguments and relies on bald and boilerplate allegations, in the hopes of skirting by on the coattails of other cases that have allowed similar claims to proceed past this stage. But Plaintiff fails to do the obvious: explain why *her* claims in *this* case sufficiently state a claim. They do not.

At this point, Plaintiff has had plenty of chances to allege her claims clearly and fully, and she still fails to do so. Her attempt to expand existing privacy laws to recover a windfall of damages against LGH should be rejected, and the SAC dismissed with prejudice.

# ARGUMENT

## I. Plaintiff's ECPA Claim Fails.

It is undisputed that Plaintiff's Electronic Communications Privacy Act ("ECPA") claim cannot survive unless the crime-tort exception applies. Plaintiff insists that she "add[ed] detailed facts that amply support the crime-tort exception." Opp. at 13. Yet, despite these "new" allegations, Plaintiff still fails to allege any *plausible* facts that LGH's *purpose* in deploying tracking technology was criminal or tortious, nor does she allege plausible facts that the criminal act was *separate and independent* from the interception itself. Her ECPA claim should be dismissed, again.

### A. Plaintiff Fails To Allege That LGH's Purpose Was Criminal Or Tortious.

Plaintiff continues to muddy the waters when it comes to her allegation of LGH's supposed "purpose" in using tracking technology. As discussed in LGH's Motion, the SAC clearly alleges

that LGH's alleged purpose was to engage in targeted advertising. *See* Mot. at 11. Yet, in Plaintiff's Opposition, she switches gears. In one breath, Plaintiff claims LGH's purpose was "knowingly disclos[ing] patient communications" in violation of HIPAA and other laws. Opp. at 9. In the next, she claims LGH's "purpose was to engage in actions that were tortious under Massachusetts law," or for "the purpose of committing tortious acts," which were "independent of any HIPAA violation." Opp. at 19. Each of these conclusory and unsupported characterizations of LGH's "purpose" fail to support the crime-tort exception, for multiple reasons.

***"Targeted Advertising" Is Not Criminal Or Tortious.*** Plaintiff's allegation that LGH's purpose was to engage in "targeted advertising" fails because advertising is not a criminal or tortious purpose. *See* Mot. at 11-12 (collecting cases). In fact, Plaintiff's own allegations demonstrate that LGH had a permissible and lawful purpose in using the tracking technology—to "optimize" its website and marketing, and for "commercial" advantage. SAC ¶¶ 2, 4, 40, 125; *see also* Mot. at 14-15. Plaintiff tries to circumvent this by arguing that HIPAA criminalizes the use of PHI for marketing, (Opp. at 25-26), but in doing so collapses the distinction between a violation and a *purpose* to violate. As numerous courts have held, a purpose to engage in digital advertising is not criminal or tortious. *See Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (dismissing ECPA claim that did not plausibly allege "purpose for sharing IIHI was to breach HIPAA"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (digital marketing and analytics purpose insufficient to invoke exception); *Williams v. TMC Health*, 2024 WL 4364150, at *4–5 (D. Ariz. Sept. 30, 2024) (same); *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim where Google's purpose in offering technology was plainly not "to perpetuate torts on millions of Internet users" but to make money).[1]

[1] As noted by LGH in its Motion, a commercial or financial motive does not, in of itself, support a finding of a criminal or tortious purpose. *See* Mot. at 14-15. Plaintiff did not address this argument. Thus, to the extent Plaintiff alleges LGH's purpose was criminal or tortious simply because it resulted in financial gain, those allegations fail.

***Plaintiff's Allegations Of Knowledge Are Insufficient.*** Plaintiff's allegations that LGH's purpose was to "knowingly disclose[]" patient information in violation of HIPAA or other laws lacks even the most basic support. Plaintiff claims LGH was "aware that the tracking technologies would disclose confidential communications . . . in violation of HIPAA, the MRP, and its own promises to its patient" and that LGH was "on notice about how data containing health information may be disclosed or used." Opp. at 13-14.

First, as discussed more in Section I(B) below, to the extent Plaintiff alleges LGH's purpose was a criminal "disclosure," that purpose does not satisfy the "separate and independent" requirement of the crime-tort exception. Second, as discussed in Section II below, LGH was not "aware" of PHI being disclosed because it cannot identify users on its public website, let alone their subjective intent for visiting the website. Third, Plaintiff repeatedly alleges Facebook "warned" or "directed" LGH not to use pixels on health-related websites, relying exclusively on a webpage titled "Meta Business Tools Terms." *See* SAC ¶ 47 n.6; Opp. at 11, 14, 14 n.5, 17-18. This argument is a red herring. Plaintiff alleges zero facts suggesting that LGH was aware of this so-called "warning," or that Facebook ever "directed" this webpage to LGH. In fact, it does not appear the "Meta Business Tools Terms" webpage existed when LGH first implemented tracking technology. The webpage explicitly states it became effective on November 3, 2025, well after LGH first utilized tracking tools and this lawsuit was filed.[2] In any event, Judge Levenson squarely addressed this point: "Alleging that a website operator knowingly made a disclosure of IIHI—by using web tracking tools that would permit third parties to receive such information—may suffice to allege a violation of HIPAA. But this does not address the 'for the purpose' element in ECPA." R&R at 30; *id.* 33-34 ("A colorable claim of negligence is a far cry from a plausible allegation that LGH committed a felony violation of ECPA."). Stated another way, Plaintiff's allegations that LGH had "knowledge" of disclosing PHI—even if accepted as true—are insufficient to satisfy the ECPA's stringent *mens rea* requirement. R&R at 29–31.

[2] Available at https://www.facebook.com/legal/terms/businesstools.

***Plaintiff's Other Arguments Lack Support.*** Plaintiff repeatedly asserts that the SAC now clearly alleges a HIPAA violation. SAC ¶¶ 194–99. But Judge Levenson already assumed Plaintiff's allegations of a HIPAA violation were true, and still recommended dismissal. R&R at 29. Attempting to circumvent that conclusion, Plaintiff relies on several out-of-circuit decisions to suggest a "prevailing view" that the crime-tort exception is satisfied when tracking technology intercepts information for the purpose of disclosing PHI in violation of HIPAA. Opp. at 15, 16 n.9. That suggestion is incorrect. Nearly every case Plaintiff cites involved allegations of tracking technologies deployed *within* the patient portal, not merely on the public website, as alleged here.[3]

Critically, Plaintiff does not even attempt to argue that the SAC includes any portal allegations. *See* Opp. at 16. Instead, Plaintiff pivots and asserts that the crime-tort exception *might* apply even if the technology is solely deployed on the public website. To support this contention, she states that the Court's R&R "confirms that allegations regarding tracking technologies 'inside' a portal provide one, but not the only way to plead the exception." Opp. at 16. Plaintiff boldly claims that "only a few of the cases cited [by the Court] involved allegations of tracking technology deployment within a patient portal; most cases involved publicly accessible pages." *Id.* Once again, this suggestion is incorrect. Every case cited by this Court—including the cases Plaintiff points to—expressly alleged that tracking technology was deployed *within* the patient portal.[4]

Plaintiff further argues that Rule 8's liberal pleading standard should apply to her state of mind allegations, which she claims can be pled "generally." Opp. at 14-15. Rule 8 may set a low

---

[3] *See Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *2–3 (N.D. Ill. Dec. 11, 2023) (alleging disclosure of "the precise content of patient communications with Rush" whenever a Rush patient uses a Rush web property, including MyChart."); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *5, 14 (W.D.N.Y. Mar. 19, 2024) (same); *Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1272 (N.D. Ga. 2025) (same); *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *1 (E.D. Va. Mar. 25, 2025) (same); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) ("treatment for sensitive health issues, prescription orders, and medical appointments were intercepted"). The only case that did not include portal allegations, *Vriezen v. Infinite Health Collaborative, P.A.*, 2025 WL 2992204 (D. Minn. Sept. 30, 2025), allowed an ECPA claim to proceed with little to no analysis of the crime-tort exception.

[4] Compl. ¶¶ 50, 61, 72, 93, *R.S. v. Prime Healthcare Servs. Inc.*, No. 5:24-cv-00330-ODW (SPx) (C.D. Cal. Feb. 8, 2024) (alleging tracking technology was used "within Prime Healthcare's patient portals."); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (same); Compl. ¶¶ 2–3, 23, 46, *Gay v. Garnet Health*, (S.D.N.Y. Aug. 7, 2023) (same).

bar, but it is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) ("The threshold [for stating a claim] may be low, but it is real."). "[T]o survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery. Although all inferences must be made in the plaintiffs' favor, this court need not accept bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Id.* (quotation marks omitted). Plaintiff's allegations regarding LGH's purported "criminal" purpose are precisely the type of bald, conclusory assertions that this Court can and should refuse to accept. As before, the SAC "contains no allegation" that would allow for the plausible inference "that LGH ever entertained a conscious purpose of disclosing the identities of its patients, or their treatments, to Google or Meta." R&R at 31.

### B. Plaintiff Fails To Allege A Separate And Independent Act.

Plaintiff now contends that she has satisfied the "separate and independent" element in two ways: by alleging that "tortious disclosures were separate and independent of the interceptions" and that there was a "subsequent commercial exploitation of intercepted communications." Opp. at 24-25 (emphasis supplied). First, Plaintiff does not and cannot explain how LGH could have "intercepted" a communication between itself and Plaintiff in the first place, or how this act is separate from the disclosure itself. The ECPA is a one-party consent statute; as a matter of law, LGH cannot "intercept" communications intended for LGH. 18 U.S.C. § 2511(2)(d). Further, Plaintiff's SAC flatly contradicts her assertion that any alleged interception and disclosure were distinct acts. *See* SAC ¶ 5 (alleging communications were "**contemporaneously** intercepted" and "transmitted to these third parties…"); *id.* ¶ 69 ("the interception and disclosure to third party occur **contemporaneously**…"); *id.* ¶¶ 73, 82, 84, 89, 97 (same) (all emphasis added). As Judge Levenson recognized, there is no separate act alleged because "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation." R&R at 25; *id.* at 24 ("there is only one act: Deploying a web tracking tool that simultaneously provides analytic information to the website operator and shares data with Google or Meta."). Plaintiff's SAC offers no basis to depart from that well-reasoned conclusion.

Second, to the extent "commercial exploitation" can be considered a separate act from the alleged disclosure, that act is not criminal or tortious. As discussed above, there are no plausible allegations suggesting that LGH's purpose in deploying the tracking technology was to violate HIPAA by using its patients medical information to target them for advertising. To the contrary, the SAC confirms that LGH used tracking technology to "optimize" its website and marketing, and for "commercial" advantage. SAC ¶¶ 2, 4, 40, 125. Such acts do not support the crime-tort exception. *See* R&R at 31 (citing cases).

## II. There Are No Plausible Allegations That LGH Disclosed Plaintiff's PHI.

Plaintiff does not dispute that the basis for all of her state law claims is a disclosure of "protected health information." Instead, Plaintiff makes the unremarkable argument that her claims "do not depend on the disclosure of *HIPAA-protected* information." Opp. at 27 (emphasis supplied). But setting HIPAA aside, there is no question that Plaintiff's claims are based on the alleged disclosure of her "private" information. SAC ¶ 207 (MRPA), ¶ 219 (breach of fiduciary duty), ¶ 224 (negligence), ¶ 236 (breach of confidence), ¶ 246 (breach of contract), ¶ 251 (unjust enrichment). Plaintiff ignores the meat of LGH's argument, which is that data disclosed by tracking technology on a public website is not "personal" nor "private." The court in *American Hospital Association v. Becerra,* 738 F. Supp. 3d 780 (N.D. Tex. 2024) explains why: a website operator like LGH cannot identify any particular user on its public website, and it does not know why any particular user visits a certain webpage, or clicks a certain button. *See* Mot. at 17-18.

Plaintiff further contends that her private information was disclosed when she navigated to the patient portal from the public website, or could potentially be disclosed when someone visits the public "I am a Patient" or "Pay Your Bill Online" pages. SAC ¶¶ 7, 145, 187. Yet, Plaintiff does not allege that she herself visited the "I am a Patient" or "Pay Your Bill Online" pages. And regardless, all of these actions take place on LGH's *public* website, and therefore "the inference that someone [who visits those pages] is a patient is somewhat attenuated; individuals or bots who are not patients may click on the button as well, website visitors may pay bills for family members

and others in their care, people may click on the link by mistake, and so forth." R&R at 28 n.10. Importantly, Plaintiff does *not* plausibly allege that information from within the patient portal was transmitted to any third party. When faced with similar allegations, other federal courts have routinely granted motions to dismiss similar state law claims.[5] This Court should do the same.

**III. Plaintiff Cannot State A Claim Under The Massachusetts Right To Privacy Act.**

Plaintiff claims that her MRPA claim should survive because other courts in Massachusetts have allowed MRPA claims to proceed past the motion to dismiss stage. Opp. at 27-29. Plaintiff boldly claims that "five judges" in Massachusetts have "concluded that the surreptitious use of tracking technologies states an MRPA claim." *Id.* at 28. This is an extreme exaggeration. A cursory review of the cases Plaintiff cites to confirms as much. All of the cases either (1) were not presented with (and therefore did not rule on) the arguments LGH asserts here, (2) featured much more detailed allegations, (3) related to completely different technology, or (4) all of the above.[6]

At bottom, Plaintiff's MRPA claim remains fatally deficient because she has not alleged facts demonstrating that LGH's apparent "invasion" was "both unreasonable and substantial or serious." *Polay v. McMahon*, 468 Mass 379, 382 (2014). Plaintiff does not allege tracking

---

[5] *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *2–3 (S.D. Ind. Sept. 24, 2024) (dismissing common-law claims because "principal theory" underlying each was transmission of PHI, but plaintiff's browsing did not relate to *her* health or relationship with defendant); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (dismissing breach of confidence claims to the extent based on plaintiff's searches on the public website because they did not "constitute PHI"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history.").

[6] *Doe v. Emerson Hosp.*, 2023 WL 8869624, at *6 (Mass. Super. Nov. 22, 2023) (only issues presented to the court in opposing MRPA claim were consent and the technology was a not "device"); *Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, at *3–4 (Mass. Super. Sep. 14, 2023) (similar, and allegations related to technology within the patient portal); *Alves v. BJ's Wholesale Club, Inc*, 2023 WL 4456956, at *1 (Mass. Super. June 21, 2023) (similar, and claims related to session replay technology); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147–48 (D. Mass. 2024) (similar); *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Nov. 20, 2020) (Dkt. 27-2) (only issue discussed in argument was whether the transmission was "contemporaneous"); *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 850 (2024) (Plaintiff suggests the court held an "MRPA claim 'cognizable.'" In reality, the *Vita* court did not rule on an MRPA claim at all; it simply stated the MRPA "provides a right against unreasonable, substantial or serious interference with [an individual's] privacy.").

technology was within the patient portal. She does not allege that she scheduled an appointment, or paid a bill, or disclosed any specific information through the LGH website. Nor does Plaintiff plausibly allege she received *any* targeted advertisements related to her specific medical conditions after she used LGH's website. Ultimately, her vague allegations related to everyday web browsing activity are insufficient to establish any invasion of a highly personal or intimate nature. Plaintiff's allegations are in-line with analogous federal decisions finding routine website searches and inquiries on a public website do not support invasion of privacy claims. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (disclosure of routine medical searches and inquiries insufficient to support privacy claim); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 892–93 (C.D. Cal. 2024) (same); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) ("There is no intrusion upon privacy when a patient voluntarily provides [PII or PHI] to his or her healthcare provider.").

**IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty.**

Plaintiff argues that her breach of fiduciary duty claim is sufficiently pled because a "fiduciary relationship exists between healthcare providers and patients." Opp. at 30. This argument misses the point. Plaintiff pleads no facts establishing the existence of any special relationship between her and LGH *when she interacted with LGH's public website*. Massachusetts courts have been clear: "the existence of a fiduciary relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries." *Korper v. Weinstein,* 783 N.E.2d 877, 881 (Mass. App. Ct. 2003). Plaintiff does not argue otherwise. Instead, she attempts to stretch the physician-patient relationship beyond recognition, suggesting it encompasses *any* visitor to LGH's public website. Extending a physician's fiduciary duty to all website visitors would create an untenable, limitless obligation on healthcare providers. Plaintiff's breach of fiduciary duty claim should be dismissed.

**V. Plaintiff's Breach Of Confidence Claim Should Be Dismissed.**

Plaintiff insists that Massachusetts "created a new cause of action" in a "breach of confidence" claim in the SJC's decision in *Alberts v. Devine*, 395 Mass. 59 (1985). Opp. at 31. But

the *Alberts* court did not create a standalone cause action for breach of confidence. In fact, the SJC did not use the term "breach of confidence" a single time. Instead, the court merely recognized that "a duty of confidentiality arises from the physician-patient relationship" and is actionable through a breach of fiduciary duty claim. *See Alberts v. Devine*, 395 Mass. 59, 69, 479 N.E.2d 113, 120 (1985). It is telling that Plaintiff failed to identify a single Massachusetts authority recognizing a "breach of confidence" cause of action ever being litigated. Indeed—the only authority Plaintiff cites recognized a "breach of confidence" claim under New York law, not Massachusetts law. Opp. at 31 (citing *Cooper v. Mount Sinai Health Sys,. Inc.*, 742 F. Supp. 3d 369, 385 (S.D.N.Y. 2024) and *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (analyzing New York law)). The simple truth is that there is no "breach of confidence" claim in Massachusetts, which might explain why Plaintiff does not even attempt to explain how the elements of her breach of fiduciary duty claim differ from those required for a "breach of confidence claim."

## VI. Plaintiff's Negligence Claim Should Be Dismissed.

***Duty.*** Plaintiff's negligence claim is likewise rooted in the physician-patient relationship; LGH reiterates its arguments asserted in its Motion and above in Section IV.

***Breach.*** Plaintiff asserts that her negligence claim "is not limited to 'Private Information' protected by HIPAA." Opp. at 31. LGH reiterates the arguments asserted in its Motion and above in Section II.

***Harm.*** Plaintiff fails to allege cognizable damages. Her laundry list of purported harms is unsupported by *plausible facts*, and the vagueness of her claimed harms alone merits dismissal. *See R.C.*, 733 F. Supp. 3d at 897–98 (dismissing negligence claim with similar laundry list of harms was vague and conclusory). Plaintiff's negligence claim should be dismissed.

## VII. Plaintiff's Breach Of Contract Claim Should Be Dismissed.

Plaintiff does not respond to LGH's arguments on her breach of contract claim. Opp. at 32. As such, they should be deemed admitted. *Ryan v. Newark Grp., Inc.*, 2025 WL 3777202, at *5 (D. Mass. Dec. 30, 2025) (collecting cases). Plaintiff instead argues that "Massachusetts authorities" that have "considered such claims based on the same conduct have affirmed them."

*Id.* Once again, Plaintiff exaggerates the holdings of Massachusetts courts. The *Tenet* court's ruling was not based on the "same conduct" as here, because that plaintiff alleged tracking technology was *inside* the patient portal. 731 F. Supp. 3d at 150. And the SJC did not even rule on a breach of contract claim in *Vita*, much less "affirm" the "same conduct." The *Emerson* court recognized that many jurisdictions have refused to allow breach of contract claims to proceed past the motion to dismiss stage, but nonetheless allowed the claim to proceed (albeit with skepticism). 2023 WL 8869624, at *4.

**VIII. Plaintiff's Unjust Enrichment Claim Should Be Dismissed.**

It is well-established that a "party with an adequate remedy at law cannot claim unjust enrichment." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020). This inquiry turns on "the availability of a remedy at law, not the viability of that remedy." *Id.* at 82–83. Here, Plaintiff has an adequate remedy available at law through her breach of contract and negligence claims. *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (negligence and chapter 93A claims "preclude a claim for unjust enrichment. The disposition of those claims is irrelevant."). What's more, Plaintiff's lack of factual allegations precludes any plausible basis to determine that Plaintiff conferred a benefit on LGH, or whether any purported benefit had value. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1093–94 (W.D. Wash. 2024) (dismissing unjust enrichment claim for lack of pleading "a concrete detriment"); *B.K.*, 721 F. Supp. 3d at 1070 ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched.").

**CONCLUSION**

The Second Amended Complaint should be dismissed with prejudice.[7]

[7] When LGH consented to Plaintiff's request to enlarge the page limitations for her opposition, it did not envision that Plaintiff would exploit that accommodation by packing extensive, substantive arguments in 36 footnotes spanning multiple pages. LGH has endeavored to address as many of those arguments as reasonably possible within the constraints of this short reply (including through the use of footnotes). However, to the extent the Court would like further briefing on any particular issue, LGH respectfully requests that it be permitted leave to submit supplemental briefing to address those matters fully.

Dated: January 30, 2026

Respectfully submitted,

LAWRENCE GENERAL HOSPITAL

By: */s/ Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

Anna A. Gadberry (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6550
agadberry@shb.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on January 30, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*
Lisa Oliver White