United States District Court
District of Massachusetts

| | | |
|---|---|---|
| Jane Doe,<br>Plaintiff,<br>v.<br>Lawrence General Hospital,<br>Defendant. | ) | Civil Action No.<br>25-10081-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff brings this putative class action against Lawrence General Hospital ("LGH"), alleging that the use of web-tracking tools on LGH's public-facing website violated her rights (and the rights of those similarly situated) and disclosed private health information without authorization. Plaintiff alleges that LGH deployed those tools in support of its digital marketing efforts, using information about users' interactions with its website to send targeted advertisements for services provided by LGH. She further claims that LGH transmitted the intercepted information to third-party platforms such as Google and Meta.

In February, 2025, LGH moved to dismiss plaintiff's first amended complaint. The Court referred the motion to Magistrate Judge Paul G. Levenson ("Magistrate Judge Levenson"), who, after

considering the submissions and oral argument from the parties, issued a Report and Recommendation ("the first R&R") recommending dismissal of plaintiff's sole federal claim under the Electronic Communications Privacy Act ("the ECPA") and remand of the remaining state-law claims to state court. This Court accepted and adopted the R&R, in part, but declined to dismiss the case in favor of allowing plaintiff to amend her complaint.

Upon the filing of plaintiff's second amended complaint ("SAC"), defendant filed its second motion to dismiss which was again referred to Magistrate Judge Levenson. His second R&R recommends dismissal of the ECPA claim advanced by plaintiff because, as before, she failed to allege that LGH acted with the purpose of committing a crime or tort.

For the reasons set forth herein, the Court will accept and adopt the second R&R which will result in the dismissal of Count I of plaintiff's SAC and the remand of Counts II-VII to state court.

## I. <u>Analysis</u>

### a. ECPA's "purpose" requirement

Plaintiff's objections to the second R&R require a brief summary of the purpose requirement in the ECPA. To begin, the ECPA is a one-party consent statute, meaning that so long as one party consented to the communication being intercepted, no

violation of that act has occurred. This is subject to certain exceptions, one of which is the "crime-tort exception," which removes the protection of one-party consent if the interception was made

> for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State (emphasis added).

18 U.S.C. §2511(2)(d). At issue here is whether the use of web-tracking tools by LGH on its publicly accessible webpages constitutes an interception made for the purpose of committing a criminal or tortious act.

In the first R&R, after analyzing the plain text of the ECPA and divergent interpretations from courts outside of this district, Magistrate Judge Levenson concluded that

> the goal or aim of the interception itself must have been to use the intercepted information to commit a crime or tort. It is not enough that a crime or tort was a mere side-effect of the interception.

Another session of this Court has since adopted this reasoning. See Progin v. UMass Mem'l Health Care, Inc., No. 25-CV-40003-ADB, 2026 WL 632770 at *5 (D. Mass. Mar. 6, 2026) (allowing defendants' motion to dismiss based on that reasoning); Caine v. Sturdy Mem'l Hosp., Inc., No. 25-CV-10261-ADB, 2026 WL 673483 at *3 (D. Mass. Mar. 10, 2026) (same regarding Magistrate Judge Levenson's observation that purpose "is an essential element of ECPA").

The second R&R reinforces that interpretation, identifying First Circuit Court of Appeals precedent which holds that a demonstration of "purpose" requires showing either

> (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act.

United States v. Cassiere, 4 F.3d 1006, 1021 (1st Cir. 1993).

Plaintiff quarrels with this interpretation, asserting that it contradicts Stein v. Edward-Elmhurst Health, No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025), an out-of-district decision holding that the crime-tort exception requires only that the interception be intentional, not that the actor intended to commit the resulting crime or tort. 2025 WL 580556 at *4-5. Under Stein, the crime-tort exception applies when the crime or tort is merely a "side effect" of an intentional interception. The Court agrees with Magistrate Judge Levenson that the Illinois interpretation conflicts with the heightened mens rea requirement found in the ECPA. Stein also conflicts with the First Circuit interpretation in Cassiere that the crime-tort exception focuses on whether the motivation of the actor "was to commit a criminal, tortious, or other injurious act." 4 F.3d at 1021.[1] Plaintiff's argument that Magistrate

---

[1] Nowhere in her objections does plaintiff address the Cassiere decision.

Judge Levenson applied a standard more demanding than the plain text of the ECPA requires is therefore mistaken.

**b. Application of Crime-Tort Exception**

Plaintiff interposes three objections with respect to the Crime-Tort Exception:

Objection #1

Plaintiff objects to Magistrate Judge Levenson's application of the scienter requirement to the facts alleged in the SAC. She contends that the Court engaged in improper fact-finding by resolving factual questions in favor of LGH. The first of these factual questions is whether LGH employed tracking tools inside patient portals and other non-public pages, as opposed to solely on public-facing webpages. In the SAC, plaintiff alleged that whether LGH deployed web-tracking tools on non-public pages could not be determined before discovery because of the way the webpages were archived. She acknowledges her lack of information about LGH's specific practices and relies instead on the allegation that other hospitals had deployed web-tracking tools on similar non-public pages. Based on that explanation, Magistrate Judge Levenson reasonably declined to infer that LGH tracked users within patient portals.

Objection #2

Plaintiff also challenges the finding that LGH was the only party to use the intercepted information for marketing. She insists that the SAC properly alleges Google and Meta use those communications for their own advertising. Although the SAC includes the contention that Google and Meta generally monetize user data, it does not allege that either company used the user information at issue here. The only allegation about the marketing of information intercepted from LGH webpages concerns use by LGH itself. There is no error in Magistrate Judge Levenson's treatment of the marketing allegations in the SAC.

Objection #3

Plaintiff vigorously objects to Magistrate Judge Levenson's finding that the SAC does not support an inference that LGH intentionally intercepted communications for the purpose of committing a tortious act in violation of M.G.L. c. 214, §1B. Section 1B prohibits interferences with privacy that are "unreasonable, substantial or serious." The standard is met when a disclosure involves

> facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest.

Bratt v. Int'l Bus. Machines Corp., 392 Mass. 508, 518 (1984).

In the SAC, plaintiff alleges that LGH transmitted user communications to Google and Meta despite (1) its assurance to

users that it would not share the medical information of patients without signed authorization and (2) receiving warnings from Google and Meta against using web-tracking tools on healthcare pages. Similar allegations led another district judge in this Court in two recent cases to find that plaintiffs plausibly alleged hospitals acted with the purpose of unreasonably disclosing users' personal information and therefore to deny motions to dismiss under the crime-tort exception. See Doe v. Baystate Health Sys., Inc., 2026 WL 776861 at *4 (D. Mass. Mar. 19, 2026); Vita v. Beth Israel Deaconess Med. Center, Inc., 2026 WL 2363614 at *5 (D. Mass. Aug. 14, 2026). District Judge Julie E. Kobick reasoned in those cases that whether a defendant's primary motivation was to intercept and disclose communications for a tortious purpose was a factual question unsuitable for resolution at the pleading stage.[2]

This contrasts with Magistrate Judge Levenson's conclusion that the SAC did not plausibly allege LGH was "actually motivated" to disclose private health information. He distinguished disregarding a risk that conduct may be tortious, even reckless or for the purpose of saving money, with acting for the purpose of committing a tort, and emphasizes the

[2] District Judge Patti B. Saris has also weighed in on similar factual circumstances, concluding for the same reasons that the question of whether a defendant's primary motivation to employ web-tracking tools was for a tortious purpose is a question of fact not fit for the pleading stage. See Doe v. Children's Hosp. Corp., 2026 WL 1893758 (D. Mass. July 1, 2026).

difference is in acting "because of," not merely "in spite of," the prohibited end. See Ashcroft v. Iqbal, 556 U.S. 662, 677.

These competing characterizations leave unsettled whether plaintiff has pled facts supporting an inference that LGH acted with the purpose of committing a tort. District Judge Kobick's approach recognizes the difficulty of pleading the primary motivation of a defendant under the crime-tort exception at this stage but, even viewing the SAC in a light most favorable to plaintiff, the allegations support at most an inference that LGH was aware it might disclose private information, not that it was primarily or determinatively motivated to do so. See Cassiere, 4 F.3d at 1021. Plaintiff's objections are ill-founded.

**c. Application of HIPAA's criminal provisions**

Plaintiff next objects to the conclusion that the SAC fails to support an inference that LGH's use of web-tracking tools violated HIPAA, arguing that the conclusion rests on an erroneous interpretation of the criminal provisions in HIPAA.

Magistrate Judge Levenson reached the conclusion only after finding that plaintiff adequately pled that the purpose of LGH in deploying the tools was to send targeted advertisements to website users. Because plaintiff claimed that such conduct violated HIPAA, Magistrate Judge Levenson tested the allegations against the elements of criminal provisions in HIPAA and concluded otherwise. He determined that the information LGH

allegedly collected was not protected by HIPAA and therefore its disclosure did not violate the statute.

Plaintiff avers that Magistrate Judge Levenson improperly construed the information covered by HIPAA's criminal provisions. HIPAA makes it a crime knowingly

> [to] obtain . . . or disclose[] individually identifiable health information [IIHI] to another person.

42 U.S.C. §1320d-6 (a) (2)-(3). Given the broad definition of IIHI found in HIPAA, Magistrate Judge Levenson acknowledged that the information LGH allegedly collected could reasonably fall within that provision. He noted, however, that the criminal provision applies only to IIHI that is "maintained by a covered entity" (emphasis added), a narrower category. 42 U.S.C. § 1320d-6(a)(3).

He then reviewed HIPAA's regulations, which define "maintained" in conjunction with a "designated record set." 45 C.F.R. §164.501. Under that provision, a designated record set consists of records maintained by or for a covered entity, including records used, in whole or in part, to make decisions about individuals. Id. The regulation further defines a "record" as information containing protected health information that is "maintained, collected, used, or disseminated" by or for a covered entity. Id. Thus, in context, "maintained" means kept

or retained by or for a covered entity as part of its records, including information used to make decisions about individuals.

Because plaintiff does not claim that LGH ever maintained the information allegedly gleaned from users' interactions or searches on its public webpages in record sets, the Magistrate Judge concluded that the allegations did not support an inference that LGH violated HIPAA. The criminal provisions in HIPAA distinguish between information that a covered entity such as LGH generates and attributes to an identified patient in a record set and information, such as that allegedly generated here, that is not attributed to any particular patient or user.

Plaintiff does not meaningfully address the requirement that information subject to the criminal provisions in HIPAA be "maintained" by the defendant. She instead contends that, because courts in other districts have deemed information collected from public webpages "protected health information," the Court should reject Magistrate Judge Levenson's conclusion that the absence of allegations concerning tracking on non-public patient portals undermines her claims. Even though the distinction between public and non-public webpages articulated by Magistrate Judge Levenson may be unique, it is well-reasoned and will be adopted by this Court.

Because this Court agrees that the alleged actions do not constitute a criminal HIPAA violation, there is no need to reach

the Magistrate Judge's alternative conclusion that plaintiff also failed to plead that LGH "knowingly" disclosed HIPAA-protected information.

Finally, plaintiff objects to Magistrate Judge Levenson's conclusion that the use by LGH of information intercepted on its public webpages for marketing purposes does not violate HIPAA. Plaintiff notes that 45 C.F.R. §164.508(a)(3)(1) provides, in relevant part, that

> [a] covered entity must obtain an authorization for any use or disclosure of private health information for marketing. . . .

There are allegations in the SAC that LGH used the intercepted communications to market its services. Under the definition of marketing found in 45 C.F.R. §164.501, that term does not, however, include communications made

> [t]o describe a health-related product or service . . . that is provided by, or included in a plan of benefits of, the covered entity making the communication. . . .

Thus, the definition of marketing found in HIPAA excludes the kinds of communications that plaintiff identifies in the SAC, i.e., communications made by LGH to market its own services. Plaintiff repeats her contention that LGH was not the only party using the information for marketing. She asserts that Google and Meta generally use the intercepted information for their own marketing purposes, but not that those platforms used the information <u>at issue here</u> for marketing purposes. The SAC does

not therefore support the inference that LGH violated HIPAA in the absence of allegations that Google or Meta used the information that is the subject of the SAC.

**ORDER**

Plaintiff's objections (Docket No. 87) to the second Report and Recommendation of Magistrate Judge Levenson are overruled and that Report and Recommendation (Docket No. 85) is accepted and adopted. Count I of plaintiff's Second Amended Complaint (Docket No. 56) is dismissed and Counts II-VII of that complaint are remanded to the Massachusetts Superior Court for Suffolk County.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 21, 2026